**OLSHAN GRUNDMAN FROME**
**ROSENZWEIG & WOLOSKY LLP**
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Michael S. Fox, Esq.
Jordanna L. Nadritch, Esq.
212.451.2300

*Proposed Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| JENNIFER CONVERTIBLES, INC.,[1] | Case No. 10-13779 (ALG) |
| Debtors. | (Motion for Joint Administration Pending) |

**DECLARATION OF RAMI ABADA PURSUANT TO RULE 1007-2 OF THE LOCAL**
**BANKRUPTCY RULES FOR THE SOUTHERN DISTRICT OF**
**NEW YORK IN SUPPORT OF FIRST-DAY MOTIONS**

        I, Rami Abada, hereby declare, pursuant to section 1746 of title 28 of the United States Code, as follows:

        1.     I am Chief Financial Officer, Chief Operating Officer and President of Jennifer Convertibles, Inc. ("Jennifer Convertibles") and its subsidiaries (collectively, the "Debtors"). I am familiar with the day-to-day operations, business, and financial affairs of Jennifer Convertibles and its affiliated debtors, as debtors in possession (together, the "Debtors").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: (i) Jennifer Convertibles, Inc. (4646); (ii) Jennifer Convertibles Boylston MA, Inc. (7904); (iii) Jennifer Chicago Ltd. (0505); (iv) Elegant Living Management, Ltd. (5049); (v) Hartsdale Convertibles, Inc. (1681); (vi) Jennifer Management III Corp. (3552); (vii) Jennifer Purchasing Corp. (7319); (viii) Jennifer Management II Corp. (9177); (ix) Jennifer Management V Ltd. (9876); (x) Jennifer Convertibles Natick, Inc. (2227); (xi) Nicole Convertibles, Inc. (5985); (xii) Washington Heights Convertibles, Inc. (0783).

2.      As of July 18, 2010 (the "Petition Date"), the Debtors have filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  In order to enable the Debtors to operate effectively and minimize potential adverse effects from the commencement of their chapter 11 cases, the Debtors have requested certain relief in "first day" applications and motions filed with the Court (collectively, the "First Day Motions").  The First Day Motions seek, among other things, (a) to ensure the continuation of the Debtors' cash management system and other business operations without interruption, (b) to preserve valuable relationships with suppliers and customers, (c) to maintain employee morale and confidence, and (d) to establish certain administrative procedures that will promote a seamless transition into these chapter 11 cases.  This relief is critical to the Debtors' restructuring efforts.

3.      I submit this Declaration in support of the Debtors' First Day Motions.  Any capitalized term not expressly defined herein shall have the meaning ascribed to that term in the relevant First Day Motion.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon my experience and knowledge, and/or information provided to me in reports concerning the operations and financial affairs of the Debtors.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.  I am authorized to submit this Declaration on behalf of the Debtors.

4.      This Declaration is intended to provide a summary overview of the Debtors and these chapter 11 cases.  Sections I through IV of this Declaration provide a description of the Debtors' businesses, corporate history and organizational structure, capital structure, and the

962299-14

circumstances giving rise to the commencement of these chapter 11 cases. Part V lists the schedules of information required by Local Rule 1007-2.

## I. The Debtors' Businesses

5.     On the Petition Date, each of the Debtors commenced with the Bankruptcy Court a voluntary case pursuant to chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory creditors' committee has been appointed in these chapter 11 cases.

6.     Jennifer Convertibles, Inc. was organized as a Delaware corporation in 1986, and is currently the owner of (i) the largest group of sofabed specialty retail stores and leather specialty retail stores in the United States, with stores located throughout the Eastern seaboard, Midwest, West Coast and Southwest, and (ii) seven big box, full-line furniture stores operated under the Ashley Furniture HomeStore brand (the "Ashley Stores") under a license from Ashley Furniture Industries, Inc.

7.     In order to generate sales, the Debtors rely on aggressive pricing, the attractive image of its stores, extensive advertising and prompt delivery. Operations are classified into two operating segments organized by retail concept: Jennifer and Ashley. The Jennifer segment operates the sofabed specialty retail store concept. The Ashley segment is the big box, full line home furniture retail store concept. There are no inter-company sales between segments. The Ashley segment is highly profitable due to its unique sourcing model, whereby once most sales are executed, Ashley's supplier manages the supply chain process. Under the Ashley sourcing model, the Debtors need for warehouse inventory is reduced, thereby limiting working capital needs and infrastructure requirements: this is a more optimal model compared to traditional full-line furniture retailers. The Debtors' two operating segments enable the Debtors to more

effectively offer diverse home furnishings and accessories and expand to a broader consumer base.

8.     As of the Petition Date, the Debtors' stores include 130 stores operated by the Jennifer segment.  During fiscal 2007, the Debtors opened their first Ashley Store.  As of the Petition Date, the Debtors operate seven Ashley Stores.

9.     As of the Petition Date, the Debtors employ 497 people.   There are 336 employees in the Jennifer segment, 114 employees in the Ashley segment and 47 corporate employees.   None of the employees are represented by a collective bargaining unit.

10.     For the fiscal year ended August 29, 2009, the Debtors' consolidated financial statements showed revenues from continuing operations of approximately $94,177,000, compared with $120,131,000 for the fiscal year ended August 30, 2008, and $132,683,000 for the fiscal year ended August 25, 2007.  For the thirty-nine weeks ended May 29, 2010, revenues from continuing operations were approximately $70,036,000, with $56,144,000 coming from the Jennifer segment stores, and $13,892,000 from the Ashley segment stores.

11.     Net sales from continuing operations were $88,845,000 and $113,073,000 for the fiscal years ended August 29, 2009 and August 30, 2008, respectively.   Net sales from continuing operations decreased by 21.4%, or $24,228,000 for the fiscal year ended August 29, 2009 compared to the fiscal year ended August 30, 2008.   The decrease in net sales is attributable to a decline in overall demand within the furniture industry sector due to a poor housing market and an overall weak U.S. economy.   Consolidated same store sales from continuing operations (sales at those stores open for the entire current and prior comparable periods) decreased 19.6% for the thirteen weeks ended May 29, 2010, compared to the same period ended May 30, 2009.

12. Specifically, in the Ashley segment, net sales from continuing operations were $5,106,000 and $3,363,000 for the thirteen-week periods ended May 29, 2010 and May 30, 2009, respectively. Net sales from continuing operations increased by 51.8%, or $1,743,000 for the thirteen-week period ended May 29, 2010 compared to the thirteen-week period ended May 30, 2009. The increase is largely attributable to four new Ashley locations open during the thirteen-week period ended May 29, 2010, that were not open during the same thirteen week period last year.

13. In the Jennifer segment, net sales from continuing operations were $16,375,000 and $16,987,000 for the thirteen-week periods ended May 29, 2010 and May 30, 2009, respectively. Net sales from continuing operations decreased by 3.6%, or $612,000 for the thirteen-week period ended May 29, 2010 compared to the thirteen-week period ended May 30, 2009. The decrease is attributable to the decline in overall demand within the furniture industry sector due to the prevailing conditions of the U.S. economy, the depressed housing market, loss of the private label financing card, store closings, issues with integration of the related company, and delays in receipt of merchandise from the Debtors' Chinese supplier, all as discussed in greater detail in the first day motions, filed concurrently herewith.

14. <u>Operations</u>. Generally, the Debtors' stores are open seven days per week. They are typically staffed by a manager, one full-time salesperson and in some cases, one or more part-time salespersons, as dictated by the sales volume and customer traffic of each particular store. In some cases, where sales volume and customer traffic so warrant, stores may be staffed with one to three additional full-time salespersons.

15. The Debtors have district managers throughout the United States. The district managers supervise store management and monitor stores within their assigned district to ensure

compliance with operating procedures. District managers report to and coordinate operations in their district with the Debtors' management, namely John Dunican, Les Falchook, Dave Sakol and Kevin Mattler.

16. An inventory of approximately 85% of the items displayed in the stores, in the colors and fabrics displayed, is usually stocked at the Debtors' warehouse facilities, which are described below. The Jennifer segment typically requires a minimum cash, check or credit card deposit of 50% of the purchase price when a sales order is given, with the balance, if any, payable in cash or by bank check, certified or official check, upon delivery of the merchandise. The Ashley segment requires a deposit of 100% of the purchase price when the sale order is given.

17. <u>Marketing</u>. The Debtors advertise in newspapers and on television in an attempt to capitalize marketplaces. The Debtors' approach to advertising requires the establishment of a number of stores in each area in which they enter. This concentration of stores enables area-advertising expenses to be spread over a larger revenue base and to increase the prominence of the local advertising program.

18. In order to further understand the Debtors' markets, the Debtors carefully monitor sales and obtains other information reflecting trends in the furniture industry and changes in customer preferences. The Debtors also review industry publications, attend trade shows and maintain close contact with suppliers to aid in identifying trends and changes in the industry.

## II. Corporate History and Organizational Structure

19. A chart depicting the Debtors' organizational structure is attached hereto as Exhibit A.

20. <u>Leasing Strategy and Current Locations</u>. Obtaining attractive, high-traffic store locations is critical to the success of the Debtors' stores. The site selection process involves

6

numerous steps, beginning with the identification of territories capable of sustaining a number of stores sufficient to enable such stores to enjoy significant economies of scale, particularly in advertising, management and distribution. Significant factors in choosing a location include market demographics, the availability of newspapers and other advertising media to efficiently provide an advertising umbrella in the new territory, as well as certain logistical criteria, including the distance of a potential store location to one of the Debtors' warehouses.

21. The locations currently leased by the Debtors generally range in size from approximately 2,000 square feet to 13,000 square feet in the Jennifer segment, and up to 40,000 square feet in the Ashley segment. The Debtors anticipate that Jennifer stores opened in the future will range from approximately 2,000 square feet to 4,000 square feet, and Ashley stores will range between 10,000 and 40,000 square feet. Stores may be freestanding or part of a strip shopping center.

22. The Debtors closed seven Jennifer stores in fiscal 2009, and two Jennifer stores during the twenty-six week period ended February 27, 2010. As of the Petition Date, the Debtors will have closed nineteen stores during fiscal 2010. The Debtors do not anticipate opening any additional Jennifer stores during fiscal 2010, but will do so in the future when attractive opportunities present themselves.

23. Sources of Supply. The Debtors currently purchase from an overseas manufacturer (as discussed below) on 180-day terms. The Debtors also are currently purchasing merchandise for their stores from a variety of domestic manufacturers, generally on 30 to 75 day terms. The Debtors' purchasing power enables the Debtors to receive the right, in some instances, to exclusively market certain products, fabrics and styles.

