**OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP**
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Michael S. Fox, Esq.
Jordanna L. Nadritch, Esq.
212.451.2300

*Proposed Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT
THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| JENNIFER CONVERTIBLES, INC.,[1] | Case No. 10-13779 (ALG) |
| Debtors. | (Motion for Joint Administration Pending) |

### DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE SECTION 365(a) FOR ENTRY OF AN ORDER AUTHORIZING REJECTION OF CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY

Jennifer Convertibles, Inc. ("Jennifer Convertibles") and its affiliated debtors, as debtors and debtors in possession (together, the "Debtors"), hereby move this Court (the "Motion") for entry of an order pursuant to section 365(a) of title 11 of the United States Code (the "Bankruptcy Code") authorizing rejection of certain unexpired leases of nonresidential real property. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: (i) Jennifer Convertibles, Inc. (4646); (ii) Jennifer Convertibles Boylston MA, Inc. (7904); (iii) Jennifer Chicago Ltd. (0505); (iv) Elegant Living Management, Ltd. (5049); (v) Hartsdale Convertibles, Inc. (1681); (vi) Jennifer Management III Corp. (3552); (vii) Jennifer Purchasing Corp. (7319); (viii) Jennifer Management II Corp. (9177); (ix) Jennifer Management V Ltd. (9876); (x) Jennifer Convertibles Natick, Inc. (2227); (xi) Nicole Convertibles, Inc. (5985); (xii) Washington Heights Convertibles, Inc. (0783).

## Background

1. On July 18, 2010 (the "Petition Date"), each of the Debtors commenced with the Bankruptcy Court a voluntary case pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory creditors' committee has been appointed in these chapter 11 cases.

2. Jennifer Convertibles, Inc. was organized as a Delaware corporation in 1986, and is currently the owner of (i) the largest group of sofabed specialty retail stores and leather specialty retail stores in the United States, with stores located throughout the Eastern seaboard, Midwest, West Coast and Southwest, and (ii) seven big box, full-line furniture stores operated under the Ashley Furniture HomeStore brand (the "Ashley Stores") under a license from Ashley Furniture Industries, Inc.

3. In order to generate sales, the Debtors rely on aggressive pricing, the attractive image of its stores, extensive advertising and prompt delivery. Operations are classified into two operating segments organized by retail concept: Jennifer and Ashley. The Jennifer segment operates the sofabed specialty retail store concept. The Ashley segment is the big box, full line home furniture retail store concept. There are no inter-company sales between segments. The Ashley segment is highly profitable due to its unique sourcing model, whereby once most sales are executed, Ashley's supplier manages the supply chain process. Under the Ashley sourcing model, the Debtors need for warehouse inventory is reduced, thereby limiting working capital needs and infrastructure requirements. The Debtors' two operating segments enable the Debtors to more effectively offer diverse home furnishings and accessories and expand to a broader consumer base.

4. As of the Petition Date, the Debtors' stores include 130 stores operated by the Jennifer segment. During fiscal 2007, the Debtors opened their first Ashley Store. As of the Petition Date, the Debtors operate seven Ashley Stores.

5. As of the Petition Date, the Debtors employ 497 people. There are 336 employees in the Jennifer segment, 114 employees in the Ashley segment and 47 corporate employees. None of the employees are represented by a collective bargaining unit.

6. For the fiscal year ended August 29, 2009, the Debtors' consolidated financial statements showed revenues from continuing operations of approximately $94,177,000, compared with $120,131,000 for the fiscal year ended August 30, 2008, and $132,683,000 for the fiscal year ended August 25, 2007. For the thirty-nine weeks ended May 29, 2010, revenues from continuing operations were approximately $70,036,000, with $56,144,000 coming from the Jennifer segment stores, and $13,892,000 from the Ashley segment stores.

7. Net sales from continuing operations were $88,845,000 and $113,073,000 for the fiscal years ended August 29, 2009 and August 30, 2008, respectively. Net sales from continuing operations decreased by 21.4%, or $24,228,000 for the fiscal year ended August 29, 2009 compared to the fiscal year ended August 30, 2008. The decrease in net sales is attributable to a decline in overall demand within the furniture industry sector due to a poor housing market and an overall weak U.S. economy. Consolidated same store sales from continuing operations (sales at those stores open for the entire current and prior comparable periods) decreased 19.6% for the thirteen weeks ended May 29, 2010, compared to the same period ended May 30, 2009.

8. Specifically, in the Ashley segment, net sales from continuing operations were $5,106,000 and $3,363,000 for the thirteen-week periods ended May 29, 2010 and May 30,

2009, respectively. Net sales from continuing operations increased by 51.8%, or $1,743,000 for the thirteen-week period ended May 29, 2010 compared to the thirteen-week period ended May 30, 2009. The increase is largely attributable to four new Ashley locations open during the thirteen-week period ended May 29, 2010, that were not open during the same thirteen week period last year.

