**OLSHAN GRUNDMAN FROME**
**ROSENZWEIG & WOLOSKY LLP**
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Michael S. Fox, Esq.
Jordanna L. Nadritch, Esq.
212.451.2300

*Proposed Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| JENNIFER CONVERTIBLES, INC.,[1] | Case No. 10-13779 (ALG) |
| Debtors. | (Motion for Joint Administration Pending) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER ESTABLISHING PROCEDURES**
**FOR THE ASSERTION, RESOLUTION, AND SATISFACTION OF (I) BANKRUPTCY**
**CODE SECTION 503(b)(9) CLAIMS AND (II) RECLAMATION CLAIMS**

Jennifer Convertibles, Inc. ("Jennifer Convertibles") and its affiliated debtors, as debtors

in possession (together, the "Debtors"), hereby move this Court (the "Motion") for entry of an

order establishing procedures for the assertion, resolution and satisfaction of (i) Bankruptcy

Code section 503(b)(9) claims and (ii) reclamation claims. In support of this Motion, the

Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: (i) Jennifer Convertibles, Inc. (4646); (ii) Jennifer Convertibles Boylston MA, Inc. (7904); (iii) Jennifer Chicago Ltd. (0505); (iv) Elegant Living Management, Ltd. (5049); (v) Hartsdale Convertibles, Inc. (1681); (vi) Jennifer Management III Corp. (3552); (vii) Jennifer Purchasing Corp. (7319); (viii) Jennifer Management II Corp. (9177); (ix) Jennifer Management V Ltd. (9876); (x) Jennifer Convertibles Natick, Inc. (2227); (xi) Nicole Convertibles, Inc. (5985); (xii) Washington Heights Convertibles, Inc. (0783).

## Background

1. On July 18, 2010 (the "Petition Date"), each of the Debtors commenced with the Bankruptcy Court a voluntary case pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory creditors' committee has been appointed in these chapter 11 cases.

2. Jennifer Convertibles, Inc. was organized as a Delaware corporation in 1986, and is currently the owner of (i) the largest group of sofabed specialty retail stores and leather specialty retail stores in the United States, with stores located throughout the Eastern seaboard, Midwest, West Coast and Southwest, and (ii) seven big box, full-line furniture stores operated under the Ashley Furniture HomeStore brand (the "Ashley Stores") under a license from Ashley Furniture Industries, Inc.

3. In order to generate sales, the Debtors rely on aggressive pricing, the attractive image of its stores, extensive advertising and prompt delivery. Operations are classified into two operating segments organized by retail concept: Jennifer and Ashley. The Jennifer segment operates the sofabed specialty retail store concept. The Ashley segment is the big box, full line home furniture retail store concept. There are no inter-company sales between segments. The Ashley segment is highly profitable due to its unique sourcing model, whereby once most sales are executed, Ashley's supplier manages the supply chain process. Under the Ashley sourcing model, the Debtors need for warehouse inventory is reduced, thereby limiting working capital needs and infrastructure requirements. The Debtors' two operating segments enable the Debtors to more effectively offer diverse home furnishings and accessories and expand to a broader consumer base.

4.      As of the Petition Date, the Debtors' stores include 130 stores operated by the Jennifer segment.  During fiscal 2007, the Debtors opened their first Ashley Store.  As of the Petition Date, the Debtors operate seven Ashley Stores.

5.      As of the Petition Date, the Debtors employ 497 people.  There are 336 employees in the Jennifer segment, 114 employees in the Ashley segment and 47 corporate employees.  None of the employees are represented by a collective bargaining unit.

6.      For the fiscal year ended August 29, 2009, the Debtors' consolidated financial statements showed revenues from continuing operations of approximately $94,177,000, compared with $120,131,000 for the fiscal year ended August 30, 2008, and $132,683,000 for the fiscal year ended August 25, 2007.  For the thirty-nine weeks ended May 29, 2010, revenues from continuing operations were approximately $70,036,000, with $56,144,000 coming from the Jennifer segment stores, and $13,892,000 from the Ashley segment stores.

