# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| JENNIFER CONVERTIBLES, INC.,[1] | Case No. 10-13779 (ALG) |
| Debtors. | (Jointly Administered) |

## ORDER (A) AUTHORIZING SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (B) GRANTING RELATED RELIEF

Upon the motion, dated July 20, 2010 (the "Sale Motion")[2] of Jennifer Convertibles, Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (a) approving bid procedures and protections (the "Bid Procedures") and related auction (the "Auction"); (b) scheduling a sale hearing (the "Sale Hearing"); (c) approving the form and manner of notice related thereto; (d) authorizing a sale free and clear of all liens, claims, encumbrances and interests (the "Sale Transaction") of assets with respect to specific closing stores and store locations the Debtors will be exiting (the "Subject Assets") pursuant to that certain Agency Agreement (the "Agency Agreement"), dated July 16, 2010, between Great American Furniture Services, LLC (hereinafter, "GAFS" or the "Purchaser") and Jennifer Convertibles, Inc., annexed hereto as Exhibit "A", as more fully described in the Sale Motion; and (e) granting related relief; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: (i) Jennifer Convertibles, Inc. (4646); (ii) Jennifer Convertibles Boylston MA, Inc. (7904); (iii) Jennifer Chicago Ltd. (0505); (iv) Elegant Living Management, Ltd. (5049); (v) Hartsdale Convertibles, Inc. (1681); (vi) Jennifer Acquisition Corp. (9587); (vii) Jennifer Management III Corp. (3552); (viii) Jennifer Media Corp. (3593); (ix) Jennifer Purchasing Corp. (7319); (x) Jennifer Convertibles Licensing Corp. (8920); (xi) Jennifer Management II Corp. (9177); (xii) Jennifer Management V Ltd. (9876); (xiii) Jennifer Convertibles Natick, Inc. (2227); (xiv) Nicole Convertibles, Inc. (5985); (xv) Washington Heights Convertibles, Inc. (0783).

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having entered an Order on July 26, 2010 approving, *inter alia,* the Bid Procedures (the "Bid Procedures Order"), and due and proper notice of the Bid Procedures Order and the Sale Transaction contemplated thereunder having been provided in the manner directed by the Court in the Bid Procedures Order, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, this Court makes the following Findings of Fact and Conclusions of Law:[2]

**FINDINGS OF FACT:**

IT IS HEREBY FOUND AND DETERMINED THAT:

**<u>Jurisdiction, Final Order and Statutory Predicate</u>**

A. The Court has jurisdiction to hear and determine the Sale Motion and to grant the relief requested therein, pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (K), (N) and (O). Venue of the Debtors' chapter 11 cases and the Sale Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409(a).

B. The Bid Procedures Order was entered on July 26, 2010, under which, among other things, this Court previously approved certain Bid Procedures and notice procedures for the Sale Hearing. The Bid Procedures Order remains in full force and effect.

---

[2] Findings of fact shall be construed as conclusions of law, and conclusion of law shall be construed as finding of fact when appropriate. Fed. R. Bankr. Pro. 7052.

C.    This Order **is intended to** constitutes a final and appealable order within the meaning of 28 U.S.C. §158(a).

D.    The statutory predicates for the relief sought in the Sale Motion are sections 105(a), and 363(b), (f), (m) and (n) of the Bankruptcy Code, as complemented by Bankruptcy Rules 2002 and 6004.

## Resolution of Objection

E.    The objection to the Sale Motion filed by Inland American Retail Management LLC and Inland Commercial Property Management, Inc. (together, "Inland") [Docket No. 87] has been resolved by letter agreement between Inland and Purchaser.

## Retention of Jurisdiction

F.    It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order, the Agency Agreement, and adjudicate, if necessary, any and all disputes involving the Sale Transaction.

## Corporate Authority, Consents and Approvals

G.    The Debtors have full corporate power and authority to execute and deliver the Agency Agreement and all other documents contemplated thereby and to consummate the Sale Transaction. The Sale Transaction has been duly and validly authorized by all necessary corporate actions of the Debtors. No consents or approvals other than the authorization and approval of this Court are required for the Debtors to consummate the Sale Transaction.