24. The Debtors' principal suppliers are a Chinese manufacturer, Haining Mengnu Group Co. Ltd. ("Mengnu"), and Ashley Furniture Industries.

25. <u>Warehousing and Related Services</u>. The Debtors' warehousing and distribution facilities consist of warehouses in North Carolina, New Jersey and California. The Debtors also maintain satellite warehouses in California, Florida, Georgia, Massachusetts, Washington D.C., Michigan and Illinois.

26. <u>Competition</u>. The Debtors compete with other furniture specialty stores, major department stores, individual furniture stores and regional furniture chains, some of which have been established for a long time in the same geographic areas as the Debtors' stores. The Debtors believe that the principal areas of competition with respect to business are store image, price, delivery time, selection, advertising, service and a direct sourcing model from China through Mengnu. The Debtors also believe that they compete effectively with such retailers and direct China sourcing because their stores offer a broader assortment of convertible sofabeds and leather upholstery than most of their competitors and, as a result of volume purchasing, such merchandise is offered at attractive prices.

27. <u>Trademarks</u>. The trademarks Jennifer Convertibles, Jennifer Leather, Jennifer House, With a Jennifer Sofabed, There's Always a Place to Stay, Jenni-Pedic, Elegant Living, Jennifer's Worryfree Guarantee, Jennifer Living Rooms, Bellissimo Collection, and Jennifer Sofas, are registered with the U.S. Patent and Trademark Office and are owned by the Debtors.

### III. Prepetition Indebtedness and Capital Structure

28. <u>Preferred Stock</u>. In December 1997, Klaussner Furniture Industries, Inc. ("Klaussner") purchased $5,000,000 of the Debtors' convertible preferred stock. The 6,490 outstanding shares of Series A convertible preferred stock ("Series A Stock"), which are owned by Klaussner, are non-voting, have a liquidation preference of $3,245, do not pay dividends

(except if declared on the common stock) and are convertible into 924,500 shares of the Debtors' common stock. In addition, as long as Klaussner owns at least 10% of the Debtors' outstanding common stock, assuming conversion, it has the right of first refusal to purchase any common stock or equivalents sold by the Debtors at less than $3.51 per share.

29. In connection therewith, and as a result of the Debtors' granting options to employees to purchase shares of common stock at $2.00 per share, on January 18, 2001, the Debtors granted Klaussner an option to purchase 18,730 shares of common stock at an exercise price of $2.00 per share. The option expires in January 2011. During May 2006, Klaussner voluntarily converted 3,510 shares of Series A Preferred Stock into 500,000 shares of the Debtors' common stock. The remaining 6,490 shares of Series A Preferred Stock are convertible into 924,500 shares of the Debtors' common stock.

30. In addition, the Debtors issued 88,880 shares of Series B convertible preferred stock ("Series B Stock") having a value of $370. Each share of Series B Stock is convertible, at the option of the holder, into seven-tenths of a share of the Debtors' common stock. In addition, holders of the Series B Stock are entitled to receive, upon surrender of their stock certificates, $0.10 in cash for each pre-conversion share of the Debtors' Series B Stock held by such holder. The Series B shares are non-voting, have a liquidation preference of $5.00 per share and accrue dividends at the rate of $.35 per share per annum. The Series B Stock is convertible at the option of the Debtors at any time after the common stock trades at a price of at least $7.00 per share.

31. On May 15, 2007, certain holders of Series B Stock elected to convert 40,891 shares into 28,523 shares of the Debtors' common stock. Fractional shares of the Debtors' common stock were not issued as a result of the conversion. Instead, holders of the Series B Stock who otherwise would have been entitled to receive a fractional share received an amount

9

in cash equal to $5.00 per post conversion share (calculated on a pro rata basis) for such fractional shares. Dividends earned on the Debtors' Series B Stock tendered for conversion up until and including May 15, 2007 were paid. During May 2007, the Debtors paid an aggregate of $4 for each pre-conversion share of the Debtors' Series B Stock held by such holders and $1 for fractional shares of common stock. In addition, accumulated unpaid dividends for the period October 30, 2005 through May 15, 2007 in the amount of $48 were paid to all holders of Series B Stock. All such amounts were charged to additional paid in capital. Accumulated unpaid dividends for the period May 16, 2007 through August 29, 2009 amounted to $39.

32. <u>Common Stock</u>. As of December 11, 2009, Harley J. Greenfield, Chairman of the Board and Chief Executive Officer and principal stockholder, beneficially owns approximately 19.1% of our outstanding shares of common stock. All officers and directors beneficially own approximately 36.6% of the outstanding common stock as a group, including Messrs. Greenfield and Ed Seidner. Since the holders of the Debtors' common stock do not have cumulative voting rights, such officers' and directors' ownership of the common stock will likely enable them to exercise significant influence in matters such as the election of directors and other matters submitted for stockholder approval.

33. <u>Unsecured Debt: Mengnu</u>. During January 2009, the Debtors began to transition from Caye Upholstery LLC ("Caye"), the Debtors' previous primary supplier, to Mengnu. Mengnu currently manufactures approximately 95% of what the Debtors historically ordered through Caye, and as such, plays a critical role in the Debtors' operations. Mengnu provided a letter agreement in November 2008 to the effect that if Caye stopped supplying the Debtors prior to November 12, 2009, it would supply the Debtors goods under an arrangement substantially the same as the prior arrangement with Caye except that under the agreement with Mengnu the

amount payable by the Debtors cannot exceed $10,000,000. On April 13, 2009, Mengnu and the Debtors amended and restated the terms of the letter agreement to provide, that effective August 1, 2009, the Debtors would have up to 150 days to pay for the goods without interest or penalty. The amended and restated letter agreement terminates on September 30, 2010. On December 10, 2009, Mengnu further amended the terms of the letter agreement extending the terms from 150 days to 180 days. Any amounts due that are not paid within the additional 30 day grace period, will be charged interest at a per annum rate of 2% until payment is made. During May 2010, the Debtors exceeded the 180 day terms.

34.     As of the Petition Date, the Debtors owe Mengnu approximately $16,500,000. Prior to the Petition Date, the Debtors and Mengnu engaged in arms'-length discussions and negotiations with respect to the continued production and shipment of merchandise from Mengnu, and payment terms were established on the same. These terms are memorialized in the Critical Vendor Motion filed contemporaneously herewith, and are also discussed in section IV below.

35.     Unsecured Debt: Ashley. During fiscal 2007, the Debtors opened their first of the Ashley Stores. As of the Petition Date, the Debtors operate seven Ashley Stores under seven separate license agreements. The Ashley segment is a big box, full line home furniture retail store concept, and is highly profitable due to its unique sourcing model, whereby once most sales are executed, Ashley's supplier manages the supply chain process. Ashley is a sole source supplier for the Ashley product line. The Ashley segment requires the customer to place a deposit of 100% of the purchase price when the sale order is given, and requires that the Debtors make payments to Ashley on 30 day terms for the goods purchased. As of the Petition Date, the Debtors owe Ashley approximately $1,400,000. Ashley has agreed to continue to provide

merchandise, some on limited credit but the bulk of the shipments will be on COD terms. The arrearages under the license agreements will be subject to a separate motion.

## IV. Events Leading to Chapter 11

### A.    Generally

36.    Liquidity.  The Debtors have incurred a net loss and have both working capital and stockholders' deficiencies for the years ended August 29, 2009 and August 30, 2008.  For the thirteen week period ended May 29, 2010, net loss was $4,775,000, compared to net loss of $1,532,000 for the thirteen-week period ended May 30, 2009.  In addition, as of May 29, 2010, the Debtors had a working capital deficiency of $23,321,000 compared to a deficiency of $5,322,000 at August 29, 2009, and had available cash and cash equivalents of $4,361,000 compared to $5,609,000 at August 29, 2009.

37.    The Debtors have implemented cost cutting programs, including store closings, termination of personnel, salary reductions for certain executive officers and renegotiations of lease agreements.  Additionally, the credit agreement with Caye, the Debtors' then principal supplier was terminated in July 2009, and, in connection therewith, Caye released its security interest in the Debtors' assets.  Further, the Debtors and Mengnu who replaced Caye, amended and restated the terms of their letter agreement to provide the Debtors up to 180 days to pay for goods without interest or penalty effective August 1, 2009 through September 30, 2010.  As of August 2009, based on the then level of store operations and available cash, and after giving effect to cost cutting programs that have been implemented and the extended credit terms received from Mengnu, management anticipated that the Debtors would have sufficient available cash to operate for the next 12 months.

38.    However, further deterioration of the current economy, the depressed housing market and sourcing of products from China had a material adverse effect on the Debtors'

962299-14

liquidity. In the first instance, during the first half of 2010, the Debtors experienced a delay in the receipt of merchandise from Mengnu, which negatively impacted the Debtors' revenues. This delay, coupled with severe congestion at the ports in China with respect to shipments, negatively affected delivery time to the Debtors' consumers. In addition, during such period and thereafter, the credit card processor increased the hold back of certain payments due the Debtors (as discussed below). As a consequence of such events, amounts payable by the Debtors to its suppliers, landlords and advertisers were not paid, even by their extended due dates. In addition, the loss of the Debtors' private label financing card adversely impacted the Debtors' sales. Moreover, as settlement negotiations have progressed with respect to the Debtors' employment class litigation (also discussed below), it has become apparent that it would be required to make a $1.3 million cash payment as part of any such settlement. Finally, due to the current state of the credit markets, financing remains limited and the Debtors were unable to find appropriate financing to provide them with adequate capital to restructure its obligations out of a chapter 11.

39. <u>Inventory Backlog</u>. The Debtors pride themselves on a quick turnover of purchased goods to the customer. In previous years, a customer who purchased goods from the Debtors could expect to receive their purchased items in as quickly as one week's time. However, due to congestion at the ports in China - which delayed product from leaving China - and other problems associated with receiving new product, the Debtors have been experiencing an inventory backlog and severe delays in their delivery of goods to customers. As a result, sales and cash receipts have been severely impaired, and issues related to non-receipt of goods have continued to adversely impact the Debtors' liquidity.