9. In the Jennifer segment, net sales from continuing operations were $16,375,000 and $16,987,000 for the thirteen-week periods ended May 29, 2010 and May 30, 2009, respectively. Net sales from continuing operations decreased by 3.6%, or $612,000 for the thirteen-week period ended May 29, 2010 compared to the thirteen-week period ended May 30, 2009. The decrease is attributable to the decline in overall demand within the furniture industry sector due to the prevailing conditions of the U.S. economy, the current housing market, store closings, and delays in receipt of merchandise from the Debtors' Chinese supplier, all as discussed in greater detail in the other first day motions, filed concurrently herewith.

10. The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in additional detail in the Declaration of Rami Abada in Support of First Day Motions (the "Abada Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

**Jurisdiction**

11. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

12. The statutory predicates for the relief requested herein are section 365(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6006 of the Federal Rules of

1018464-1

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6006-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

**Relief Requested**

13. To reduce costs, the Debtors have identified eight (8) nonresidential real property leases, listed in Exhibit "A" hereto (the "Leases"), that are no longer integral to the Debtors' ongoing business operations and present burdensome contingent liabilities. The Debtors are in the process of vacating these locations and will be in a position to return the properties vacant to the respective landlords by no later than July 31, 2010. By this Motion, the Debtors seek entry of an order authorizing the rejection of the Leases *nunc pro tunc* as of the Petition Date.

**Basis for Relief Requested**

14. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The United States Court of Appeals for the Second Circuit has stated that "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 *Collier on Bankruptcy* ¶ 365.01[1] (15th ed. 1993)).

15. The standard applied to determine whether the rejection of an unexpired lease should be authorized is the "business judgment" standard. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098-99 (2d Cir. 1993); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 524 (1984); *In re Federated Dept. Stores, Inc.*, 131 B.R. 808, 811 (S.D. Ohio 1991) ("Courts traditionally have applied the business judgment standard in determining whether to authorize the rejection of executory contracts and unexpired leases.").

16. Courts in this circuit have found that proper business reasons for rejecting a contract or lease include: (i) the contract is uneconomical to complete according to its terms; (ii) the contract is financially burdensome to estate; or (iii) rejection will make the debtor more attractive to a prospective purchaser or investor. *See In re Riodizio*, 204 B.R. 417, 425 (Bankr. S.D.N.Y. 1997). Generally, courts defer to a debtor in possession's business judgment to reject an executory contract or lease. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re Minges*, 602 F.2d 38, 42 (2d Cir. 1979); *In re Riodizio*, 204 B.R. at 424-25; *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

17. Upon finding that the Debtors have exercised their sound business judgment in determining that rejection of the Leases is in the best interests of the Debtors, their creditors and all parties in interest, the Court should approve the rejections under section 365(a) of the Bankruptcy Code. *See e.g., Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executor contract "should be granted as a matter of course"). If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an executor contract or unexpired lease. *See, e.g., NLRG v. Bildisco & Bildisco*, 462 U.S. at 523; *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 39-40 (3d Cir. 1989).

18. In an effort to maximize the value of their estates and reduce their administrative costs in these chapter 11 cases, the Debtors have reviewed their overall operations and have determined, in their business judgment, that the Leases are burdensome and provide no economic value to their estates. Moreover, the Debtors, in the exercise of their business judgment, have

determined that the Leases are unprofitable and are not necessary for the Debtors' restructuring efforts. The Debtors already are in the process of vacating the premises of the Leases. Rejection of the Leases at this time will therefore eliminate under-performing assets and allow management to focus its limited resources on maximizing the value of the Debtors' remaining assets.

19. In order to avoid paying unnecessary expenses related to the Leases, the Debtors seek to reject the unexpired Leases effective, *nunc pro tunc* to the Petition Date.

20. In light of the foregoing, the Debtors respectfully request that the Court approve rejection of the Leases under section 365(a) of the Bankruptcy Code as a sound exercise of their business judgment, with such rejections to be effective as of the Petition Date.

**The Debtors Satisfy Bankruptcy Rules 6006**

21. Pursuant to Local Rule 6006-1, an order authorizing the Debtors to reject the Leases is stayed until the expiration of 14 days after entry of the order, unless the Court orders otherwise. Local Rule 6006-1. For the reasons described more fully above, the Debtors submit that the requirements of Local Rule 6006-1 should be waived to avoid the immediate and irreparable harm the Debtors would suffer if they were required to pay rent for the 14-day period of a stay of this Court's order authorizing the rejection of the Leases for premises the Debtors no longer require and which are no longer profitable.

**Notice**

22. No trustee, examiner or statutory creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (i) Office of the United States Trustee for the Southern District of New York; (ii) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estate (on a consolidated basis); (iii) counsel to Haining Mengnu Group Co. Ltd.; (iv) the SEC; (v) the IRS; (vi) all taxing authorities in relevant

jurisdictions; (vii) all attorneys general in relevant jurisdictions; and (viii) any other party directly affected by this Motion. The Debtors submit that such notice is sufficient under the circumstances..