7.      Net sales from continuing operations were $88,845,000 and $113,073,000 for the fiscal years ended August 29, 2009 and August 30, 2008, respectively.  Net sales from continuing operations decreased by 21.4%, or $24,228,000 for the fiscal year ended August 29, 2009 compared to the fiscal year ended August 30, 2008.  The decrease in net sales is attributable to a decline in overall demand within the furniture industry sector due to a poor housing market and an overall weak U.S. economy.  Consolidated same store sales from continuing operations (sales at those stores open for the entire current and prior comparable periods) decreased 19.6% for the thirteen weeks ended May 29, 2010, compared to the same period ended May 30, 2009.

8.      Specifically, in the Ashley segment, net sales from continuing operations were $5,106,000 and $3,363,000 for the thirteen-week periods ended May 29, 2010 and May 30,

2009, respectively. Net sales from continuing operations increased by 51.8%, or $1,743,000 for the thirteen-week period ended May 29, 2010 compared to the thirteen-week period ended May 30, 2009. The increase is largely attributable to four new Ashley locations open during the thirteen-week period ended May 29, 2010, that were not open during the same thirteen week period last year.

9. In the Jennifer segment, net sales from continuing operations were $16,375,000 and $16,987,000 for the thirteen-week periods ended May 29, 2010 and May 30, 2009, respectively. Net sales from continuing operations decreased by 3.6%, or $612,000 for the thirteen-week period ended May 29, 2010 compared to the thirteen-week period ended May 30, 2009. The decrease is attributable to the decline in overall demand within the furniture industry sector due to the prevailing conditions of the U.S. economy, the current housing market, store closings, and delays in receipt of merchandise from the Debtors' Chinese supplier, all as discussed in greater detail in the other first day motions, filed concurrently herewith.

10. The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in additional detail in the Declaration of Rami Abada in Support of First Day Motions (the "Abada Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

## Jurisdiction

11. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

12. The statutory predicates for the relief requested herein are sections 105(a), 503(b)(9) and 546(c) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

13.     By this Motion, the Debtors seek entry of an order establishing procedures for the assertion, resolution and satisfaction of (i) any claims arising out of Bankruptcy Code section 503(b)(9) ("503(b)(9) Claims") and (ii) any claims arising out of Bankruptcy Code section 546(c) ("Reclamation Claims").

14.     Prior to the Petition Date and in the ordinary course of its business, the Debtors purchased merchandise for its stores (collectively, the "Goods") for use in its operations.  As of the Petition Date, the Debtors are in possession of certain Goods that had been delivered to them by various vendors or other parties (collectively, the "Vendors"), but for which the Debtors have not been invoiced or made payment to the Vendors.  As a result of the commencement of these chapter 11 cases, the Debtors will likely receive 503(b)(9) Claims and Reclamation Claims from Vendors with respect to the Goods.  By this Motion, the Debtors request that the Court establish procedures that will ensure the timely and orderly resolution of such claims.

Proposed 503(b)(9) Claims Procedures

15.     Under section 503(b)(9), the Debtors believe that there will be some uncertainty among Vendors over the procedures and methods they must undertake to properly assert administrative expense claims.  This may result in numerous inquiries and demands on the Debtors' employees and professionals, as well as in the initiation of piecemeal litigation, which would divert the attention of the Debtors and the Debtors' professionals from the more pressing task of administering the chapter 11 cases.  To avoid the resulting distraction, delay, and expense that may ensue, the Debtors seek to establish the following exclusive procedures (the "503(b)(9) Claims Procedures").  If approved by the Court, Vendors will be prohibited from pursuing 503(b)(9) Claims outside the parameters of the 503(b)(9) Claims Procedures.

1008899-4

16.    The Debtors propose the following 503(b)(9) Claims Procedures with respect to all 503(b)(9) Claims:

a.    Any Vendor asserting a 503(b)(9) Claim must prepare a proof of claim (a "Proof of 503(b)(9) Claim") that sets forth (i) the value of the goods the claimant contends the Debtors received within twenty days prior to the Petition Date; (ii) documentation, including invoices, receipts, bills of lading and the like, identifying the particular goods for which the claim is being asserted; and (iii) documentation regarding which Debtor entity the goods were shipped to including the address of delivery, the date the goods were received by such Debtor entity, and the alleged value of such goods;