## Notice of the Sale Motion

H.    As evidenced by the affidavits of service previously filed with this Court (the "Notice Affidavits") (i) the Debtors provided proper, timely, adequate, and sufficient notice of the Sale Motion and the Sale Transaction, and (ii) no other or further notice of the relief sought

with respect thereto shall be required.

I.     A reasonable opportunity to object or be heard with respect to the Agency Agreement and Sale Motion has been afforded to all interested persons and entities, including: upon (a) all parties entitled to receive notice as of the date hereof pursuant to the Bankruptcy Rules and Orders of this Court, including the parties identified in the Sale Motion, (b) all parties who the Debtors believe have an interest in acquiring the Subject Assets, (c) appropriate local and state governmental authorities, (d) the Securities and Exchange Commission, (e) the Office of the United States Trustee, and (f) the Internal Revenue Service.

## Sound Business Purpose for the Sale Transaction

J.     The Debtors have marketed the Subject Assets and conducted the sale process in compliance with the Bid Procedures Order, fairly, and with adequate opportunity for interested parties to submit bids.

K.     Good and sufficient reasons for approval of the Agency Agreement and the Sale Transaction have been articulated. The relief requested in the Sale Motion is within the reasonable business judgment of the Debtors, their estates, their creditors and other parties-in-interest.

L.     The Debtors have demonstrated both (i) good, sufficient, and sound business purpose and justification and (ii) compelling circumstances for the entry into the Agency Agreement and the consummation of the Sale Transaction pursuant to section 363(b) of the Bankruptcy Code in that, among other things, the immediate consummation of the Sale Transaction is necessary and appropriate to maximize the value to the Debtors' estates. Such business reasons include, but are not limited to, the facts that (a) there is substantial risk of deterioration of the value of the Subject Assets if the Sale Transaction is not consummated

4

quickly; (b) the Agency Agreement constitutes the highest or best offer for the sale of the Subject Assets; (c) the Agency Agreement and the transactions contemplated thereby present the best opportunity for the Debtors to preserve and realize the value of the Debtors' remaining operations on a going concern basis and avoid any decline and further devaluation of the Debtors' business; and (d) unless the Sale (as defined in the Agency Agreement) is conducted expeditiously as provided for in Motion and pursuant to the Agency Agreement, creditors' recoveries may be diminished.

M.      The consideration provided by the Purchaser for the sale of the Subject Assets is the highest or otherwise best offer received by the Debtors and is fair and reasonable. The Agency Agreement represents a fair and reasonable offer for the sale of the Subject Assets under the circumstances of these chapter 11 cases. No other person or entity or group of entities, other than the Purchaser, has offered any amount for the Subject Assets that would give greater economic value to the Debtors' estates. A sale of the Subject Assets other than one free and clear of claims and interests would impact materially and adversely on the Debtors' estates, will yield substantially less value for the Debtors' estates, with less certainty than the available alternatives and thus the alternative would be of substantially less benefit to the estates of the Debtors.

N.      The Sale Transaction must be approved and consummated promptly in order to preserve the viability of the business as a going concern, to maximize the value of the Debtors' estates. Time is of the essence in consummating the Sale Transaction.

**No Auction Requirement**

O.      Other than GAFS, no party submitted a Qualified Bid for the Subject Assets and, in accordance with the Bid Procedures Order and the Bid Procedures, no Auction was

required to be held. The Agency Agreement constitutes the highest and best offer for the sale of the Subject Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Agency Agreement constitute the highest and best offer for the sale of the Subject Assets constitutes a valid and sound exercise of the Debtors' business judgment.

### Good Faith of Purchaser

P.        The terms and conditions set forth in the Agency Agreement are fair and reasonable. The Debtors and the Purchaser negotiated the terms and conditions of the Agency Agreement in good faith and at arm's length, and the Purchaser is entering into the Agency Agreement in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protections afforded thereby.