40. <u>Credit Card Companies</u>. The credit card companies have, for the past several years, paid the Debtors shortly after credit card purchases by customers. In this connection, the

Debtors entered into an agreement with one of the credit card companies, Merrick Bank ("Merrick") for the interim period ending December 17, 2008, to process customer credit card payments through Visa and Mastercard. Pursuant to the initial agreement entered into with Merrick, a $500,000 reserve was established as, in effect, a performance bond against delivery of the merchandise ordered by their credit card customers. During December 2008, the parties executed an agreement, which increased the amount of the reserve to approximately $800,000.

41. However, in light of current economic and credit conditions and the Debtors' financial condition, Merrick took it upon itself to recently reexamine its reserve and holdback policies. First, Merrick increased the interest rate it was charging as a fee to process the credit card deposits. Then, beginning in April 2010, Merrick began to increase its reserve by holding back additional funds processed on customer deposits. By the end of April 2010, Merrick increased its reserve to approximately $1,300,000. Increasing the reserve amount on account of the funds owed to the Debtors from customers deposits and increasing the processing fee adversely affects the Debtors' cash flow, and significantly decreases the Debtors' liquidity. Since April, 2010, Merrick has continued to hold back 25% of all customer deposits processed through Merrick. As of the Petition Date, Merrick holds approximately $4,000,000 in reserve. This has had a significant if not damaging impact on the Debtors' cash flow.

42. In addition, the Debtors' cash flow problems have been compounded by American Express as processor of all American Express transactions. Until 2009, American Express funded the Debtors on account of transactions on a three (3) day lag. As a result of the Debtors' financial difficulty, American Express increased the days in which funds the company from three (3) days to fifteen (15) days, such that the Debtors' only receive cash from American Express transactions twice a month.

43.  Landlord Problems.  The Debtors' management, as a result of a rapid decline in retail sales, began to explore and analyze various strategic alternatives in order to identify available alternatives to meet their projected liquidity needs.  Based on that analysis, the Debtors determined to exit certain markets and reduce their national footprints in certain states and territories (the "Exiting Territories").  The Debtors further determined that closing stores in these non-profitable Exiting Territories would dramatically reduce the administrative costs associated with these underperforming stores, allow management to better manage fewer territories, and would provide the maximum value to the Debtors' estates.  In addition, the Debtors have determined to close an additional eight stores in markets that it intends to stay in but are no longer integral to the Debtors' ongoing business operations and present burdensome contingent liabilities.  While the Debtors have determined to close stores in the Exiting Territories as well as the additional eight stores in the non Exiting Territories, the Debtors have been thus far unable to do so and, as a result, rent has continued to accrue which the Debtors have been unable to pay. In addition, due to the Debtors' cash restraints, the Debtors have also been unable to pay rent to certain landlords at store locations in territories that the Debtors intend on maintaining.  As a result, as of the Petition Date, the Debtors owe an estimated $6,980,000 to their landlords.

44.  Pending Litigation.  On July 16, 2009, a complaint styled as a putative class action was filed against the Debtors in the United States District Court of the Northern District of California, by an individual and on behalf of all others similarly situated.  The complaint seeks unspecified damages for alleged violations of the California Labor Code sections 201, 202, 203, 204, 226, 226.7, 510, 512, 515, 1174, 1198 and 2802, violations of Section 17200 et seq. of the California Business and Professions Code and violations of the federal Fair Labor Standards Act. Such alleged violations include, among other things, failure to pay overtime, failure to reimburse

certain expenses, failure to provide adequate rest and meal periods and other labor related complaints.

45.     By Order dated February 26, 2010, Judge Illston denied Plaintiff's motion for certification of the class, without prejudice.   Thereafter, the parties agreed to participate in a mediation, and after extensive negotiations, reached an agreement in principle which was put on the record before the court on June 18, 2010.  Pursuant to the terms agreed to by the parties, the Debtors have agreed to pay $1,300,000 (the "Settlement Payment") in full settlement of all claims set forth in the class action.  For settlement purposes only, the parties agreed to the class certification of the class action. The Settlement Payment was to be funded as follows: on or before August 17, 2010, the Debtors were scheduled to deposit $300,000 into an escrow account. Ten days after final settlement approval, which would be given on or after January 15, 2011, the Debtors were required to make a further deposit of an additional $1,000,000.  In the event of non-approval by the District Court, the settlement would be deemed voided and no party will be entitled to the payment amounts contemplated therein.  If the settlement fails after the Debtors have deposited the funds, all such amounts will be returned to the Debtors within ten days of the failure, together with any interest accrued on such amount.

46.     Caye: Prior to Mengnu, the Debtors' key supplier was Caye, a domestic furniture manufacturer, as well as importer of furniture from China.  During the fiscal year ended August 29, 2009, the Debtors purchased approximately 40% of their merchandise from Caye, 33% from the Mengnu and 16% from Ashley.  In 2008, Caye began experiencing financial problems which negatively impacted its ability to manufacture and supply key products to the Debtors. Beginning in 2009, due to Caye's financial condition, Caye was unable to adequately supply the Debtors' with necessary product and, as a result, the Debtors' sales were negatively impacted.

962299-14

Because the Debtors heavily relied on Caye as it domestic supplier and since a large portion of the Debtors' revenues were derived from sales of Caye, until alternative sources of supply with Mengnu were established, the loss of Caye ultimately had a material adverse impact on the Debtors.

47.     Limited Suppliers.  As discussed above, the Debtors obtain approximately 95% of their inventory from Mengnu.  As such, the loss of Mengnu could have a detrimental impact on the Debtors until alternative sources of supply are established.  Mengnu's position as a significant creditor could also potentially result in a temporary or permanent loss of the Debtors' principal supply of merchandise, if, for example, they halted supply because the Debtors defaulted on or were late in making payments to them.

48.     As discussed in significant detail in the Critical Vendor Motion filed concurrently herewith, the Debtors will commence making payments to Mengnu in weekly installments of $400,000 during the pendency of this case, to be applied to pay outstanding amounts due from the Debtors to Mengnu on account of pre-petition indebtedness.  On account of its critical vendor status, Mengnu will agree to continue to ship reasonable and projected amounts of goods ordered by the Debtors in accordance with an ordering and shipping schedule mutually agreed upon by the Debtors and Mengnu.  So long as Mengnu continues to ship goods to the Debtors, the Debtors remain obligated to pay.  However, if Mengnu refuses to supply goods to the Debtors as agreed and/or fails to comply with other terms to which the parties have agreed, the Debtors may, in their discretion, declare that Mengnu is in breach of its agreement with the Debtors and immediately cease making the required payments.

49.     Customer Financing:  From 1997 through February 2009, the Debtors offered a private label customer financing pursuant to which the Debtors' financed sales and sold financed

receivables on a non-recourse basis to an independent finance company, CitiFinancial. This provided a financial benefit to the Debtors as it allowed customers to finance their purchases, thereby increasing sales and allowed the Debtors to increase its cash on hand. In the beginning of 2009, due to the downturn in the economy and related factors affecting the retail business, CitiFinancial requested that the Debtors provide a letter of credit in order to continue to maintain the private label financing. The Debtors were unable to provide such letter of credit and in January 2009, the finance company terminated its dealer agreement with the Debtors effective March 8, 2009. The Debtors believe that this termination had an impact on their net sales, and increased their transaction fees due to the fact that traditional credit card transactions have higher transaction fees. In addition, given the state of the US economy and financial difficulties facing the average consumer, the Debtors believe that the loss of customer financing is a significant contributing factor to the loss of sales, even more so as credit card companies have reduced consumer credit lines.

50. <u>Related Company Transaction</u>. Up until December 31, 2009, 19 stores which were licensed by the Debtors, 17 of which were located in New York City and surrounding areas and were on a royalty-free basis, were owned and operated by a related company (the "Related Company"). As of December 31, 2009, after the Related Company defaulted on its payment obligations to the Debtors, the Debtors, in order to protect their brand and customers, entered into an agreement (the "Agreement") with the Related Company, effective January 1, 2010.

51. Pursuant to the Agreement, the Related Company ceased operations at the 19 owned stores (plus one store which it operated but did not own) and the Debtors began operating these stores solely for its own benefit and account. The Debtors agreed to purchase the inventory in the stores' showrooms for $635,000, payable over five months and subject to offset under

certain circumstances. The Agreement allowed the Debtors to evaluate each store location and negotiate with the landlords at such locations for entry into new leases and endeavor to cancel or defer the rent arrearages, which the Related Company advised aggregated approximately $300,000 as of January 1, 2010. The Debtors agreed to pay no more than $300,000 to settle the arrearages at all 20 stores and if the arrearages exceed $300,000 the Related Company agreed to reimburse the Debtors for such excess or such excess would be used to offset the amount the Debtors owe the Related Company for the purchase of the inventory. In addition to the rent arrearages, the Debtors assumed other liabilities of the Related Company, such as delivery expenses and fabric protection of approximately $3 million and also wrote-off merchandise. The Debtors also agreed to offer to employ all store employees previously employed by the Related Company but agreed not to be responsible for any commissions, salary, health or other benefits or other compensation owed them prior to January 1, 2010. The Debtors agreed to be responsible for the costs of operating the stores on and after January 1, 2010, except with respect to stores vacated by the Debtors.

52.     As of the Petition Date, the Debtors have entered into new leases for 19 of the 20 Related Company stores, and have not vacated any of the stores.

53.     <u>Cyclical Nature of the Furniture Industry and Competition</u>. The furniture industry has been historically cyclical, fluctuating with general economic cycles and uncertainty in future economic prospects. During economic downturns, the furniture industry tends to experience longer periods of recession and greater declines than the general economy. The slowdown in the U.S. economy and other national, regional or global economic conditions affecting disposable consumer income, such as the depressed housing market, employment levels, inflation, business conditions, fuel and energy costs, consumer debt levels, lack of available consumer or

commercial credit, uncertainty in future economic prospects, interest rates, and tax rates, may adversely affect the Debtors' business by reducing overall consumer spending or by causing customers to shift their spending to products other than those sold by the Debtors or to products sold by the Debtors that are less profitable than other product choices. The Debtors believe these factors have impacted consumer demand and spending and negatively affected their business. If current economic and credit conditions prevail they could have a material adverse effect on demand for the Debtors' products and financial condition and operating results.

54. In addition, the retail specialty furniture business is highly competitive and includes competition from traditional furniture retailers and department stores as well as numerous discount furniture outlets. The Debtors' stores may face sharp price-cutting, as well as imitation and other forms of competition, and the Debtors cannot prevent or restrain others from utilizing a similar marketing format. Although the Debtors are the largest sofabed specialty retail dealer and specialty leather retailer in the United States, many of their competitors have considerably greater financial resources.