## No Previous Request

23. No previous request for the relief sought herein has been made to this or any other Court.

## Conclusion

24. The Debtors have reviewed and analyzed the Leases to determine their respective economic values in the perspective of the Debtors' reorganization. Based on the results of this analysis and review, the Debtors have determined, in the sound exercise of their business judgment, that there is no further benefit in retaining the Leases. By eliminating the ongoing administrative payment obligations, rejection of the Leases will contribute to the Debtors' prospects for a successful rehabilitation and reorganization. There is simply no business justification for the Debtors to make postpetition lease payments in respect of these store locations.

1018464-1

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: New York, New York
July 19, 2010

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP

By: /s Michael S. Fox
Michael S. Fox
Jordanna L. Nadritch
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

*Proposed Attorneys for the Debtors and Debtors in Possession*

# EXHIBIT A

| Store | Territory | Landlord | Address | Contact |
|---|---|---|---|---|
| CCI | CA | Centro Watt Property Owner II, LLC | 17394 E. Colima Rd. Rowland Heights, CA 91745 | Sheila Pocknett |
| CCO | CA | McKinley Corona | 280 Teller Street-Suite 140 Corona, CA 92879 | Kristy Stowell |
| CSR | CA | Valencia Marketplace I LLC | 25586 The Old Road Stevenson Ranch, CA 91381 | Kathleen Young |
| CBW | CA | Vicenti Asset LLC | 11948 Sane Vincente Blvd., Los Angeles, CA 90049 | Farjad Yazdinia |
| MCR | MD | JBG/Montgomery Village, L.L.C. | 18306 Contour Road Montgomery Village Plaza, Gaithersburg, MD 20877 | Emila Izquierdo |
| JLT | NJ | Abill Realty Corp. | 205 US Rt 46 West Totowa, NJ 07512 | Bill Spina |
| WH | NY | 181st Washington Heights | 610 W. 181st Street Washington Heights, NY 10033 | Avi Monk |
| VW | VA | Kimco Realty Corp. | 13329 Worth Avenue Woodbridge, VA 22192 | Debbie Keating |

1018464-1

# EXHIBIT B

**Proposed Order**

# UNITED STATES BANKRUPTCY COURT
# THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| JENNIFER CONVERTIBLES, INC.,[1] | Case No. 10-13779 (ALG) |
| Debtors. | (Motion for Joint Administration Pending) |

### ORDER PURSUANT TO BANKRUPTCY CODE SECTION 365(a) FOR ENTRY OF AN ORDER AUTHORIZING REJECTION OF CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY

Upon the motion, dated July 19, 2010 (the "Motion")[2] of Jennifer Convertibles, Inc. and its affiliated debtors, as debtors in possession (collectively, the "Debtors"), for entry an order authorizing rejection of certain unexpired leases of nonresidential real property, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: (i) Jennifer Convertibles, Inc. (4646); (ii) Jennifer Convertibles Boylston MA, Inc. (7904); (iii) Jennifer Chicago Ltd. (0505); (iv) Elegant Living Management, Ltd. (5049); (v) Hartsdale Convertibles, Inc. (1681); (vi) Jennifer Management III Corp. (3552); (vii) Jennifer Purchasing Corp. (7319); (viii) Jennifer Management II Corp. (9177); (ix) Jennifer Management V Ltd. (9876); (x) Jennifer Convertibles Natick, Inc. (2227); (xi) Nicole Convertibles, Inc. (5985); (xii) Washington Heights Convertibles, Inc. (0783).
[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

1018464-1

and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED.

2. Pursuant to section 365(a) of the Bankruptcy Code, the rejection of each of the Leases listed on Exhibit "A" to the Motion is hereby approved, with each such rejection being effective *nunc pro tunc* to the Petition Date.

3. The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate, to implement and effectuate the transactions contemplated by this Order.

4. The rejection of the Leases in this Order is notice to and may be relied on by filing agents, filing officers, title agents, title companies, recorders and mortgages, recorders of deeds, or registrars of deeds, that may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or that may be required to report or insure title or state of title in or to the Leases or the underlying real properties.

5. The Debtors' rights to assert any Lease rejected hereby expired by its own terms or was terminated prior to the date hereof are fully preserved.

6. The requirements of Bankruptcy Rule 6006 and Local Rule 6006-1 are deemed satisfied or waived, and notwithstanding the possible applicability of Bankruptcy Rule 6006 and Local Rule 6006-1, the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

7. This Court shall retain jurisdiction to interpret and enforce this Order.

1018464-1

Dated: July __, 2010
      New York, New York

                                              _____
                                              UNITED STATES BANKRUPTCY JUDGE

3

1018464-1