b.    All Proofs of 503(b)(9) Claims must (i) be filed with the Debtors' claims agent, BMC Group Inc., (a) by U.S. Mail to Jennifer Convertibles, Inc., et al., C/O BMC Group, Inc., PO Box 3020, Chanhassen, MN 55317-3020, , or (b) by messenger or overnight delivery, to Jennifer Convertibles, Inc., et al., C/O BMC Group, Inc., 18750 Lake Drive East, Chanhassen, MN 55317; and (ii) be served on (x) Jennifer Convertibles, Inc., 417 Crossways Park Drive, Woodbury, New York 11797 Attn: Rami Abada ; and (y) attorneys for the Debtors , Olshan Grundman Frome Rosenzweig & Wolosky LLP, 65 E 55th Street, New York, NY 10022, Attn: Michael S. Fox, Esq. and Jordanna Nadritch, Esq., so as to be received, in each case, no later than the thirtieth day after the Petition Date (the "503(b)(9) Claim Filing Deadline");

c.    The Debtors shall have 30 days after the 503(b)(9) Claim Filing Deadline to file with the Court and serve any objections to timely filed 503(b)(9) Claims (the "503(b)(9) Objection Deadline");

d.    Vendors shall have 20 days from the 503(b)(9) Objection Deadline to file with the Court and serve any replies to such objections;

e.    All timely filed 503(b)(9) Claims will be deemed allowed unless objected to by the Debtors on or before the 503(b)(9) Objection Deadline;

f.    Notwithstanding and without limiting the foregoing, the Debtors are authorized, but not required, to negotiate, in their sole discretion, with any Vendor and to seek an agreement resolving any objection to such Vendor's 503(b)(9) Claim.  The approval of such an agreement will be subject to notice and a hearing; and

g.    To the extent a 503(b)(9) Claim is allowed, such 503(b)(9) Claim will be satisfied pursuant to and as set forth in such plan of reorganization as shall be confirmed by the Court, or as otherwise ordered by the Court after notice and an opportunity for a hearing.

17.     The Debtors propose that the 503(b)(9) Claims Procedures be the sole and exclusive method for the assertion, resolution, allowance, and satisfaction of 503(b)(9) Claims and requests that all Vendors be prohibited from invoking any other means therefor, including, without limitation, the filing of a motion for allowance, or to compel payment, of any 503(b)(9) Claims.

Proposed Reclamation Claims Procedure

18.     Avoiding costly and distracting litigation relating to Reclamation Claims is critical at this stage of the Debtors' chapter 11 cases.  If the Debtors are unable to establish and implement uniform procedures to resolve Reclamation Claims, they could be faced with the prospect of simultaneously defending numerous reclamation proceedings at a time when their efforts should be focused on preserving enterprise value.

19.     To avoid piecemeal litigation that would interfere with the Debtors' efforts to preserve enterprise value, the Debtors submit that the Reclamation Procedures (as defined below) will effectively and efficiently streamline the process of resolving Reclamation Claims to the benefit of both the Debtors and the Vendors.

20.     The Debtors propose the following procedures (the "Reclamation Procedures") for processing and reconciling Reclamation Claims:

   a.     Any Vendor asserting a Reclamation Claim must satisfy all procedural and timing requirements entitling it to have a right to reclamation under section 546(c) of the Bankruptcy Code;

   b.     Any Vendor asserting a Reclamation Claim must submit a written demand asserting such Reclamation Claim (a "Reclamation Demand") which must (i) include (A) a description of the Goods subject to the Reclamation Demand; (B) the name of the Debtor entity to whom such Goods were delivered and the address of delivery; (C) copies of any purchase orders and invoices relating to such Goods; and (D) any evidence regarding the date(s) such Goods were shipped to and received by such Debtor entity; and (ii) be delivered to (a) Jennifer Convertibles, Inc., 417 Crossways Park Drive, Woodbury, New York 11797 Attn: Rami Abada ;  and (b) attorneys

7

for the Debtors , Olshan Grundman Frome Rosenzweig & Wolosky LLP, 65 E 55th Street, New York, NY 10022, Attn: Michael S. Fox, Esq. and Jordanna Nadritch, Esq., so as to be received, in each case, in accordance with the deadlines set forth in section 546(c) of the Bankruptcy Code;

c.     Upon receipt of a Reclamation Demand, the Debtors will serve upon the Vendor, at the address indicated in its Reclamation Demand, a copy of the order granting this Motion;

d.     No later than 75 days after entry of the order granting the relief requested herein (the "Reclamation Notice Deadline"), the Debtors will file with the Court a notice (the "Reclamation Notice"), listing the Reclamation Claims and the amount (if any) of each such Reclamation Claim that the Debtors determine to be valid. The Debtors will serve the Reclamation Notice on the following parties (the "Reclamation Notice Parties"): (i) Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (ii) attorneys for any statutory committee of unsecured creditors (the "Committee") appointed in these chapter 11 cases; and (iii) each Vendor listed in the Reclamation Notice, at the address indicated in the respective Vendor's Reclamation Demand.