Q.        The Purchaser does not have a common identity of incorporators, directors or equity holders with any of the Debtors, and is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.   Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the Agency Agreement to be avoided under section 363(n) of the Bankruptcy Code.  Specifically, the Purchaser has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.

### Highest and Best Offer

R.        The Agency Agreement constitutes the highest and best offer for the Subject Assets.

S.        The Debtors' determination that the Agency Agreement constitutes the highest and best offer for the Subject Assets constitutes a valid and sound exercise of their business judgment.   The Agency Agreement represents a fair and reasonable offer to purchase the

Subject Assets. The Agency Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory or possession thereof, or the District of Columbia.

## Validity of Transfers

T. The transfer of the Subject Assets to the Purchaser pursuant to the Agency Agreement is a legal and valid, and good and marketable title to the Subject Assets vests or will vest the purchaser of such Subject Assets with all of the Debtors' right, title, and interest in the Subject Assets free and clear of all liens, claims, encumbrances and interests, and pursuant to section 363(f) of the Bankruptcy Code except as otherwise provided in the Agency Agreement.

## Section 363(f) of the Bankruptcy Code is Satisfied

U. The Debtors are the sole and lawful owner of the Subject Assets. The transfer of the Subject Assets to purchasers pursuant to the Agency Agreement will be legal, valid, and effective transfers of the Subject Assets, and will vest the respective purchasers with all right, title, and interest of the Debtors to the Subject Assets free and clear of all interests, including, but not limited to, those (A) that purport to give to any party a right or option to effect any forfeiture, modification, right of first offer or refusal, or termination of the Debtors' or the Purchaser's interest in the Subject Assets, or any similar rights, (B) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Subject Assets prior to the Sale, and (C) (i) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of use, hypothecations, easements, servitudes, restrictive covenants, leases, subleases, covenants, rights of way, options, claims (including, without limitation, any and all "claims"

7

as defined in section 101(5) of the Bankruptcy Code), restrictions, encroachments, encumbrances or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership and (ii) all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these cases pursuant to chapter 11 of the Bankruptcy Code, and whether imposed by agreement, understanding, law, equity or otherwise, and claims otherwise arising under doctrines of successor liability (collectively, "Interests"), with all such Interests attaching to the proceeds of the Sale in the same order of priority and with the same force and effect as such Interests enjoyed with respect to the Subject Assets.

V.      The Debtors may sell the Subject Assets free and clear of all Interests against the Debtors or their estates or the Subject Assets because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been or will be satisfied. The holders of such Interests in each case, against the Debtors or their estates or the Subject Assets, and non-Debtor parties to any related agreements who did not object to the Sale Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Holders of Interests, if any, fall within one or more of the other subsections of section 363(f) and are adequately protected by having their liens, claims, encumbrances or interests, if any, in each instance against the Debtors or their estates or the Subject Assets, attach to the cash proceeds to be received by the Debtors under the Agency Agreement, subject to the same

priority and validity (and defenses and objections of the Debtors and other parties in interest, if any, with respect thereto) as are presently existing against the Subject Assets in which they allege such an Interest.

**CONCLUSIONS OF LAW:**

Based on the foregoing Findings of Fact, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

**General Provisions**

1.      Except to the extent that relief was previously granted in the Bid Procedures Order, the relief requested in the Sale Motion is GRANTED.

2.      ~~Any objections to the Sale Motion and the relief requested therein that have not been withdrawn, waived, or settled, are denied and overruled on the merits with prejudice~~.  **No objections to the Sale Motion were filed except for one objection that was resolved.**

3.      The terms and provisions of this Order shall be binding in all respects upon the Debtors, their estates, creditors, members, managers and shareholders, the Purchaser and its officers, directors and members, all interested parties, and their respective successors and assigns, including, but not limited to, all non-Debtor parties asserting any liens, claims, encumbrances and/or interests in the Subject Assets.