### B. Recent Financial Results

55. On a consolidated basis, the Debtors' revenues from continuing operations decreased from approximately $120,131,000 in the year ended August 30, 2008 to approximately $94,177,000 in the year ended August 29, 2009. For the thirty-nine weeks ended May 29, 2010, revenues from continuing operations were approximately $70,036,000.

56. For the thirteen week period ended May 29, 2010, net loss was $4,775,000, compared to net loss of $1,532,000 for the thirteen-week period ended May 30, 2009. In addition, as of May 29, 2010, the Debtors had a working capital deficiency of $23,321,000 compared to a deficiency of $5,322,000 at August 29, 2009, and had available cash and cash equivalents of $4,361,000 compared to $5,609,000 at August 29, 2009.

C.    **The Plan Support Agreement**

57.    After extensive arm's length negotiations, the Debtors and Mengnu reached agreement on the terms of a proposed restructuring, the terms of which are memorialized in a Plan Support Agreement, attached hereto as Exhibit B.   Upon consummation of the presently contemplated plan of reorganization, Mengnu is anticipated to continue supplying merchandise to the Debtors throughout the Chapter 11 proceedings, and upon confirmation of a plan of reorganization will receive 95% of the reorganized Debtors' newly issued common stock.   The remaining 5% of the new common stock will be held by other creditors, and the present equity holders' interests will be cancelled.   In exchange for the equity interests, claims from Mengnu, as the Debtors' principal creditor, and other creditors will be extinguished.   However, the parties understand that because the ultimate resolution of the chapter 11 cases will be determined by the Bankruptcy Court and will involve extensive court proceedings, there is no assurance that the contemplated plan of reorganization can be successfully promulgated.

## V.  Information Required by Local Rule 1007-2

58.    Local Bankruptcy Rule 1007-2 requires that the Debtors provide certain information, which is set forth below.

59.    The information required by Local Rule 1007-2(a)(1) is set forth in Parts I through IV above.

60.    In response to the information requested in Local Rule 1007-2(a)(3), to the best of my knowledge, no committee has been organized prior to the Petition Date.

61.    Pursuant to Local Rule 1007-2(a)(4), Schedule 1 hereto lists the following information with respect to each of the holders of the Debtors' 20 largest unsecured claims on a consolidated basis, excluding claims of insiders: the creditor's name, address and telephone number (if available); the name(s) of person(s) familiar with the Debtors' accounts, the amount

of the claim, and an indication of whether the claim is contingent, unliquidated, disputed or partially secured. In each case, the claim amounts listed on Schedule 1 are estimated and subject to verification. In addition, the Debtors reserve their rights to assert remedies, defenses, counterclaims and offsets with respect to each claim.

62. Pursuant to Local Rule 1007-2(a)(5), Schedule 2 hereto provides the following information with respect to each of the holders of the five largest secured claims against the Debtors on a consolidated basis: the creditor's name, address, telephone number, the amount of the claim, and a brief description and an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

63. Pursuant to Local Rule 1007-2(a)(6), Schedule 3 hereto provides a summary of the Debtors' assets and liabilities on a consolidated basis.

64. Pursuant to Local Rule 1007-2(a)(7), Schedule 4 hereto provides information relating to the number and classes of shares of stock, debentures, or other securities of the Debtors that are publicly held, and the number of holders thereof, listing separately those held by each of the debtor's officers and directors and the amounts so held.

65. Pursuant to Local Rule 1007-2(a)(8), Schedule 5 hereto provides a list of all of the Debtors' property in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor or agent for any such entity, giving the name, address, and telephone number of each such entity and the court in which any proceeding relating thereto is pending.

66. Pursuant to Local Rule 1007-2(a)(9), Schedule 6 hereto provides a list of the premises owned, leased or held under other arrangement from which the Debtors operate their businesses.

67.    Pursuant to Local Rule 1007-2(a)(10), Schedule 7 hereto provides the location of the Debtors' substantial assets, the location of their books and records, and the nature, location and value of any assets held by the Debtors outside the territorial limits of the United States.

68.    Pursuant to Local Rule 1007-2(a)(11), Schedule 8 hereto provides a list of the nature and present status of each action or proceeding, pending or threatened, against the Debtors or their property.

69.    Pursuant to Local Rule 1007-2(a)(12), Schedule 9 hereto provides a list of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtors and a description of their relevant responsibilities and experience.

70.    Pursuant to Local Rule 1007-2(b)(1)-(2)(A), Schedule 10 hereto provides a list of the estimated amount of weekly payroll to the Debtors' employees (not including officers, directors and stockholders) and the estimated amount to be paid to officers, directors, stockholders and financial and business consultants retained by the Debtors, for the thirty (30) day period following the filing of the Debtors' chapter 11 petitions.

71.    Pursuant to Local Rule 1007-2(b)(3), Schedule 11 hereto provides for the thirty (30) day period following the filing of the chapter 11 petitions, a list of the estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

## VI.  **Conclusion**

72.    I hereby declare under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief, and respectfully request that all of the relief requested in the First Day Motions be granted, together with such other and further relief as is just.

23

Dated: July 19, 2010
        New York, New York

        /s/ Rami Abada

**Rami Abada**

# SCHEDULE 1

## 20 Largest Unsecured Claims (Excluding Insiders)[2]

As required under Local Rule 1007-2(a)(4), the following is a schedule of the Debtors' 20 largest unsecured claims,[3] excluding claims of insiders.

| CREDITOR | CONTACT | ADDRESS & TELEPHONE NO. | AMOUNT OF CLAIM | CONTINGENT, UNLIQUIDATED, DISPUTED, OR PARTIALLY SECURED |
|---|---|---|---|---|
| 1. Haining Mengnu Group Co. Ltd. | Morris Zou | 1061 Long Ling Road, Economic Development Zone, Haining Zheijiang 31440 +82-573-8726-6200 | $16,673,770 | Undisputed |
| 2. Creative Television Marketing | Richard Storrs | 2550 North Hollywood Way, Ste 100 Burbank, CA 91505 (818) 748-4802 | $1,612,350 | Disputed |
| 3. Ashley Furniture Industries, Inc. | Shannon Burns | PO Box 190 Arcadia, WI 54612 (608) 323-3377 | $1,396,598 | Undisputed |
| 4. Class Action Litigation | | Case No.: C-09-3242-SI Ayisha Combs v. Jennifer Convertibles, Inc. | $1,300,000 | Contingent |
| 5. Klaussner Furniture Industries | Ellen Smith | PO Box 220, 405 Lewallen St. Asheboro, NC 27205 (336) 625-6175 | $991,291 | Disputed |
| 6. NBC Universal | Kathy Scheets | PO Box 402971 Atlanta, GA 30384-2971 (212) 664-3012 | $416,284 | Disputed |
| 7. PIC TV Incorporated | Matt Spencer | PO Box 59665 Chicago, IL 60659-0665 (818) 304-8205 | $406,957 | Disputed |
| 8. PS Promotion | Dan Green | 10798 E. Las Posas Rd Camarillo, CA 93012 (805) 491-9811 | $338,765 | Disputed |
| 9. Stratford Company/Caye Upholstery | Brenda Willard | BOA Lockbox 13933 Collective Drive Center Chicago, IL 60693 (662) 534-1524 | $336,752 | Disputed |
| 10. Brent Associates, Inc. | Steve Woods | 931 B Conklin Ave Farmingdale, NY 11735 (631) 420-0070 | $242,760 | Disputed |

---

[2] The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. All claims are subject to customary offsets, rebates, discounts, reconciliations, credits and adjustments, which are not reflected on this schedule.

[3] The amounts set forth on this Schedule represent estimated amounts as of the Petition Date.

| | | | | |
|---|---|---|---|---|
| 11. Fata Equities, LLC | Richard Saumell | 360 West 125th St<br>Suite 10<br>New York, NY 10027<br>(212) 932-8331 | $210,571 | Disputed |
| 12. 376 Boylston St. Realty Trust | Sam Hassan | 400 Boylston St,<br>Boston, MA 02116<br>(617) 267-0899 | $164,049 | Disputed |
| 13. Woodbury Office Seven | Walter Smith | P.O. Box 422<br>Laurel, NY 11948-0422<br>(516) 364-1200 | $157,290 | Disputed |
| 14. Newsday Inc. | Jen Siegel | 235 Pinelawn Rd<br>Melville, NY 11747<br>(631) 843-4050 | $144,620 | Disputed |
| 15. Boston Globe | Brent Turner | PO Box 415071<br>Boston, MA 02241-5071<br>(617) 929-8803 | $140,080 | Disputed |
| 16. 301 E 66th St Assoc Ltd Ptnshp | Andrew Lasso | c/o Ossa Properties Inc<br>301 E 66th Street<br>New York, NY 10021<br>(212) 879-6198 | $140,000 | Disputed |
| 17. Zimmerman Advertising | Michael Simon | PO Box 934130<br>Atlanta, GA 31193-4130<br>(954) 731-2900 | $137,967 | Disputed |
| 18. Restful Furniture Corp | Edward Moses | 18 Wimbledon Ct.<br>Jericho, NY 11753<br>(516) 287-7418 - Cell | $137,544 | Disputed |
| 19. WABC TV (CH7) | Fran LaSala | GPO - PO Box 5723<br>New York, NY 10087-5723<br>(212) 456-3043 | $130,538 | Disputed |
| 20. Los Angeles Times | Kia | File 54221, A/C # 026729006<br>Los Angeles, CA 90074<br>(312) 222-3676 | $128,317 | Disputed |

## **SCHEDULE 2**

### **5 Largest Secured Claims**

As required under Local Rule 1007-2(a)(5), the following lists the Debtors' largest secured claims.[4]

      None.

---

[4] The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtors.

## SCHEDULE 3

### Summary of Assets and Liabilities

As required under Local Rule 1007-2(a)(6), the following is a summary of the Debtors' assets[5] and liabilities. The following data is the most current information available and reflects the Debtors' financial condition as of July 16, 2010. The information set forth below shall not constitute an admission on behalf of the Debtors, nor is it binding upon the Debtors. The Debtors reserve all rights to challenge the priorities, nature, amount, and status of any claim or debt and of any lien or security interest securing such interest or debt.