e.     If the Debtors fail to file the Reclamation Notice by the Reclamation Notice Deadline, any holder of a Reclamation Claim that submitted a Reclamation Demand in accordance with paragraph 15(b) of this Motion may bring a motion on its own behalf to seek relief with respect to its Reclamation Claim;

f.     Any party that wishes to object to the Reclamation Notice must file and serve an objection (a "Reclamation Notice Objection") on the Reclamation Notice Parties and attorneys for the Debtors, Olshan Grundman Frome Rosenzweig & Wolosky LLP, 65 E 55th Street, New York, NY 10022, Attn: Michael S. Fox, Esq. and Jordanna Nadritch, Esq., so as to be received in each case no later than 4:00 pm (Eastern Time) on the twentieth (20th) day after the date on which the Reclamation Notice is filed (the "Reclamation Objection Deadline"). Any Reclamation Notice Objection must include (i) a copy of the Reclamation Demand, with evidence of the date mailed to the Debtors; and (ii) a statement describing with specificity the objections to the Reclamation Notice and any legal basis for such objections;

g.     Any Reclamation Claim listed in the Reclamation Notice for which no Reclamation Notice Objection was filed and served by the Reclamation Objection Deadline shall be deemed allowed by the Court in the amount identified by the Debtors in the Reclamation Notice, provided that all issues relating to the treatment of any such allowed Reclamation Claim shall be reserved;

h.    Notwithstanding and without limiting the foregoing, the Debtors would be authorized, but not required, to negotiate, in its sole discretion, with any Vendor and to seek an agreement resolving the Vendor's Reclamation Claim or Reclamation Notice Objection. If the Debtors and a Vendor agree on the validity, amount, or treatment of the Vendor's Reclamation Claim, the Debtors will prepare and file with the Court a notice of settlement (a "Reclamation Settlement Notice") and serve such Reclamation Settlement Notice on the Reclamation Notice Parties. Each Notice Party will have ten (10) days from the date of service of such Reclamation Settlement Notice to file with the Court and serve on the other Reclamation Notice Parties and attorneys for the Debtors an objection thereto (a "Reclamation Settlement Objection");

i.    If no Reclamation Settlement Objection with respect to a Reclamation Claim that is the subject of a Reclamation Settlement Notice is timely filed and served, such Reclamation Claim will be treated in accordance with the Reclamation Settlement Notice without further order of the Court.

j.    If a Reclamation Settlement Objection with respect to a Reclamation Claim that is the subject of a Reclamation Settlement Notice is timely filed and served, the parties may negotiate a consensual resolution of such objection to be incorporated in a stipulation filed with the Court (a "Reclamation Settlement Stipulation"). Upon the filing of a Reclamation Settlement Stipulation, the applicable Reclamation Claim shall be allowed and treated in accordance with the terms of the Reclamation Settlement Stipulation without further order of the Court.

k.    If no consensual resolution of a Reclamation Settlement Objection with respect to a Reclamation Claim that is the subject of a Reclamation Settlement Notice is reached within thirty (30) days after the date the Reclamation Settlement Objection was filed and served, the Debtors may file a motion with the Court requesting a hearing to fix the allowed amount of the Reclamation Claim, unless the Debtors and the party filing the Reclamation Settlement Objection agree in writing to extend such thirty (30) day period; and

l.    If any Reclamation Claims are still subject to a pending Reclamation Notice Objection sixty (60) days following the Reclamation Objection Deadline (or a later date as may be agreed to in writing by the Vendor and the Debtors) and no Reclamation Settlement Notice has been filed therewith, the Debtors may file a motion with the Court to fix the allowed amounts of such Reclamation Claims and schedule a hearing to consider such motion.

1008899-4

## Basis For Relief

The 503(b)(9) Claims

21.     Section 503(b)(9) of the Bankruptcy Code provides for the allowance, as an administrative expense, of the value of any goods sold to the Debtors in the ordinary course of the Debtors' businesses and received by the Debtors within 20 days before the Petition Date:

> After notice and a hearing, there shall be allowed, administrative expenses . . . including –
>
> the value of any goods received by the debtor within 20 days before the date of commencement of a case under [title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. §503(b)(9).