**Approval of the Agency Agreement**

4.      The Agency Agreement and the Sale Transaction contemplated thereby are hereby approved.

5.      The Debtors are hereby authorized to retain Purchaser as their exclusive sales agent to market and sell the Subject Assets, including, without limitation, the Merchandise and

FF&E (as defined in the Agency Agreement), in accordance with the terms of the Agency Agreement.

6.      Pursuant to Bankruptcy Code section 363(b), the Debtors are authorized to consummate the Sale Transaction upon the terms and conditions set forth in the Agency Agreement and to commence and conduct the Sales in accordance with such agreement and the terms of this Order.

7.      The Debtors are authorized to take any and all actions and execute all documents necessary or appropriate to effectuate the terms of the Agency Agreement and to conduct the Sales.

8.      All payments required to be made under the Agency Agreement (either to the Debtors, to Purchaser or to any third parties) are hereby approved and may be made without any further motion or order of this Court. Subject to the terms of the Agency Agreement, any amounts due to the Purchaser pursuant to the Agency Agreement shall be free and clear of all Interests and shall be payable to the Purchaser out of the proceeds of the Sale without further order of the Court and without the filing with the Court of fee applications.

9.      Purchaser is hereby granted a limited license and right to use until the Sale Termination Date (as defined in the Agency Agreement) the trade names, logos and customer lists relating to and used in connection with the operation of the Stores, solely for the purpose of advertising the Sale in accordance with the terms of the Agency Agreement.

10.     All newspapers and other advertising media in which the Sale is advertised shall be ~~directed~~ **authorized** to accept this Order as binding and to allow the Debtors and Purchaser to consummate the transactions provided for in the Agency Agreement, including, without

limitation, the conducting and advertising of the Sale in the manner contemplated by the Agency Agreement.

11.     Subject to the Purchaser's obligations to pay expenses pursuant to the Agency Agreement, the Purchaser shall have the right to use Closing Locations and all related store services, furniture, fixtures, equipment and other assets of the Debtors as designated under the Agency Agreement for the purpose of conducting the sale, free of any interference from any entity or person.

12.     Neither the Purchaser nor its affiliates, successors or assigns shall, as a result of the consummation of the transaction contemplated by the Agency Agreement: (a) be a successor to the Debtors or their estates; (b) have, de facto or otherwise, merged or consolidated with or into the Debtors or their estates; or (c) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.   Except as otherwise provided in the Agency Agreement, (i) the Purchaser, its affiliates, members, or shareholders as such, or the Subject Assets, shall not have any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, (ii) the Purchaser, its affiliates, members, or shareholders as such, or the Subject Assets, shall not have any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest, or (iii) Purchaser, its affiliates, members, or shareholders as such, or the Subject Assets, shall not have any liability or responsibility to the Debtors except as is expressly set forth in the Agency Agreement.   Without limiting the effect or scope of the foregoing, as a result of the closing of the Sale Transaction contemplated by the Agency Agreement, the Purchaser shall have no successor liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor

law, de facto merger or substantial continuity, whether known or unknown as of the Sale Commencement Date (as defined in the Agency Agreement), now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Sale Commencement Date, including, but not limited to, liabilities **arising prior to the Sale Commencement Date** on account of any **T**axes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Sales, and liabilities under the Worker Adjustment Retraining Notification Act ("WARN Act") or any similar state or local law, or with respect to Equal Employment Opportunity Commission or state-level employee claims arising with respect to any of the Debtors' employees at the time such liability arises.

13.     Purchaser shall have, subject to Purchaser's obligations to pay the Guaranteed Amount, the Additional Return and Expenses (each as defined in the Agency Agreement), a duly perfected first priority lien and security interest in the Subject Assets and any proceeds thereof to which the Purchaser is entitled under the Agency Agreement.

14.     Purchaser shall not be permitted to use the current delivery services of the Debtors, and the Purchaser shall be required to setup and process deliveries and inventory movement, during the Sale, without the assistance of the Debtors' current delivery service.