Total Assets: $25,974,334

Total Liabilities: $46,353,345

**ASSETS**

| Current Assets | |
|---|---:|
| Cash & cash equivalents | $6,006,706 |
| Restricted cash | 159,163 |
| Accounts receivable | 5,037,704 |
| Store warehouse inventory | 10,319,562 |
| Prepaid expenses and other current assets | 1,504,601 |
| Total current assets | 22,027,736 |
| Store fixtures, equipment, and leasehold improvements | 2,334,587 |
| Other assets | 612,011 |
| **Total assets** | **$25,974,334** |

**LIABILITIES**

| Current Liabilities | |
|---|---:|
| Accounts payable, trade | $38,082,997 |
| Customer deposits | 8,270,348 |
| Accrued expenses and other current liabilities | included in AP above |
| **Total liabilities** | **$46,353,345** |

---

[5] The Debtors' assets are listed at "book value" and are not intended to be a representation of fair market value, which fair market value may be materially different.

962299-14

# SCHEDULE 4

**Information Relating to Publicly Held Stock, Debenture and Securities of the Debtors**

As required under Local Rule 1007-2(a)(6), the following is a list of the stock, debenture and other securities of the debtor that are publicly held.

| TYPE OF SECURITY | NUMBER OF SHARES OR AMOUNT | APPROXIMATE NUMBER OF RECORD HOLDERS | DATE |
|---|---|---|---|
| Series A Convertible Preferred | 6,490 | 1 | As of 6/26/2010 |
| Series B Convertible Preferred | 47,989 | 966 | As of 6/26/2010 |
| Common Stock | 7,073,466 | 265 | As of 6/26/2010 |
| Treasury Stock | 93,579 | 1 | As of 6/26/2010 |
| Outstanding Options | 2,053,726 | 23 | As of 6/26/2010 |
| Warrants | 150,000 | 1 | As of 6/26/2010 |

As required under Local Rule 1007-2(a)(6), the following is a list of the stock, debenture and other securities of the debtor that are held by the Debtors' directors and officers.

| NAME OF DIRECTOR OR OFFICER | NUMBER OF SHARES OR AMOUNT | STOCK OPTIONS | DATE |
|---|---|---|---|
| Harley Greenfield | 1,598,324 | 1,000,995 | As of 6/26/2010 |
| Ed Seidner | 830,383 | 100,000 | As of 6/26/2010 |
| Edward G. Bohn | 104,500 | 75,000 | As of 6/26/2010 |
| Kevin J. Coyle | 111,250 | 75,000 | As of 6/26/2010 |
| Leslie Falchook | 27,600 | 0 | As of 6/26/2010 |
| Rami Abada | 568,801 | 450,000 | As of 6/26/2010 |
| Kevin Mattler | 30,000 | 30,000 | As of 6/26/2010 |
| Mark Berman | 98,000 | 50,000 | As of 6/26/2010 |

962299-14

## **SCHEDULE 5**

### **Debtors' Property Not in the Debtors' Possession**

As required under Local Rule 1007-2(a)(8), the following describes the Debtors' property in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, secured creditor or agent for any such entity.

      None.

# SCHEDULE 6

## Debtors' Owned and Leased Property

As required under Local Rule 1007-2(a)(9), the following lists premises owned, leased or held under other arrangement from which the Debtors operate their business.

### Owned Property

None.

### Leased Property

| Store | Store Address | Landlord | Landlord Address |
|-------|--------------|----------|------------------|
| AAC | 417 Crossways Park Drive, Woodbury, NY 11797 | Woodbury Office Seven | P.O. Box 422 Laurel, NY 11948-0422 |
| ABR | 558 86th Street Brooklyn NY 11209 | BINA REALTY | 200 Winston Drive, Unit 221 Cliffside Park, New Jersey 07010 |
| ABY | 700 Sunrise Highway, South Service Road Patchogue NY 11772 | Restful Furniture Corp | 18 Wimbledon Ct. Jericho, NY 11753 |
| ACP | 164 Glen Cove Road Carle Place NY 11514 | Brent Associates, Inc. | 931 B Conklin Ave Farmingdale, NY 11735 |
| AEL | 88-12 Queens Blvd Elmhurst NY 11373 | 8812 Queens Boulevard, LLC | 421 Seventh Avenue, 15th Floor New York, NY 10001 |
| AFD | 1821 Broad Hollow Road (Rte. 110) Farmingdale NY 11735 | GMM Consulting, Inc | 55 Price Parkway Farmingdale, NY 11735 |
| AFD | 1821 Broad Hollow Road(Rte. 110) Farmingdale NY 11735 | TMCC, Inc. | 55 Price Parkway Farmingdale, NY 11735 |
| AKP | 2233 Flatbush Avenue Brooklyn NY 11234 | AYRES ASSOCIATES | 69-06 Grand Avenue Maspeth, NY 11378 |
| ALW | 2300 Broadway New York NY 10024 | 83rd St. Investors LLC | c/o The Bromley Companies 120 5th Avenue, 11th Floor New York, NY 10011 |
| BAR | 8515 4th Avenue Brooklyn NY 11209 | Robert J. Sabbagh, George A. | 8107 Colonial Rd. \Brooklyn, NY 11209 |
| BBC | 15 Cambridge Street Burlington MA 01803 | Shiff Realty Trust | 14 Old Stagecoach Road Bedford, MA 01730 |
| BP | 1770 Boston Post Road Milford CT 06460 | Corner Properties 2, LLC | 431 Orange Street New Haven, CT 06511 |
| BSC | 186 Broadway Saugus MA 01906 | Walnut Associates, LP | 355 Middlesex Avenue, Suite 7 Wilmington, MA 01887 |
| BWR | 1524 VFW Parkway Route 1 West Roxbury MA 02132 | Hannington LP | 1901 Hansen St Sarasota, FL 34231 |
| CAB | 1 Porter Square Cambridge MA 02140 | KSKIM Porter Equity Partners, LLC | c/o Everest Partners LLC 150 East 58th St. Suite 2000 New York, NY 10155 |
| CB | 1000 East Imperial Highway, Ste A3 Brea CA 92821 | MJD Investment Co. | 580 West Lambert Rd. Ste. E Brea, CA 92821 |
| CBW | 11948 San Vincente Boulevard ,Los Angeles CA 90049 | Vicenti Asset LLC | 11950 San Vicente Blvd Ste 200 Los Angeles, CA 90049 |

| | | | |
|---|---|---|---|
| CCB | 33 Colma Boulevard<br>Colma  CA 94014 | 280 Metro Limited Partnership (Kimco) | c/o Kimco Realty Corp.<br>P.O.Box 5020,<br>3333 New Hyde Park Road<br>New Hyde Park, NY 11042 |
| CCC | 5905 Sepulveda Boulevard<br>Culver City  CA 90230 | William Benbassat | 5705 S Sepulveda Boulevard<br>Culver City, CA 90230 |
| CCI | 17394 E Colima Rd<br>Rowland Heights   CA 91745 | Centro Watt Property Owner II, LLC | Puente Hill Town Ctr<br>Department 9190<br>Los Angeles, CA 90084-9190 |
| CCO | 280 Teller Street - Suite 140<br>Corona  CA 92879 | McKinley Corona | 280 Second Street, Suite 230<br>Los Altos, CA 94022 |
| CD | 6698 Amador Plaza Road<br>Dublin  CA 94568 | Enea Properties Company | 190 Hartz Avenue Suite 260<br>Danville, CA 94526 |
| CEL | 4060 El Cerrito Plaza<br>El Cerrito  CA 94530 | El Cerrito Plaza | c/o MCD-RC CA-El Cerrito, LLC<br>P.O. Box 31001-0900<br>Pasadena, CA 91110-0900 |
| CFH | 39005 Fremont Hub<br>Fremont  CA 94538 | Freemont Retail Partners LP | P.O. Box 730649<br>Dallas, TX 75373-0649 |
| CG | 114 N Brand Boulevard<br>Glendale  CA 91203 | VNN Group LLC | 3400 Oakmont View Drive<br>Glendale, CA 91208 |
| CHB | 16672 Beach Boulevard  Suite C<br>,Huntington Beach  CA 92647 | GGF Huntington, LLC | 100 West Broadway,<br>Suite 950<br>Glendale, CA 91210 |
| CLH | 24315 Avenida De La Carlotta<br>Laguna Hills  CA 92653 | Laguna Hills Investment Co. | C/O Fritz Duda Co.<br>P.O. Box 60848<br>Los Angeles, CA 90060 |
| CLT | 18477 Ventura Boulevard<br>Tarzana  CA 91356 | Midland Pacific LLC | 18517 Torrey Pines Lane<br>Tarzana, CA 91356 |
| CMC | 9177 B Central Avenue<br>Montclair  CA 91763 | Chavin Family | 8939 Vernon Avenue ,Suite A<br>Montclair, CA 91763 |
| CP(JLG) | 168D Glen Cove Road<br>Carle Place  NY 11514 | Brent Associates, Inc. | 931 B Conklin Ave<br>Farmingdale, NY 11735 |
| CPA | 80 North Lake Avenue<br>Pasadena  CA 91101 | I & D Sherry | 818 N. Doheny Drive<br>Suite 1002<br>West Hollywood, CA 90069 |
| CRP | 5673 Redwood Drive<br>Rohnert Park  CA 94928 | Redwood Plaza/Man Je Kim | 6650 Commerce Blvd<br>Suite 11A<br>Rohnert Park, CA 94928 |
| CS | 3550 Stevens Creek Boulevard, Ste 130<br>San Jose  CA 95117 | Ostrich, Inc. | 34 W. Santa Clara Street<br>San Jose, CA 95113 |
| CSA | 729 Fourth Street<br>San Rafael CA 94901 | Tommy Kennedy | 960 Lincoln Ave. - Suite 314<br>San Rafael, CA 94901 |
| CSJ | 944 Blossom Hill Road<br>San Jose  CA 95123 | Winfield Group | 10500 N.E. 8th Street<br>Suite 850<br>Bellevue, WA 98004 |
| CSM | 1745 S. El Camino Real<br>San Mateo  CA 94402 | HK Bashi | KLIM Mgmt PO Box 27263<br>San Francisco, CA 94127 |
| CSR | 25586 The Old Road<br>Stevenson Ranch  CA 91381 | Valencia Marketplace I LLC | 101 N. Westlake Boulevard<br>Suite 201<br>Westlake Vllge, CA 91362 |
| CT | 19510 Hawthorne Boulevard<br>,Torrance CA 90503 | Kir Torrance, L.P. | C/O Kimco Realty Corp.<br>3333 New Hyde Pk Rd,<br>PoBox 5020<br>New Hyde Park, NY 11042 |
| CTO | 125 N. Moorpark Road<br>Thousand Oaks  CA 91360 | JGL Trustees Services | 27569 Ethan Allen Way<br>Sun City, CA 92585 |
| CTU | 2836 El Camino Real<br>Ste. 2836<br>Tustin  CA 92780 | Tustin Market Place | Dept 0350-622401-2836-S50015<br> Los Angeles, CA 90084 |