22.     Because the Debtors, in the ordinary course of business, typically purchase $3,250,000 of Goods on a monthly basis from a variety of Vendors, the Debtors expects that numerous 503(b)(9) Claims may be filed.  Accordingly, the establishment of an orderly, uniform process for their resolution is warranted.  Deferring litigation of claims and establishing uniform procedures for resolving such claims is a common practice in chapter 11 cases, as is the establishment of a bar date.  *See* Fed. R. Bankr. P. 3003(c)(3) ("The court shall fix . . . the time within which proofs of claim or interest may be filed."); *see also In re General Motors Corp.*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 1, 2009); *In re Steve & Barry's Manhattan LLC*, Case No. 08-12579 (ALG) (Bankr. S.D.N.Y. July 31, 2008; *In re Quebecor World (USA) Inc., et al.*, Case No. 08-10152 (JMP) (Bankr. S.D.N.Y. Apr. 21, 2008); *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006).  Moreover, the Debtors believe that the 503(b)(9) Claims Procedures will facilitate the Debtors' ability to negotiate with Vendors, expediting the resolution of 503(b)(9) Claims and assisting with the economic administration of these chapter 11 cases.

10

23.     Section 105(a) of the Bankruptcy Code provides that Bankruptcy Courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.   11 U.S.C. § 105(a).   The Debtors submit that establishing and implementing the 503(b)(9) Claims Procedures is necessary and appropriate and that the Procedures are consistent with the provisions of section 503(b)(9) of the Bankruptcy Code.

24.     The Debtors believe that their ability to address 503(b)(9) Claims in this uniform manner will assist in the timely resolution of such claims and promote the orderly and efficient administration of these cases.   Therefore, the relief requested in this motion is in the best interests of the Debtors, and should be granted in all respects.

The Reclamation Claims

25.     Upon the commencement of a chapter 11 case, reclamation rights are governed by section 546(c) of the Bankruptcy Code, which provides, in relevant part:

> [S]ubject to the prior rights of a holder of a security interest in such goods or the proceeds thereof, the rights and powers of the trustee . . . are subject to the right of a Vendor of goods that has sold goods to the debtor, in the ordinary course of such Vendor's business, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case under this title, but such a Vendor may not reclaim such goods unless such Vendor demands in writing reclamation of such goods (A) not later than 45 days after the date of receipt of such goods by the debtor; or (B) not later than 20 days after the date of commencement of the case, if the 45-day period expires after the commencement of the case.

11 U.S.C. § 546(c)(1).

26.     In addition, pursuant to Bankruptcy Rule 9019(a), after notice and a hearing, the Court may approve a compromise or settlement between the Debtors and any Vendor who files a Reclamation Demand and/or Reclamation Notice Objection.   Fed. R. Bankr. P. 9019(a).   The ability to negotiate with the Vendors will expedite the settlement of Reclamation Claims and assist the administration of these chapter 11 cases.

27.     Furthermore, section 105(a) of the Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).   The Debtors submit that establishing and implementing the Reclamation Procedures is necessary and appropriate and that the Reclamation Procedures are consistent with section 546(c) of the Bankruptcy Code and Bankruptcy Rule 9019.

28.     The Debtors believe that the ability to resolve Reclamation Claims in accordance with the Reclamation Procedures will assist in the consensual resolution of such claims and, ultimately, the maximization of value for the Debtors, the Debtors' estates and creditors, and all parties in interest.   Therefore, the relief requested in this Motion is in the best interests of the Debtors and the Debtors' respective estates and should be granted in all respects.

29.     Any seller that fails to provide notice in the manner described in section 546(c) "still may assert" an administrative expense claim pursuant to section 503(b)(9) of the Bankruptcy Code for goods delivered to the Debtors within 20 days before the Petition Date in the ordinary course of the Debtors' business.   *See* 11 U.S.C. §§ 503(b)(9); 546(c)(2).