15.     Subject to the terms of the Agency Agreement, the Purchaser may, at its expense, supplement Merchandise in the Debtor's Stores with augmented goods of like kind and quality as presently in the Stores.

16.     The Purchaser and the Debtors shall be permitted, if needed, to close the Stores to the public for a period commencing after the Sale Commencement Date (as defined in the Agency Agreement) for the purposes of preparing the Stores for the Sale.

17.     The Debtors shall have the right to add additional stores to the Agency Agreement after the Sale Commencement Date, without further order of the Court; provided, however, that (i) the Debtors shall provide the Office of the United States Trustee, Haining Mengnu Group Co. Ltd., the Official Committee of Unsecured Creditors of the Debtors (the "Committee") and the landlord(s) for any such additional stores with no less than ten (10) days advance written notice (the "Notice Period") of the intent to add such additional store to the Agency Agreement; (ii) the Committee and any such landlord(s) shall be entitled to object to any such addition during the Notice Period; and (iii) in the event that such an objection is filed with the Bankruptcy Court during the Notice Period, no additional store shall be added to the Agency Agreement until such time as any such objection(s) is resolved by the consent of the parties or a final order of the Court.

18.     At the conclusion of the Sales, Purchaser is authorized to abandon any remaining furniture, fixtures or equipment.  In the event of such abandonment, the landlord may dispose of such property without any liability to any individual or entity that may have an interest in such abandoned property and such abandonment is without prejudice to any landlord to assert any claims based on such abandonment and without prejudice to the Debtors or other party in interest to object thereto, provided, however, that the Debtors shall provide any known third party holding or asserting an Interest in such assets, including taxing authorities, with five (5) days' prior notice of such abandonment and if such third party fails to remove such assets or to make arrangements to remove such assets within such time as is deemed acceptable to the affected landlord prior to the expiration of such five (5) day notice period, such assets shall be deemed abandoned by such third party and the affected landlord may dispose of such property without liability to any party; provided, however, that the abandonment of such assets authorized herein

shall not impact the Purchaser's obligation to deliver the Stores in an otherwise broom clean condition to the Debtors.

19.     The Agency Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement is not material and provided further that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates and is filed on the docket with a statement of the Committee's "support" or no objection.

20.     The failure specifically to include any particular provision of the Agency Agreement in this Order shall not diminish or impair the efficacy of such provision~~., it being the intent of this Court that the Agency Agreement and each and every provision, term, and condition thereof be authorized and approved in its entirety.~~

21.     Pursuant to Bankruptcy Code section 363(f), Purchaser's sale of the Subject Assets in accordance with the Agency Agreement, shall be free and clear of all liens, claims, all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in Bankruptcy Code section 101(5)), arising before, on or after the date on which these chapter 11 cases were commenced (collectively, the "Liens"), with such Liens to attach to the proceeds of the Subject Assets and other amounts payable to the Debtors under the  Agency Agreement, in the same order, amount and priority as existed immediately prior to the filing of the petitions commencing these cases (and the rights of any party and the Committee to object to any alleged liens in such assets is also fully preserved).

22.     All persons holding liens, claims or interests in any of the Subject Assets (including the inventory and fixtures of the Debtors), whether secured or unsecured or matured or unmatured or contingent or fixed, shall be forever barred and estopped and permanently enjoined from asserting any such lien, claim or interest against Purchaser or its assignees or successors.

### Conduct of Sales

23.     **Subject to further Court order, a**ny restrictions in any Restrictive Documents (as defined in this Paragraph) that may impair the Debtors' ability to conduct the Sales shall not apply to such sales. Specifically, the Sale will be conducted on properties that are leased by the Debtors.  In certain cases, the contemplated Sales may be inconsistent with certain provisions of such leases or other documents with respect to any such leased premises, including (without limitation) reciprocal easement agreements, agreements containing covenants, conditions and restrictions (including, without limitation, "go-dark" provisions and landlord recapture rights), or other similar documents or provisions (collectively, the "Restrictive Leases").  In addition, promotional sales of certain Merchandise (as defined in the Agency Agreement) bearing licensed trademarks at the contemplated Sales may be inconsistent with certain provisions of the Debtors' trademark licenses relating to such Merchandise (the "Restrictive Licenses" and, together with the Restrictive Leases, the "Restrictive Documents").