962299-14

| CU | 383 University Avenue<br>Palo Alto  CA 94301 | AEK Associates (Ventana Prop) | 695 Oak Grove, Suite 200<br>Menlo Park, CA 94025 |
|---|---|---|---|
| CVN | 1900 Van Ness Avenue<br>San Francisco  CA 94109 | 1900-1902 Van Ness LLC | 1902 Van Ness Avenue,<br>3rd Floor<br>San Francisco, CA 94109 |
| CWH | 8751 Beverly Boulevard<br>West Hollywood  CA 90048 | Klein Miller | 2121 Century Woods Way<br>Los Angeles, CA 90067 |
| DAN | 15 Backkus Avenue<br>Danbury Square<br>Danbury  CT 06813 | Urstadt Biddle Properties Inc. | 321 Railroad Ave.<br>Greenwich, CT 06830 |
| DB | 116 South Woodward Avenue<br>Birmingham  MI 48009 | Robert Gwynn | The Parliament House<br>405 N Ocean Drive #1908<br>Pompano Beach, FL 33062 |
| DR | 32467 Gratiot Avenue<br>Roseville  MI 48066 | Macomb Mall, LLC | P.O. Box 712516<br>Cincinnati, OH 45271-2516 |
| DTY | 23265 Eureka Road<br>Taylor  MI 48180 | Athen's Land Company, L.L.C. | P.O. Box 218<br>Trenton, MI 48183 |
| EB | 285-291 Route 18 South<br>East Brunswick NJ 08816 | Crosspointe Plaza, LLC | 1260b Steltlon Road<br>Piscataway, NJ 08854 |
| FB | 2980 North Federal Highway<br>Boca Raton  FL 33431 | Investments Limited | 215 No. Federal Highway<br>Suite 1<br>Boca Raton, FL 33431 |
| FCL | 1711 Broad Hollow Road<br>Farmingdale  NY 11735 | Sherwood 110 Corp. | 2580 Hempstead Turnpike<br>East Meadow, NY 11554 |
| FF (JLF) | 1661 & 1681A Broad Hollow Road<br>& Sherwood Ave<br>Farmingdale  NY 11735 | Sherwood 110 Corp. | 2580 Hempstead Turnpike<br>East Meadow, NY 11554 |
| FFL | 3058 North Federal Highway<br>Ft Lauderdale  FL 33306 | Oakland Square LLC | PO Box 7932<br>Fort Lauderdale, FL 33338 |
| FL | 4542 North University Drive<br>Lauderhill  FL 33351 | 4400 University Drive Ltd | 2295 Corporate Blvd.<br>NW #131<br>Boca Raton, FL 33431 |
| FN | 1730 NE 163rd Street<br>North Miami Beach  FL 33162 | Herman Goldszlager,Sam &Sara Goldszlager | 7440 Plantation Road<br>Plantation, FL 33317 |
| FPP | 10181 Pines Boulevard<br>Pembroke Pines  FL 33026 | Pembroke Place Property, LLC | 340 Royal Poinciana Way ,<br>Suite 316<br>Palm Beach, FL 33480 |
| FR | 4345 Highway  9<br>Freehold  NJ 07728 | Pond Road Associates, LLC | 620 Tinton Avenue<br>Building B, Suite 200<br>Eatontown, NJ 07724 |
| FWB | 20665 Lyons Road<br>Boca Raton  FL 33434 | Boca Pier Associates Ltd | 7777 Glades Road Suite 212<br>Boca Raton, FL 33434 |
| GEO | 1634 Wisconsin Avenue NW<br>Washington  DC 20007 | Nam Won Paek or Soon M Paek | 9217 Beech Hill Drive<br>Bethesda, MD 20817 |
| GK | 840 Ernest Barrett Pkwy. Suite 494<br>Kennesaw  GA 30144 | SCI Cobb Place Fund, LLC | 1801 Century Park East<br>Century City, CA 90067 |
| GSM | 3855 Venture Drive<br>Duluth  GA 30096 | IA DULUTH (old landlord) | 4575 Paysphere Circle<br>Chicago, IL 60674 |
| GSM | 3855 Venture Drive<br>Deluth  GA 30096 | Inland American Retail Management LLC | Lockbox # 16116<br>Collections Center Drive<br>Chicago, IL 60693 |
| HC | 365 Central Park Avenue<br>Scarsdale  NY 10583 | Pine Top Associates | 365 Central Park Ave.<br>Scarsdale, NY 10583 |
| HNJ | 2101 Highway 35<br>Holmdel Towne Center<br>Holmdel  NJ 07733 | Holmdel Towne Center LLC | c/o Kimco Realty Corp.<br>P.O. Box 5020<br>3333 New Hyde Park Road<br>New Hyde Park, NY 11042 |
| HNY | 74 West 125th Street<br>Harlem  NY 10027 | Fata Equities, LLC | 360 West 125th St - Suite 10<br>New York, NY 10027 |
| HR | 1145 High Ridge Road<br>Stamford  CT 06905 | Samuel Lotstein Realty Co LLC | 159 Main Street<br>Stamford, CT 06904 |

962299-14

| | | | |
|---|---|---|---|
| IA | 2907 W. Addison Street<br>Chicago IL 60618 | RJB-II Limited Partnership | 1731 N. Marcey Street<br>Suite 520<br>Chicago, IL 60614 |
| ID | 730 W. Diversy Parkway<br>Chicago IL 60614 | Diversey/Halsted Ltd Ptnship<br>(Jerome Meyer) | c/o Atlas Partners, LLC<br>55 East Monroe Suite 1890<br>Chicago, IL 60603 |
| ILP | 814-816 W. North Avenue<br>Chicago IL 60642 | Jerome H.Meyer & Co. | 640 N. LaSalle St., Suite 605<br>Chicago, IL 60610 |
| IS | 7160 Carpenter Road<br>Skokie IL 60077 | DDRTC VILLAGE CROSSING<br>LLC | Lockbox# 16116<br>Collections Center Drive<br>Chicago, IL 60693 |
| ISH | 697 East Golf Road<br>Schaumburg IL 60173 | Zifkin Realty Management,<br>LLC | P.O. Box 64925<br>Chicago, IL 60664-4925 |
| IVH | 701 N. Milwaukee Avenue, Ste.264<br>Vernon Hills IL 60061 | Inland Commercial Property | 4575 Paysphere Circle<br>Chicago, IL 60674 |
| JCB | 376 Boylston Street<br>Boston MA 02116 | 376 Boylston St. Realty Trust | 400 Boylston St.,<br>Boston, MA 02116 |
| JGC | 2400 Grand Concourse<br>Bronx NY 10458 | Ayelet Managment LLC | 527 Lenox Ave<br>New York, NY 10037 |
| JLE | 88-12 Queens Boulevard<br>Elmhurst NY 11373 | 8812 Queens Boulevard, LLC | 421 Seventh Avenue,<br>15th Floor<br>New York, NY 10001 |
| JLF | 1681 Broad Hollow Road<br>Farmingdale NY 11735 | Sherwood 110 Corp. | 2580 Hempstead Turnpike<br>East Meadow, NY 11554 |
| JLG | 168A Glen Cove Road<br>Carle Place NY 11514 | Brent Associates, Inc. | 931 B Conklin Ave<br>Farmingdale, NY 11735 |
| JLK /<br>KHC | 2078 Coney Island Avenue<br>Brooklyn NY 11223 | Kingsway Plaza Associates | 275 Madison Avenue<br>Suite 702<br>New York, NY 10016 |
| JLS | 1274 Second Avenue<br>New York NY 10065 | 301 E 66th St Assoc Ltd<br>Ptnshp | c/o Ossa Properties Inc,<br>301 E 66th Street<br>New York, NY 10021 |
| JLT | 205 US Rt 46 West<br>Totowa NJ 07512 | Abill Realty Corp | 255 Route 46,<br>Totowa, NJ 07512 |
| JLV | 300 Sunrise Highway<br>Valley Stream NY 11581 | Toys R Us - Delaware Inc. | PO Box 416104<br>Boston, MA 02241 |
| JLY | 2373 Central Avenue<br>Yonkers NY 10710 | BTMILTD01 | 192 Mountaindale Rd<br>Yonkers, NY 10710 |
| JML | 270 Consumer Square<br>Mays Landing NJ 08330 | Benderson-Wainberg<br>Associates (Developers<br>Diversified) | DEPT: 103126-20612-4027,<br>PO Box 73612<br>Cleveland, OH 44193 |
| JMN | 579 Worcester Street<br>Natick MA 01760 | SSSG Realty Trust | 1443 Beacon Street,<br>Suite 102<br>Brookline, MA 02446 |
| JP | East 255 Route 4<br>Paramus NJ 07652 | NTH 255W, LLC | 223 The Mall at IV<br>Paramus, NJ 07652 |
| JSH | 688 Morris Turnpike<br>Short Hills NJ 07078 | MBK HOLDINGS, LLC | 511 Millburn Ave<br>Short Hills, NJ 07078 |
| JSO | 936 US Highway 22 East<br>Somerville NJ 08876 | Stratis Corporation | U.S. Highway 22<br>Scotch Plains, NJ 07076 |
| JUC | 2550 Hwy 22 East<br>Union NJ 07083 | Glenn Herrigel & M Herrigel | 132 Pennwood Dr<br>Murray Hill, NJ 07974 |
| JWC | 171 US Highway 1 South<br>Metuchen NJ 08840 | Plaza K Shopping Center | The Azarian Building<br>6 Prospect Street Suite 1B<br>Midland Park, NJ 07432 |
| KF | 13623 S Dixie Highway<br>Miami FL 33176 | Urban Retail Properties Co. | 440 Barrett Parkway, Suite 70<br>Kennesaw, GA 30144 |
| KP | 2417 Flatbush Avenue<br>Brooklyn NY 11234 | Equity Mgmt, LLC | 1407 Broadway, Suite #2100<br>New York, NY 10018 |
| LBC | 310 Highway 36<br>West Long Branch NJ 07764 | BG Monmouth, LLC<br>(Developers Diversified) | Dept: 103126-20611-4026,<br>P.O. Box #73612 |