### The Debtors Satisfy Bankruptcy Rules 6003 and 6004

30.     Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, which became effective December 1, 2007, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 20 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b).   For the reasons described more fully above, the Debtors submit that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm.   To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-

12

day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## Notice

31.     No trustee, examiner or statutory creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (i) Office of the United States Trustee for the Southern District of New York; (ii) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estate (on a consolidated basis); (iii) counsel to Haining Mengnu Group Co. Ltd.; (iv) the SEC; (v) the IRS; (vi) all taxing authorities in relevant jurisdictions; (vii) all attorneys general in relevant jurisdictions; and (viii) any other party directly affected by this Motion.  The Debtors submit that such notice is sufficient under the circumstances.

## No Previous Request

32.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: New York, New York
July 19, 2010

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP

By: _/s Michael S. Fox_____
Michael S. Fox
Jordanna L. Nadritch
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

*Proposed Attorneys for the Debtors and Debtors in Possession*

**Exhibit A**

**Proposed Order**

In re:

JENNIFER CONVERTIBLES, INC.,[1]

Debtors.

Chapter 11

Case No. 10-13779 (ALG)

(Motion for Joint Administration Pending)

## INTERIM ORDER AUTHORIZING THEM TO PAY PREPETITION OBLIGATIONS TO CERTAIN CRITICAL VENDORS

Upon the motion, dated July 19, 2010 (the "Motion")[2] of Jennifer Convertibles, Inc. and its affiliated debtors, as debtors in possession (collectively, the "Debtors"), for entry of an order establishing procedures for the assertion, resolution and satisfaction of (i) Bankruptcy Code section 503(b)(9) claims and (ii) reclamation claims; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: (i) Jennifer Convertibles, Inc. (4646); (ii) Jennifer Convertibles Boylston MA, Inc. (7904); (iii) Jennifer Chicago Ltd. (0505); (iv) Elegant Living Management, Ltd. (5049); (v) Hartsdale Convertibles, Inc. (1681); (vi) Jennifer Management III Corp. (3552); (vii) Jennifer Purchasing Corp. (7319); (viii) Jennifer Management II Corp. (9177); (ix) Jennifer Management V Ltd. (9876); (x) Jennifer Convertibles Natick, Inc. (2227); (xi) Nicole Convertibles, Inc. (5985); (xii) Washington Heights Convertibles, Inc. (0783).
[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1008899-4

interests of the Debtors, their estates, and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED.

2.     The following procedures (the "503(b)(9) Claims Procedures"), which 503(b)(9) Claims Procedures are hereby authorized and approved in their entirety, shall apply to all 503(b)(9) Claims:

  a.     Any Vendor asserting a 503(b)(9) Claim must prepare a proof of claim (a "Proof of 503(b)(9) Claim") that sets forth (i) the value of the goods the claimant contends the Debtors received within twenty days prior to the Petition Date; (ii) documentation, including invoices, receipts, bills of lading and the like, identifying the particular goods for which the claim is being asserted; and (iii) documentation regarding which Debtor entity the goods were shipped to including the address of delivery, the date the goods were received by such Debtor entity, and the alleged value of such goods;

  b.     All Proofs of 503(b)(9) Claims must (i) be filed with the Debtors' claims agent, BMC Group Inc., (a) by U.S. Mail to Jennifer Convertibles, Inc., et al., C/O BMC Group, Inc., PO Box 3020, Chanhassen, MN 55317-3020, , or (b) by messenger or overnight delivery, to Jennifer Convertibles, Inc., et al., C/O BMC Group, Inc., 18750 Lake Drive East, Chanhassen, MN 55317; and (ii) be served on (x) Jennifer Convertibles, Inc., 417 Crossways Park Drive, Woodbury, New York 11797 Attn: Rami Abada ; and (y) attorneys for the Debtors , Olshan Grundman Frome Rosenzweig & Wolosky LLP, 65 E 55th Street, New York, NY 10022, Attn: Michael S. Fox, Esq. and Jordanna Nadritch, Esq., so as to be received, in each case, no later than the thirtieth day after the Petition Date (the "503(b)(9) Claim Filing Deadline");

  c.     The Debtors shall have 30 days after the 503(b)(9) Claim Filing Deadline to file with the Court and serve any objections to timely filed 503(b)(9) Claims (the "503(b)(9) Objection Deadline");

  d.     Vendors shall have 20 days from the 503(b)(9) Objection Deadline to file with the Court and serve any replies to such objections;

  e.     All timely filed 503(b)(9) Claims will be deemed allowed unless objected to by the Debtors on or before the 503(b)(9) Objection Deadline;

f. Notwithstanding and without limiting the foregoing, the Debtors are authorized, but not required, to negotiate, in their sole discretion, with any Vendor and to seek an agreement resolving any objection to such Vendor's 503(b)(9) Claim. The approval of such an agreement will be subject to notice and a hearing; and

g. To the extent a 503(b)(9) Claim is allowed, such 503(b)(9) Claim will be satisfied pursuant to and as set forth in such plan of reorganization as shall be confirmed by the Court, or as otherwise ordered by the Court after notice and an opportunity for a hearing.