24.     The Stores may "go-dark" during the Sales and remain "dark" despite any lease restriction, real estate local act, local law, or ordinance to the contrary, and any "continuous operation" or similar clause in any of the leases (or any lease provision that purports to increase the rent or impose any penalty for going dark) may not be enforced to hinder or interrupt the Sales (and the going dark under such leases shall not be a basis to cancel or terminate the leases).

25.  **Subject to further Court order,** no person or entity, including but not limited to any landlord, licensor, creditor, or federal or local Governmental Unit (as defined in Bankruptcy Code section 101(27)), (i) served with a copy of the Sale Motion or (ii) served with a copy of this Order who does not object pursuant to the provisions of this Order, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sales, or the advertising and promotion (including the posting of signs) of such Sales. ~~and all such parties and persons of every nature and description, including landlords, licensors, creditors, and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding, the conduct of the Sales and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Purchaser, or the Debtors' landlords for the Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales or other liquidation sales at the Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.~~  This Court shall retain exclusive jurisdiction to resolve such dispute, and such parties or persons shall take no action against the Debtors, the Purchaser, the landlords or the Sales until this Court has resolved such dispute.  This Court shall hear the request of such persons or parties with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

26.  No Governmental Unit shall be bound by this injunctive provision unless it was either previously served with the Motion or subsequently served with this Order, and has had an opportunity to object as provided in this Order, and failed to timely file an objection.

27.  Subject to applicable state and local public health and safety laws (the "Safety

Laws"), and applicable tax, labor, employment, environmental, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, the "General Laws"), but excluding Liquidation Sale Laws (as defined below), the Debtors and the Purchaser be, and they hereby are, authorized to take such actions necessary and appropriate to implement the Agency Agreement and to conduct the Sales without the necessity of a further order of this Court as provided by the Agency Agreement, including, but not limited to, advertising the Sales.

28.     The Sales at the Stores shall be conducted by the Debtors and the Purchaser without the necessity of compliance with any federal, state or local law, statute, regulation, or ordinance, lease provision or licensing requirement affecting store closing, "going out of business", liquidation or auction sales, or establishing licensing or permitting requirements, waiting periods, time limits, or bulk sale restrictions, or affecting advertising, including signs, banners, and posting of signage (collectively, the "Liquidation Sale Laws"). The Debtors and the Purchaser shall be entitled to use sign walkers, hang signs and/or interior or exterior banners advertising the Sales in accordance with the Agency Agreement (or as otherwise agreed between the Debtors, the Purchaser and the respective landlords), including, without limitation, advertising the Sales as "store closing," "sale on everything" or similar themed sales (to the extent permitted by the Agency Agreement) and by means of media advertising, A-frames, banners, and similar signage, without further consent of any person and without compliance with the Liquidation Sale Laws.  Provided that the use of banners and sign walkers is done in a safe and responsible manner, such sign walkers and banners, in and of themselves, shall not be deemed to be in violation of Safety Laws and/or General Laws.

29.     Notwithstanding any restrictions in the Agency Agreement on the Purchaser's

ability to conduct the Sales in compliance with applicable laws or store leases and except as otherwise provided in this Order, each and every federal, state or local agency, department or Governmental Unit with regulatory authority over the Sales and all newspapers and other advertising media in which the Sales is advertised shall consider this Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required for the conduct of the Sales, unless and until there is a further order of this Court.

30. State and/or local authorities shall not fine, assess, or otherwise penalize the Debtors, the Purchaser or any of the landlords of the Stores for conducting or advertising the Sales in a manner inconsistent with state or local law; provided, however, that the Sales are conducted and advertised in a manner contemplated by this Order and the Agency Agreement.

31. The Debtors and/or the Purchaser (as the case may be), are authorized and empowered to transfer the Subject Assets among the Stores.