34

| | | | Cleveland, OH 44193 |
|---|---|---|---|
| LNJ | 180 Mercer Mall<br>3375 Route 1<br>Lawrenceville NJ 08648 | Federal Realty Investment Trust | Property #233-2202<br>P.O. Box 8500-9320<br>Philadelphia, Pa 19178 |
| LVV | 8150 Leesburg Pike<br>Vienna VA 22182 | 8150 Leesburg Pike LLC | P.O. Box 79897<br>Baltimore, MD 22179-0897 |
| MCO | 6478 Dobbin Center Way<br>Suite 300<br>Columbia MD 21045 | Dobbin Corner, LLC | c/o GDR Group, LLC<br>P.O. Box 800<br>Beltsville, MD 20704 |
| MCR | 18306 Contour Road<br>Montgomery Village Plaza<br>Gaithersburg MD 20877 | JBG/Montgomery Village, L.L.C. | P.O. Box 791373<br>Baltimore, MD 21279-1373 |
| MFO | 3230 Donnell Drive<br>Forestville MD 20747 | Penn Mar Associates, L.L.C. | For the benefit of IXIS Real Estate Capital Inc.<br>2691 Payshpere Circle<br>60674 |
| MGC | 8849-51 Greenbelt Road<br>Greenbelt MD 20770 | Cipriano Square Plaza Corp. | Lockbox #630942<br>11333 McCormick Road<br>Cockeysville-Ht Vly, MD 21031 |
| MNJ | 1055 Nixon Drive<br>East Gate Square<br>Mt. Laurel NJ 08054 | East Gate Center I Ltd. Ptshp. | c/o BPG Management Company, L.P.<br>770 Township Line Road, Suite 150<br>Yardley, PA 19067 |
| MNY | 470 Route 211 East - Suite 20<br>Middletown NY 10940 | Middletown 1 Resources L.P. | c/o PNC Bank<br>National Association<br>P.O. Box 827449<br>Philadelphia, PA 19182-7449 |
| MP | 9616 Reisters Towne Road<br>Owings Mills MD 21117 | Regency Centers, L.P. | P.O. Box 822164<br>Philadelphia, PA 19182-2164 |
| MR | 11520A Rockville Pike<br>Rockville MD 20852 | Green Acres Metro Ltd Ptnshp | 3400 Idaho Ave., NW<br>Suite 500<br>Washington, DC 20016 |
| MW | 8153 D Honeygo Boulevard<br>White Marsh MD 21236 | Federal Realty Investment Trust | P.O. Box 8500-9320<br>Philadelphia, PA 19178-9320 |
| MWA | 3018 Festival Way<br>Waldorf MD 20601 | CW Waldorf Retail LP | NW 5506-10<br>P.O. Box 1450<br>Minneapolis, MN 55485-5506 |
| NCY | 2482 Walnut Street<br>Cary NC 27511 | Kir Cary, L.P. | 3333 New Hyde Park Rd<br>Suite100<br>PO Box 5020<br>New Hyde Park, NY 11042 |
| NDU | 6807 Fayetteville Road, Suite 115<br>Durham NC 27713 | CBL-TRS Joint Venture II, LLC | P.O. Box 74551<br>Cleveland, OH 44194-4551 |
| NG | 1622 Stanley Road<br>Greensboro NC 27407 | Shops on the Curve, LLC | PO BOX 9905<br>Greensboro, NC 27429 |
| NMI | 27793 Novi Road<br>Novi MI 48377 | Ramco/West Oaks 11-Spring Meadows, LLC | P.O. Box 643351<br>Pittsburgh, PA 15264-3351 |
| NPC | CLOSED | D'Angelo Inc. | 323 Manley Street<br>PO Box 519 W Bridgewater, MA 02379-0519 |
| PA | 1501 Old York Road<br>Abington PA 19001 | MBarry Schultz & Co | 103 Lakeside Drive<br>Southampton, PA 18966 |
| PCL | 4502 City Line Avenue<br>Philadelphia PA 19131 | City Centre Philadephia, PA | P.O. Box 8000<br>Dept. 916<br>Buffalo, NY 14267 |
| PEX | 294 Main Street<br>Exton PA 19341 | Main Street At Exton, L.P. | 120 W.Germantown Pike<br>Suite 120<br>Plymouth Mtg, PA 19462 |
| PKP | 161 West Dekalb Pike | Narinder Garg | P.O. Box 583 |

962299-14

| | | | |
|---|---|---|---|
| | King of Prussia PA 19406 | | 1674 High Point Lane<br>Valley Forge, PA 19481 |
| PRS | 185 Route 17 South<br>Paramus NJ 07652 | South 17 Assoc | 123 Prospect Street<br>PO Box 627<br>Ridgewood, NJ 07451 |
| PSL | 418-420 5th Avenue<br>Park Slope NY 11215 | 416-424 Realty Corp | 47 88th Street<br>Brooklyn, NY 11209 |
| REF(JLE) | 8812-8820 Queens Boulevard<br>Elmhurst NY 11373 | 8812 Queens Boulevard, LLC | 421 Seventh Avenue<br>15th Floor<br>New York, NY 10001 |
| RF | Hudson Mall Route 440<br>Jersey City NJ 07304 | Preit-Rubin, Inc. | P.O. BOX 70160<br>Philadelphia, PA 19176-0160 |
| RFS | 205 Route 46 West<br>Totowa NJ 07512 | Abill Realty Corp | 255 Route 46,<br>Totowa, NJ 07512 |
| RS | 1807 Post Road East<br>Westport CT 06880 | Westport Retail, LLC | 45 Main Street, Suite 302<br>Brooklyn, NY 11201 |
| RT | 31-21 Route 10<br>Denville NJ 07834 | Todd Garrett LLC | 12 Banyan Road<br>Skillman, NJ 08558 |
| SAB | 1905 A Story Avenue<br>Bronx NY 10473 | 905WPR,LLC; Metrovest | c/o Metrovest Equities<br>731 Lexington Avenue<br>29th Floor<br>New York, NY 10022 |
| SH(JSH) | 688-700 Morris Tirnpike,<br>Short Hills NJ 07078 | MBK HOLDINGS, LLC | 511 Millburn Ave<br>Short Hills, NJ 07078 |
| SI | 2823 Richmond Avenue<br>Staten Island NY 10314 | Pergament Mall of Staten<br>Island, LLC | 1500 Old Northern Boulevard<br>Roslyn, NY 11576 |
| SIP | 229 Independence Plaza<br>Selden NY 11784 | Sivan Properties Corp. | P.O. Box 278<br>Manhasset, NY 11030 |
| TAC | 111 3rd Avenue<br>New York NY 10003 | 111 Realty Company<br>Majestic Management | 60 Cutter Mill Road<br>Suite 303<br>Great Neck, NY 11021 |
| TNJ | 165-169 Rt 37 E @ Hooper Avenue<br>Toms River NJ 08753 | LE Barasch of Toms River LLC | c/o RJ Brunelli Co.<br>400 Perrine Road Suite 405<br>Old Bridge, NJ 08857 |
| TTS | 26 West 23rd Street<br>New York NY 10010 | 26 West 23rd Street LLC | 27 Frost Lane<br>Lawrence, NY 11559 |
| UAY | 2092 Bartow Avenue<br>Bronx NY 10475 | Bay Plaza West LLC (Prestige<br>Properties Dev) | 546 Fifth Avenue, 15th Floor<br>New York, NY 10036 |
| UEH | 375 County Road # 39<br>Southampton NY 11968 | Beller and Beller | 375 County Road 39<br>Southampton, NY 11968 |
| UFS | 965 Third Avenue ,New York<br>NY 10022 | THIRD & FIFTY | 22 East 65th Street New<br>York, NY 10021 |
| UHB | 160-10 Crossway Boulevard<br>Howard Beach NY 11414 | Bon Realty | 160-10 Crossbay Boulevard<br>Howard Beach, NY 11414 |
| UJB | 1696 Sunrise Highway<br>Bayshore NY 11706 | Lawrence Realty, 2319 1st<br>Avenue, #206, Seattle, WA<br>98121 | 2319 First Avenue #206<br>Seattle, WA 98121 |
| UJC | 85 East Route 59<br>Nanuet NY 10954 | College Avenue | P.O. Box 564<br>Mahwah, NJ 07430 |
| UJN | 190-10 Northern Boulevard<br>Flushing NY 11358 | Jacob Pearlstein, LLC | 96 Dogwood Road<br>Roslyn, NY 11576 |
| ULC | 229 Livingston Street<br>Brooklyn NY 11201 | JW Mays | 9 Bond Street<br>Brooklyn, NY 11201 |
| UMA | 2572 Solomons Island Road<br>Annapolis MD 21401 | Annapolis Harbour Center | 2000 Tower Oaks Blvd<br>8th Floor<br>Rockville, MD 20852 |
| UPA | 325 North Broadway<br>Jericho NY 11753 | CJ Realty L.P., c/o Spiegel<br>Associates | 375 North Broadway<br>Jericho, NY 11753 |
| UPG | 499-53 West Sunrise Highway<br>Patchogue NY 11772 | Patchogue Associates | 1500 Old Northern Boulevard<br>Roslyn, NY 11576 |
| UPK | 3087 East Main Street | Acadia Realty | 1311 Mamoreneck Avenue, |

962299-14

| | | |
|---|---|---|
| | Mohegan Lake  NY 10547 | | Suite 260<br>White Plains, NY 10605 |
| USC | 30-52 Steinway Street<br>Astoria  NY 11103 | Woodrose Realty, 30-32<br>Steinway Street, Astoria, NY | 30-52 Steinway Street<br>Astoria, NY 11103 |
| UTS | 902 Broadway<br>NY  NY 10010 | 902 Associates (C/o Williams<br>Real Estate) | c/o Williams  Realty Services,<br>Inc.<br>380 Madison Avenue<br>New York, NY 10017 |
| VBC | 3501-B South Jefferson St. -<br>Leesburg Pike Plaza<br>Baileys Crossroads  VA 22041 | Leesburg Pike Center LLC | Saul Centers, Inc. Manager<br>7501 Wisconsin Avenue,<br>Suite 1500<br>East Bethesda, MD 20814 |
| VW | 13329 Worth Avenue<br>Woodbridge  VA 22192 | Kimco Realty Corp | 3333 New Hyde Park Rd<br>Suite100<br>PO Box 5020<br>New Hyde Park, NY 11042 |
| WBO | | James W Bertarelli | 65 Magnolia Avenue,<br>Brockton, MA 02301 |
| WCA | 2530-A Lindsay Privado<br>Ontario  CA 91761 | Mico Archibald Partners, LLC. | 13191 Crossroads Parkway<br>North City of Industry, CA<br>91746 |
| WFL | | Tuscany Furniture | P.O. Box 880384<br>Boca Raton, FL 33488 |
| WFN | 1839 South Road<br>Wappingers Falls  NY 12590 | 1839 South Road, LLC | 1839 South Road,<br>Wappingers Falls, NY 12590 |
| WGA | | WORKMAN ENTERPRISES<br>LLC | 3595 Canton Rd Ste A-9#173<br>Marietta, GA 30066 |
| WH | 610 West 181st Street<br>Washington Heights  NY 10033 | 181st Washington Heights | 1000 Pennsylvania Avenue<br>Brooklyn, NY 11207 |
| WIL | | Best Delivery Services, Inc. | 8926 N. Greenwood Avenue<br>#183<br>Niles, IL 60714 |
| WNC | 50 Siler City Industrial Park<br>Siler City  NC 27344 | Lee Properties Inc. | 1207 Lakewood Drive<br>Greensboro, NC 27410 |
| WNJ | 1 Industrial Road, #141<br>Dayton  NJ 27344 | Twelve Sixty Three-M, LLC | 205 Mill Road<br>Edison, NJ 08837 |
| WSF | | AMB-SGP CIF-1 LLC | P.O. Box 6156<br>Hicksville, NY 11802-6156 |

## SCHEDULE 7

As required under Local Rule 1007-2(a)(10), the following describes the location of the Debtors' substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtors outside the territorial limits of the United States.