3. The 503(b)(9) Claims Procedures are the sole and exclusive method for the assertion, resolution, allowance, and satisfaction of 503(b)(9) Claims against the Debtors.

4. All Vendors are prohibited from utilizing any other means for the assertion, reconciliation, allowance, resolution, or satisfaction of their 503(b)(9) Claims, including, without limitation, the filing of a motion for allowance, or to compel payment, of any 503(b)(9) Claims.

5. To the extent a Vendor asserting a claim under section 503(b)(9) of the Bankruptcy Code has been paid pursuant to another order entered by the Court in these chapter 11 cases, including, without limitation, any orders authorizing the Debtors to pay prepetition claims of certain essential suppliers and vendors, the 503(b)(9) Claims Procedures shall not apply and any 503(b)(9) Claim asserted by such Vendor shall be deemed withdrawn without the need for any application to, or further order of, the Court.

6. The Debtors are authorized to resolve all Reclamation Claims in accordance with the following reclamation procedures (the "Reclamation Procedures"), which are hereby approved and authorized in their entirety:

a. Any Vendor asserting a Reclamation Claim must satisfy all procedural and timing requirements entitling it to have a right to reclamation under section 546(c) of the Bankruptcy Code;

b. Any Vendor asserting a Reclamation Claim must submit a written demand asserting such Reclamation Claim (a "Reclamation Demand") which must (i) include (A) a description of the Goods subject to the Reclamation Demand; (B) the name of the Debtor entity to whom such Goods were

delivered and the address of delivery; (C) copies of any purchase orders and invoices relating to such Goods; and (D) any evidence regarding the date(s) such Goods were shipped to and received by such Debtor entity; and (ii) be delivered to (a) Jennifer Convertibles, Inc., 417 Crossways Park Drive, Woodbury, New York 11797 Attn: Rami Abada ; and (b) attorneys for the Debtors , Olshan Grundman Frome Rosenzweig & Wolosky LLP, 65 E 55th Street, New York, NY 10022, Attn: Michael S. Fox, Esq. and Jordanna Nadritch, Esq., so as to be received, in each case, in accordance with the deadlines set forth in section 546(c) of the Bankruptcy Code;

c.      Upon receipt of a Reclamation Demand, the Debtors will serve upon the Vendor, at the address indicated in its Reclamation Demand, a copy of the order granting this Motion;

d.      No later than 75 days after entry of the order granting the relief requested herein (the "Reclamation Notice Deadline"), the Debtors will file with the Court a notice (the "Reclamation Notice"), listing the Reclamation Claims and the amount (if any) of each such Reclamation Claim that the Debtors determine to be valid.  The Debtors will serve the Reclamation Notice on the following parties (the "Reclamation Notice Parties"): (i) Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (ii) attorneys for any statutory committee of unsecured creditors (the "Committee") appointed in these chapter 11 cases; and (iii) each Vendor listed in the Reclamation Notice, at the address indicated in the respective Vendor's Reclamation Demand.

e.      If the Debtors fail to file the Reclamation Notice by the Reclamation Notice Deadline, any holder of a Reclamation Claim that submitted a Reclamation Demand in accordance with paragraph 15(b) of this Motion may bring a motion on its own behalf to seek relief with respect to its Reclamation Claim;

f.      Any party that wishes to object to the Reclamation Notice must file and serve an objection (a "Reclamation Notice Objection") on the Reclamation Notice Parties and attorneys for the Debtors, Olshan Grundman Frome Rosenzweig & Wolosky LLP, 65 E 55th Street, New York, NY 10022, Attn: Michael S. Fox, Esq. and Jordanna Nadritch, Esq., so as to be received in each case no later than 4:00 pm (Eastern Time) on the twentieth (20th) day after the date on which the Reclamation Notice is filed (the "Reclamation Objection Deadline").  Any Reclamation Notice Objection must include (i) a copy of the Reclamation Demand, with evidence of the date mailed to the Debtors; and (ii) a statement describing with specificity the objections to the Reclamation Notice and any legal basis for such objections;

g.      Any Reclamation Claim listed in the Reclamation Notice for which no Reclamation Notice Objection was filed and served by the Reclamation