32. Nothing in this Order shall be deemed to bar any Governmental Unit from enforcing Safety Laws and General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or Purchaser's right to assert that any such laws are not in fact Safety Laws or General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order or otherwise; provided, however, that the Governmental Unit shall in the first instance present the matter to this Court for resolution or request that the Governmental Unit be permitted to proceed with the matter in the applicable non-bankruptcy forum; provided, further, however, that the Governmental Unit shall provide the Debtors and the Purchaser with reasonable notice and opportunity to cure any such alleged violation absent extenuating circumstances and/or to oppose the relief sought by such Governmental Unit. The Debtors and/or the Purchaser do not waive the right to argue that the conduct was in compliance with this Order and/or any

applicable law, or preempted by applicable law.

33.     If there is a dispute (a "Reserved Dispute") over the enforceability of a Liquidation Sale Law, resolution of such Reserved Dispute will take place before this Court, as provided herein and shall only operate prospectively.

34.     Any time before the twentieth (20th) day following the service of this Order as provided for above, any local Governmental Unit may assert a Reserved Dispute by sending a notice explaining the nature of the dispute to Debtors' and Purchaser's counsel at the applicable addresses set forth in the Agency Agreement.  If the Debtors, the Purchaser and the objecting local Governmental Unit (as the case may be, the "Objecting Party") are unable to resolve the Reserved Dispute within fifteen (15) days of receipt of the Objecting Party's notice, either party may file a motion with the Court requesting a resolution of the dispute (a "Dispute Resolution Motion").  If such a Dispute Resolution Motion is timely filed, the Debtors and the Purchaser shall each be entitled to assert that the provisions in question are preempted or otherwise rendered unenforceable by the Bankruptcy Code or applicable federal law and/or that neither the terms of this Order nor the conduct of the Sales violates the Liquidation Sale Law.

35.     The timely filing of a Dispute Resolution Motion will not affect the finality of this Order or limit or interfere with the ability to conduct or to continue to conduct the Sales pursuant to this Order and the Agency Agreement, absent further order of this Court.  By timely filing a Dispute Resolution Motion, all Governmental Units shall be entitled to assert any jurisdictional, procedural or substantive argument that it might heretofore have been entitled to raise.  Notwithstanding anything in the foregoing, any local Governmental Unit may assert a Reserved Dispute at any time during the pendency of the Store Closing Sale by filing a Dispute Resolution Motion; provided, however, that the Purchaser shall be entitled to continue to

conduct the Sales pending resolution of the Reserved Dispute by an order of the Court.

36. Nothing herein shall be deemed to constitute a ruling on whether any nonbankruptcy state law, regulation or rule applicable to the Stores is preempted by the Bankruptcy Code nor as to whether the automatic stay applies nor is this Order a ruling with respect to whether sovereign immunity applies.

37. All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." The Purchaser shall accept return of any goods that contains a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within the time period prescribed by the Debtors' return policy that was in effect when the merchandise was purchased (except with respect to items purchased during the Sales, in which case such items must be returned within twenty-one (21) days of purchase), the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.

38. Within three (3) business days of the Sale Termination Date (as defined in the Agency Agreement) for one or more of the Stores pursuant to the Agency Agreement, the Debtors shall electronically file with the Court a notice disclosing the Sale Termination Date, and shall serve a copy of such notice on the affected landlord(s) for the subject Closing Stores; provided, however, such notice shall not serve as a rejection of the lease for such named Store, and the Debtors shall have no obligation to serve such notice on the unaffected landlords or any other party in interest. In the event of an agreement between the Debtors and the Purchaser to extend the Sales at a Store beyond the Sale Term (as defined in the Agency Agreement), the Debtors shall electronically file a notice of such extension, and mail a copy of such notice to

the affected landlord, the U.S. Trustee, the Committee, and the attorney general for the state in which the subject Store is located. Absent consent of the affected landlords, the Debtors shall file an expedited motion to extend the Sales at the Stores.

39. To the extent that the disposition of the Debtors' assets would constitute the sale of an interest in a consumer credit transaction that is subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time, then the Purchaser shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

40. Nothing in this Order shall (a) alter or affect the Debtors' obligation to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code.

## Additional Provisions

41. The consideration provided by the Purchaser under the Agency Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code. ~~Each and every person or entity is hereby barred, estopped, and permanently enjoined from commencing or continuing an action seeking relief under section 363(n) of the Bankruptcy Code.~~

42. The Agency Agreement is the product of good-faith (as that term is used in section 363(m) of the Bankruptcy Code), arms'-length negotiations, and the Purchaser is and shall continue to be in good faith (as that term is used in section 363(m) of the Bankruptcy Code)

by proceeding to consummate the Sale Transaction. Accordingly, the reversal or modification on appeal of the authorization to consummate and the Sale Transaction approved hereby shall not affect the validity and enforceability of such Sale Transaction, unless such authorization is duly stayed pending such appeal. The Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

43.     Any person or entity in possession of any of the Subject Assets shall surrender such assets to the Debtors upon the closing of the transactions approved by this Order.

44.     Nothing in this Order shall be deemed to modify the Debtors' rights to seek Court approval of any extension as may be required pursuant to section 365(d)(4) of the Bankruptcy Code.

45.     Nothing contained in any plan of reorganization or liquidation confirmed in the Debtors' chapter 11 cases or any order of this Court confirming such plans or in any other order in these chapter 11 cases (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agreements or the terms of this Order.

46.     The provisions of this Order and the Agency Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtors, or which may be entered converting the Debtors' cases from chapter 11 to chapter 7 of the Bankruptcy Code, and the terms and provisions of the Agency Agreement as well as the rights and interests granted pursuant to this Order and the Agency Agreement shall continue in this or any superseding case and shall be specifically performable and enforceable against and binding upon the Debtors, their estates, the Purchaser, and their respective successors and permitted assigns, including any trustee,

responsible officer or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, and shall not be subject to rejection, revocation or avoidance. Such binding effect is an integral part of this Order. Any trustee appointed in these cases shall be and hereby is authorized and directed to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement, and the Purchaser shall be and hereby are authorized to perform under the Agreements upon the appointment of a trustee without the need for further order of this Court.

47.     To the extent, if any, anything contained in this Order conflicts with a provision in the Agency Agreement, this Order shall govern and control.

48.     The provisions of this Order are nonseverable and mutually dependent.

49.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

50.     Any person or entity in possession of any of the Subject Assets shall surrender such assets to the Debtors upon the closing of the transactions approved by this Order.

51.     The Debtors shall serve copies of this Order within five (5) days, via first class mail, to all federal, state and local regulatory or taxing authorities or recording offices that have a reasonably known interest in the relief requested in the Motion, the Office of the U.S. Trustee for the Southern District of New York, and the U.S. Attorney General.

52.     The Debtors are authorized and empowered to take such steps, incur and pay such costs and expenses, and take all such actions as may be reasonably necessary to fulfill the notice requirements established by this Order.

1025915-2

53.     This Order is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Subject Assets. All liens, claims, encumbrances and interests against the Subject Assets as of the date of this Order shall forthwith, upon the occurrence of the closing on the closing date with respect to any of the Subject Assets, be removed and stricken as against such assets, without further order of the Court or act of any party. Upon the sale of Subject Assets, the entities listed above in this paragraph are authorized and specifically directed to strike all such recorded liens or claims against such Subject Assets as provided for herein from their records, official and otherwise (including those asserted by any secured lender).

54.     The stay provision of Bankruptcy Rule 6004(h) is hereby waived, and notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, the Purchaser and the Debtors may commence the Sale Transaction pursuant to the Agency Agreement at any time after entry of the Order.

55.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: July 29, 2010
New York, New York

/s/ Allan L. Gropper

HONORABLE ALLAN L. GROPPER
UNITED STATES BANKRUPTCY JUDGE

1025915-2