### Location of the Debtors' Substantial Assets

1. <u>Asset</u>:  CASH as of July 18, 2010

| ACCOUNT | AMOUNT |
|---|---|
| Concentration/Disbursement/Payroll Accounts | $5,506,706 |
| Store and Trucker Accounts (Various stores) | $500,000 |
| **CASH TOTAL** | **$6,006,706** |

2. <u>Asset</u>:  ACCOUNTS RECEIVABLE as of July 18, 2010

| DESCRIPTION | AMOUNT |
|---|---|
| Credit Card Researves | $4,037,704 |

3. <u>Asset</u>:  INVENTORY as of July 18, 2010

| TYPE | LOCATION | AMOUNT |
|---|---|---|
| Showrooms | 137 Locations | $5,323,530 |
| Warehouses | | |
| CA | 2530-A Lindsay Privado, Ontario, CA 91761 | $1,034,885 |
| NC | 50 Siler City Industrial Park, Siler City, NC 27344 | $885,670 |
| NJ - Jennifer | 1 Industrial Road, #141, Dayton, NJ 27344 | $1,920,778 |
| NJ - Ashley | 1 Industrial Road, #141, Dayton, NJ 27344 | $556,806 |
| Shuttle Warehouses | 8 locations | $597,893 |
| | **INVENTORY TOTAL** | **$10,319,562** |

962299-14

4. <u>Asset</u>:  STORE FIXTURES, EQUIPMENT, AND LEASEHOLD IMPROVEMENTS as of June 26, 2010

| TYPE | LOCATION | AMOUNT |
|---|---|---|
| Furniture & Fixtures | 137 stores | $695,040 |
| Computer Equipment | 137 stores and home office | $63,460 |
| Computer Software Costs | home office | $4,007 |
| Trucks | NJ and NC warehouses | $5,541 |
| Leasehold Improvements | 137 stores | $1,476,909 |
| Capital Lease | NJ and CA warehouses | $89,625 |
| | **STORE FIXTURES, EQUIPMENT, AND LEASEHOLD IMPROVEMENTS TOTAL** | **$2,334,582** |

5. <u>Asset</u>:  SECURITY DEPOSITS, DEFERRED LEASES AND OTHER INTANGIBLES as of July 18, 2010

| TYPE | AMOUNT |
|---|---|
| Security deposits receivable - Rent | $538,810 |
| Security deposits receivable - Utilities | $33,772 |
| Security deposits receivable - Sales tax | $24,542 |
| Security Deposits - TOTAL | $597,124 |
| Deferred leases and other intangibles | $14,887 |
| **SECURITY DEPOSITS, DEFERRED LEASES AND OTHER INTANGIBLES TOTAL** | **$612,011** |

## Location of the Debtors' Books and Records

The Debtors' books and records are maintained at 417 Crossways Park Drive, Woodbury, New York 11797.

## Nature, Location, and Value of Assets Located Outside of the United States

The Debtors do not have assets outside of the territorial United States.

39

# SCHEDULE 8

## Litigation Commenced Against the Debtors

As required under Local Rule 1007-2(a)(11), the following is a list of the nature and status of each action or proceeding against the Debtors where a judgment against the Debtors or a seizure of their property may be imminent.

| ACTION OR PROCEEDING | NATURE OF ACTION | STATUS OF ACTION |
|---|---|---|
| Northern District of California Class Action | Alleged labor violations | Settlement Pending |
| District of Massachusetts Action | Alleged American with Disabilities Act violations | Pending |
| New York City Department of Consumer Affairs | Alleged violations of the New York City Consumer Protection Statutes | Pending |

962299-14

## SCHEDULE 9

## Senior Management

As required under Local Rule 1007-2(a)(12), the following lists the names of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.

| NAME/POSITION | EXPERIENCE/RESPONSIBILITIES |
|---|---|
| Harley J. Greenfield - *Chairman of the Board and Chief Executive Officer* | Mr. Greenfield has been Chairman of the Board and Chief Executive Officer since August 1986, and was the Debtors' President from August 1986 until December 1997. Mr. Greenfield has been engaged for more than 35 years in the furniture wholesale and retail business and was one of the co-founders of the company that established the Jennifer Convertibles concept in 1975. Mr. Greenfield is a member of the New York Home Furnishings Association. |
| Rami Abada - *President, Chief Financial Officer and Chief Operating Officer* | Mr. Abada became the Debtors' President and a member of the Board of Directors in December 1997, has been Chief Operating Officer since April 1994 and became Chief Financial Officer in September 1999. Mr. Abada was Executive Vice President from April 1994 to December 1997. Prior to joining the Debtors, Mr. Abada had been employed by a related company since 1982. |
| Edward B. Seidner, *Executive Vice President* | Mr. Seidner became a member of the Debtors' Board of Directors in August 1986 and served until November 9, 2004. He has been Executive Vice President since September 1994. From 1977 until November 1994, Mr. Seidner was an officer and a director of a related company. Mr. Seidner has been engaged for more than 30 years in the furniture wholesale and retail business. Mr. Seidner is a member of the New York Home Furnishings Association. |
| Kevin Mattler, *Senior Vice President - Store Operations* | Mr. Mattler became the Debtors' Vice President of Store Operations on April 12, 1994 and has been with the Debtors since 1988. Mr. Mattler is involved with, and supervises, the operation of stores and, during his tenure, Mr. Mattler has been involved in all facets of the Debtors' operations. Prior to joining the Debtors, Mr. Mattler had been employed by a related company since 1982. |
| Leslie Falchook, *Senior Vice President - Administration* | Mr. Falchook has been one of the Debtors' Vice Presidents since September 1986. Mr. Falchook is primarily involved with internal operations. Prior to joining the Debtors, Mr. Falchook had been employed by a related company since 1982. |
| Joe Schillero, *Controller* | Mr. Schillero has worked for the Debtors for ten years. He is responsible for the Debtors' accounting activities. |
| John Duncan, *Senior Vice President of National Sales* | Mr. Duncan began working for the Debtors in 1988. He manages all personnel in the Jennifer segment. |
| Dave Sakol, *Vice President of Store Operations* | Mr. Sakol has worked for the Debtors for over twenty years. He runs the Ashley segment. |
| David Borgen, *Vice President of Advertising* | Mr. Borgen has been working for the Debtors for over twenty years. He is responsible for the Debtors' advertising segment. |
| Steve Finnigan, *Senior Vice President of Warehousing* | Mr. Finnigan has been with the Debtors for over twenty-five years. He manages warehouse operations. |
| Marty Ehrlich, *Vice President of Customer Service* | Mr. Ehrlich has worked for the Debtors for over twenty years. He manages customer relations and quality control. |
| George Marr, *IT Director* | Mr. Marr has been with the Debtors for seven years. He is in charge of the Debtors' information technology and computer systems. |

41

| Sandi Bass-, *Flow Buyer* | Ms. Bass has worked for the Debtors for over twenty years. She is a flow buyer for merchandise. |

# SCHEDULE 10

**Payments to Employees, Officers, Directors, Stockholders,
and Financial and Business Consultants**

As required under Local Rule 1007-2(b)(1)-(2), the following provides (i) the estimated amount of weekly payroll to the Debtors' employees (exclusive of officers, directors, and stockholders) for the 30 day period following the filing of these chapter 11 petitions; (ii) the estimated amount proposed to be paid to officers, directors, and stockholders for services for the 30 day period following the filing of these chapter 11 petitions; and (iii) the estimated amount proposed to be paid to financial or business consultants for services for the 30 day period following the filing of these chapter 11 petitions.

| | |
|---|---|
| **PAYMENTS TO EMPLOYEES (NOT INCLUDING OFFICERS, DIRECTORS, AND STOCKHOLDERS)** | $651,500 |
| **PAYMENTS TO OFFICERS AND DIRECTORS** | $ 68,500 |
| **PAYMENTS TO STOCKHOLDERS** | $0 |
| **PAYMENTS TO FINANCIAL OR BUSINESS CONSULTANTS** | $100,000 |

962299-14

## SCHEDULE 11

**Cash Receipts and Disbursements, Cash Gain or Loss,
and Unpaid Obligations and Receivables**

As required under Local Rule 1007-2(b)(3), the following is a schedule for the 30 day period following the filing of these chapter 11 petitions of estimated (i) cash receipts, (ii) cash disbursements, (iii) net cash gain or loss, (iv) obligations expected to accrue but remain unpaid, and (v) receivables expected to accrue but remain unpaid.

| | |
|---|---|
| **ESTIMATED CASH RECEIPTS** | $8,335,000 |
| **ESTIMATED CASH DISBURSEMENTS** | ($9,143,475) |
| **ESTIMATED NET CASH GAIN OR LOSS** | ($808,475) |
| **ESTIMATED OBLIGATIONS EXPECTED TO ACCRUE BUT REMAIN UNPAID (OTHER THAN PROFESSIONAL FEES)** | $0 |
| **ESTIMATED RECEIVABLES EXPECTED TO ACCRUE BUT REMAIN UNPAID** | $0 |

962299-14