Objection Deadline shall be deemed allowed by the Court in the amount identified by the Debtors in the Reclamation Notice, provided that all issues relating to the treatment of any such allowed Reclamation Claim shall be reserved;

h. Notwithstanding and without limiting the foregoing, the Debtors would be authorized, but not required, to negotiate, in its sole discretion, with any Vendor and to seek an agreement resolving the Vendor's Reclamation Claim or Reclamation Notice Objection. If the Debtors and a Vendor agree on the validity, amount, or treatment of the Vendor's Reclamation Claim, the Debtors will prepare and file with the Court a notice of settlement (a "Reclamation Settlement Notice") and serve such Reclamation Settlement Notice on the Reclamation Notice Parties. Each Notice Party will have ten (10) days from the date of service of such Reclamation Settlement Notice to file with the Court and serve on the other Reclamation Notice Parties and attorneys for the Debtors an objection thereto (a "Reclamation Settlement Objection");

i. If no Reclamation Settlement Objection with respect to a Reclamation Claim that is the subject of a Reclamation Settlement Notice is timely filed and served, such Reclamation Claim will be treated in accordance with the Reclamation Settlement Notice without further order of the Court.

j. If a Reclamation Settlement Objection with respect to a Reclamation Claim that is the subject of a Reclamation Settlement Notice is timely filed and served, the parties may negotiate a consensual resolution of such objection to be incorporated in a stipulation filed with the Court (a "Reclamation Settlement Stipulation"). Upon the filing of a Reclamation Settlement Stipulation, the applicable Reclamation Claim shall be allowed and treated in accordance with the terms of the Reclamation Settlement Stipulation without further order of the Court.

k. If no consensual resolution of a Reclamation Settlement Objection with respect to a Reclamation Claim that is the subject of a Reclamation Settlement Notice is reached within thirty (30) days after the date the Reclamation Settlement Objection was filed and served, the Debtors may file a motion with the Court requesting a hearing to fix the allowed amount of the Reclamation Claim, unless the Debtors and the party filing the Reclamation Settlement Objection agree in writing to extend such thirty (30) day period; and

l. If any Reclamation Claims are still subject to a pending Reclamation Notice Objection sixty (60) days following the Reclamation Objection Deadline (or a later date as may be agreed to in writing by the Vendor and the Debtors) and no Reclamation Settlement Notice has been filed therewith, the Debtors may file a motion with the Court to fix the allowed

amounts of such Reclamation Claims and schedule a hearing to consider such motion.

7.    The Reclamation Procedures are the sole and exclusive method for resolving unpaid Reclamation Claims asserted against the Debtors.

8.    All Vendors are prohibited from seeking any other means for the resolution or treatment of their Reclamation Claims, including, without limitation: (a) commencing adversary proceedings and contested matters in connection with any Reclamation Claims, (b) seeking to obtain possession of any Goods, and (c) interfering with the delivery of any Goods to the Debtors.

9.    Any adversary proceedings or contested matters related to Reclamation Claims, whether currently pending or initiated in the future, except those proceedings initiated by the Debtors in accordance with the Reclamation Procedures, are stayed and the claims asserted therein shall be resolved exclusively pursuant to the Reclamation Procedures set forth herein.

10.    To the extent a Reclamation Claim has been paid by the Debtors pursuant to another order entered by the Court in these chapter 11 cases, including any orders authorizing the Debtors to pay prepetition claims of certain essential suppliers and vendors, the Reclamation Procedures shall not apply to such Vendor and any Reclamation Claim filed by such Vendor with the Court shall be deemed withdrawn without the need for any further order of the Court.

11.    Bankruptcy Rule 6003 has been satisfied.

12.    The requirements of Bankruptcy Rule 6004(a) are waived.

13.    Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

14.    The Debtors are authorized to take all steps necessary to carry out this Order.

15.    This Court retains jurisdiction to interpret and enforce this Order.

1008899-4

Dated: July __, 2010
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE