# AGENCY AGREEMENT

This Agency Agreement (the "Agreement") is made as of this ~~16~~28th day of July, 2010, by Great American Furniture Services, LLC, a Delaware limited liability company, (the "Agent") and Jennifer Convertibles, a Delaware corporation (the "Merchant").

## RECITALS

WHEREAS, Merchant and certain of its affiliates (collectively, the "Debtors") filed ~~a~~ voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and Merchant is managing its affairs as a debtor and debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code ("Chapter 11 Case");

WHEREAS, Merchant desires that Agent act as Merchant's exclusive agent for the limited purpose of: (a) selling all of the Merchandise (defined below) located or to be located in Merchant's stores (collectively, the "Stores") as each are identified in Exhibit A (collectively, the "Closing Locations"), by conducting "store closing" sales at the Stores, subject in all respects to the terms and conditions contained herein (the "Sale"); and (b) at Merchant's election, in accordance with Section 15 hereof, disposing of Merchant's owned FF&E (defined below) located at the Closing Locations, subject to the terms and conditions set forth herein;

WHEREAS, except as expressly provided for herein, this Agreement shall govern the conduct of the Sale at the Closing Locations, together with the parties' respective rights and obligations with respect thereto;

WHEREAS, Agent is willing to serve as Merchant's exclusive agent to conduct the Sale at the Closing Locations and dispose of the FF&E in the Closing Locations in accordance with the terms and conditions of this Agreement.

NOW THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Agent and Merchant hereby agree as follows:

Section 1.     Defined Terms; Exhibits

1.1     Defined Terms.  The terms set forth below are defined in the Sections referenced of this Agreement:

| Defined Term | Section |
|---|---|
| Additional Merchandise | Section 3.5(a) |
| Additional Merchandise And Delivery Sales | Section 3.1(b) |
| Additional Return | Section 3.1(b) |

| | |
|---|---|
| Additional Stores | Section 2.3(n) |
| Agency Accounts | Section 3.3(c) |
| Agency Documents | Section 11.1(b) |
| Agent | Preamble |
| Agent Claim | Section 12.5 |
| Agent Indemnified Parties | Section 13.1 |
| Agreement | Preamble |
| Approval Order | Section 2.3 |
| Bankruptcy Code | Recitals |
| Bankruptcy Court | Recitals |
| Central Services Expenses | Section 4.1 |
| Closing Locations | Recitals |
| Cost Value | Section 5.3 |
| ~~Customer Returned Goods~~<span style="color:blue">Committee</span> | Section ~~8.5~~<span style="color:blue">2.3(n)</span> |
| Defective Merchandise | Section 5.2(b) |
| Event of Default | Section 14 |
| Excluded Benefits | Section 4.1 |
| Expenses | Section 4.1 |
| | |
| Final Inventory Report | Section 3.3(a) |
| Final Reconciliation | Section 3.4(a) |
| FF&E | Section 15 |
| FF&E Election | Section 15 |
| Store Closing Sale Laws | Section 2.3(e) |
| Guaranty Percentage | Section 3.1(a) |
| Guaranteed Amount | Section 3.1(a) |
| | |
| Guaranty Payment | Section 3.1(a) |
| Initial Occupancy Payment | Section 3.3 (a) |
| Inventory Guaranteed Amount | Section 3.3(a) |
| Inventory Completion Date | Section 5.1 |
| Inventory Date | Section 5.1 |
| Inventory Taking | Section 5.1 |
| Inventory Taking Instructions | Section 5.1 |
| Inventory Restrictions | Section 3.5 (a) |
| ~~Lenders~~ | ~~Section 5.1~~ |
| Merchandise | Section 5.2(a) |
| Merchant | Preamble |
| Additional Return | Section 3.1(b) |
| Occupancy Expenses | Section 4.1 |
| Proceeds | Section 7.1 |
| Remaining Merchandise | Section 3.2 |
| Retained Personnel | Section 9.1 |
| Sale | Recitals |
| Sale Commencement Date | Section 6.1 |
| Sale Guidelines | Section 8.1 |
| Sale Term | Section 6.1 |

| | |
|---|---|
| Sale Termination Date | Section 6.1 |
| Sales Taxes | Section 8.3 |
| ~~Third Party~~ | ~~Section 4.1~~ |

     1.2   <u>Exhibits</u>.  The Exhibits and Schedules annexed to this Agreement, as listed below, are an integral part of this Agreement:

| Exhibit | Section | Description |
|---|---|---|
| Exhibit A | Recitals | Closing Locations |
| ~~Exhibit 4.1(a)~~ | ~~Section 4.1(a)~~ | ~~Occupancy Expense Schedule~~ |
| Exhibit 5.1(a) | Section 5.1 | Inventory Taking Instructions |
| Exhibit 8.1 | Section 8.1 | Sale Guidelines |
| Exhibit 10 | Section 10 | Form of Approval Order |
| | | |
| ~~Exhibit 11.1(c)~~ | ~~Section 11.1(c)~~ | ~~Pre-Existing Liens~~ |

     1.3   <u>Currency</u>.  Unless otherwise specified, all references to monetary amounts refer to United States dollars.

     Section 2.     <u>Appointment of Agent.</u>

     2.1   Merchant hereby appoints Agent, and Agent hereby agrees to serve, as Merchant's exclusive agent for the limited purpose of conducting the Sale in accordance with the terms and conditions of this Agreement.  Merchant's and Agent's obligations hereunder are subject to the approval of this Agreement by the Bankruptcy Court, and this Agreement (other than Section 16.11, which shall be binding once it is approved by the Bankruptcy Court) shall be of no force or effect in the event that the Approval Order is not obtained.

     2.2   Except for incurring Expenses in connection with the Sale and as otherwise specifically provided in this Agreement, Agent shall have no authority to enter into any contract, agreement or other arrangement or to take any other action, by or on behalf of Merchant, that would have the effect of creating any obligation or liability, present or contingent, on behalf of or for the account of Merchant without Merchant's prior written consent.

     2.3   Not later than two (2) business days after the execution of this Agreement, Merchant shall file an expedited motion with the Bankruptcy Court for entry of an order approving this Agreement and authorizing Merchant and Agent to conduct the Sale at the Closing Locations, in accordance with the terms hereof (the "<u>Approval Order</u>"). The Approval Order shall provide, in a form reasonably satisfactory to the Merchant and Agent, among other things, that:

         (a)   the terms of this Agreement (and each of the transactions contemplated hereby) are approved;

         (b)   Merchant and Agent shall be authorized to continue to take any and all actions as may be necessary or desirable to implement this Agreement and each of the transactions contemplated hereby;

(c)     Agent shall be entitled to sell all Merchandise hereunder free and clear of all liens, claims and encumbrances thereon (collectively, "Liens"), with any presently existing Liens encumbering all or any portion of the Merchandise or the Proceeds attaching only to the Guaranteed Amount and other amounts to be received by Merchant under this Agreement;

(d)     Subject to Agent's obligations to pay Expenses pursuant to Section 4.1 and Section 5.4 hereof, Agent shall have the right to use the Closing Locations and all related store services, furniture, fixtures, equipment and other assets of Merchant as designated hereunder for the purpose of conducting the Sale, free of any interference from any entity or person;

(e)     Agent, as agent for Merchant, is authorized to conduct, advertise, post signs and otherwise promote the Sale without further consent of any person (other than Merchant as provided for herein), in accordance with the terms and conditions of this Agreement and the Sale Guidelines (as the same may be modified and approved by the Bankruptcy Court), and without further compliance with applicable federal, state or local laws governing, *inter alia*, the conduct of store closing sales (the" Store Closing Laws"), other than those designed to protect public health and safety and tax, labor, employment, environmental and consumer protection laws (including consumer laws relating to deceptive practices and false advertising);

(f)     Agent shall be granted a limited license and right to use until the Sale Termination Date the trade names, logos and customer lists relating to and used in connection with the operation of the Closing Locations, solely for the purpose of advertising the Sale in accordance with the terms of the Agreement;

(g)     all newspapers and other advertising media in which the Sale is advertised shall be directed to accept the Approval Order as binding and to allow Merchant and Agent to consummate the transactions provided for in this Agreement, including, without limitation, the conducting and advertising of the Sale in the manner contemplated by this Agreement;

(h)     all utilities, landlords, creditors and all persons acting for or on their behalf shall not interfere with or otherwise impede the conduct of the Sale, institute any action in any court (other than in the Bankruptcy Court) or before any administrative body which in any way directly or indirectly interferes with or obstructs or impedes the conduct of the Sale;

(i)     the Bankruptcy Court shall retain jurisdiction over the parties to enforce this Agreement;

(j)     Agent shall not be liable for any claims against the Merchant other than as expressly provided for in this Agreement, and Agent shall have no successorship liabilities whatsoever;

(k)     Agent shall have, subject to Agent's obligations to pay the Guaranteed Amount, the Additional Return and Expenses, a valid, duly perfected first priority lien and security interest in the Merchandise and any Proceeds to which Agent is entitled in accordance with the terms of this Agreement;

(l)     Agent shall not be permitted to use the current delivery services of the Merchant. Agent will be required to setup and process deliveries and inventory movement, during the Sale, without the assistance of the current delivery service.

(l)     Agent shall be permitted to supplement the Merchandise and include in the Sale Additional Merchandise consistent with the terms of Section 3.5 hereof; and

(m)     Merchant and Agent shall be permitted, if needed, to close the Stores to the public for a period commencing after the Sale Commencement Date for the purposes of preparing the Stores for the Sale.; and

(n)     Merchant shall have the right to add additional stores to this Agency Agreement after the Sale Commencement Date, without further order of the Bankruptcy Court ("Additional Stores"),; provided, however, that (i) Merchant shall provide the Official Committee of Unsecured Creditors of the Debtors (the "Committee") and the landlord(s) for any such Additional Stores with no less than ten (10) days advance written notice (the "Notice Period") of the intent to add such Additional Store to this Agency Agreement; (ii) the Committee and any such landlord(s) shall be entitled to object to any such addition during the Notice Period; and (iii) in the event any such objection is filed with the Bankruptcy Court during the Notice Period, no Additional Store shall be added to this Agency Agreement until such time as any such objection(s) is resolved by the consent of the parties or a final order of the Bankruptcy Court..

Section 3.    Guaranteed Amount and Other Payments

3.1    Payments to Merchant and Agent

(a)     As a guaranty of Agent's performance hereunder, in addition to the payment of Expenses as provided for in Section 4.1 hereof, Agent guarantees that Merchant shall receive the sum of seventy- five percent (75%) (the "Guaranty Percentage") of the aggregate Cost Value of Merchandise located in the Closing Locations on the Sale Commencement Date and based on the Final Inventory Report (the "Guaranteed Amount").

(b)     In addition to the Guaranteed Amount, Agent hereby guarantees that the Merchant shall receive four percent (4.0%) of the written sales from the sale of Additional Merchandise (e.g., written sales less sales tax) and delivery charges collected  (collectively, the "Additional Return").  Agent shall tender payment of the Additional Return as part of the weekly reconciliation conducted pursuant to Section 8.7 hereof

(c)     Agent shall pay to Merchant the Guaranteed Amount in the manner and at the times specified in Section 3.3 below, which Guaranteed Amount will be calculated based upon the aggregate Cost Value of the Merchandise as determined by the Final Inventory Report (as defined in Section 3.3(a)).

3.2    Payments to Agent.  After payment in full of the Guaranteed Amount and the Additional Return, and payment of all Expenses, Agent shall be entitled to retain any remaining Proceeds of the Sale.  Provided that no Event of Default has occurred and continues to exist on the

part of the Agent, all Merchandise remaining at the conclusion of the Sale shall become the property of Agent, free and clear of all Liens ("Remaining Merchandise").

3.3     Time of Payments and Control of Proceeds

(a)     Payment of Guaranteed Amount and First Month Occupancy.  On the first business day following entry of the Approval Order, Agent shall pay Merchant the entire first month's total Occupancy Expense ~~set forth in Exhibit 4.1(a)~~ (the "Initial Occupancy Payment"). The ~~calculation based upon the estimated aggregate Cost Value~~Guaranty Percentage of the Merchandise to be included in the Sale, as reflected on Merchant's books and records on the last business day immediately preceding the Sale Commencement Date (the "Inventory Guaranteed Amount"), shall be paid in full no later than twelve calendar days from the Sale Commencement Date by wire transfer to such account(s) as are designated on Exhibit 3.3(a) (the "Guaranty Payment"). The Guaranteed Amount shall be calculated after the issuance of the final audited report of the aggregate Cost Value of the Merchandise, after verification and reconciliation thereof by Agent and Merchant (the "Final Inventory Report")~~.~~ in accordance with Section 3.4.  In the event there is any dispute with respect to the reconciliation of the aggregate Cost Value of the Merchandise following the Inventory Taking or the Final Inventory Report, then any such dispute shall be resolved in the manner and at the times set forth ~~in Section 3.4(b) hereof~~herein.

(b)     Control of Proceeds.  Within one (1) business days after the Sale Commencement Date, Agent shall establish its own Sale account for the deposit of the Proceeds (the "Agency Accounts"). Agent shall exercise sole signatory authority and control with respect to the Agency Accounts; provided, however, upon request, Agent shall deliver to Merchant copies of all bank statements and other information relating to such accounts, if requested. Merchant shall not be responsible for and Agent shall pay as an Expense hereunder, all bank fees and charges, including wire transfer charges, related to the Agency Accounts, whether ~~received~~incurred during or after the Sale Term.  Upon Agent's establishing of the Agency Accounts, all Proceeds of the Sale (including credit card proceeds) shall be deposited into the Agency Accounts. Agent shall setup credit card processing and will not be required or permitted to the use of the Merchant's current credit card processing during the Sale Term.

3.4     Final Reconciliation.  ~~(a)~~ Within thirty (30) days after the Sale Termination Date, Agent and Merchant shall jointly prepare a final reconciliation of the Sale including, without limitation, a summary of Additional Return, taxes, any difference between the Guaranteed Amount and the Guaranty Payment, and any other accountings required hereunder (the "Final Reconciliation"). Within five (5) days of completion of the Final Reconciliation, any undisputed and unpaid Expenses shall be paid by Agent.  In the absence of an order of the Bankruptcy Court, no such disputed amount(s) shall be paid until the dispute has been resolved by agreement of the parties~~.~~ or as determined in the manner prescribed in Section 3.4(b) hereof.

3.5     Additional Merchandise

(a)     Agent shall be entitled to include in the Sale at the Stores additional merchandise which is of like kind, quality and similar price points as the Merchandise located in the Stores as well as rugs and wall coverings ("Additional Merchandise"); provided, however, Agent shall not deliver any Additional Merchandise to the Closing Locations until after the

6

completion of the Inventory Taking at such location(s). Additional Merchandise shall only be permitted to be supplemented for the first 30 days of the Sale Term (the "Inventory Restrictions").

(b)     At all times and for all purposes, the Additional Merchandise and its proceeds, less the Additional Return, shall be the exclusive property of Agent.  The transactions relating to the Additional Merchandise are, and shall be construed as, a true consignment from Agent to Merchant.  The Additional Merchandise shall be at all times subject to the control of Agent.  If requested by Agent, Merchant shall, at Agent's expense, insure the Additional Merchandise and, if required, promptly file any proofs of loss with regard to same with Merchant's insurers.

(c)     In order to distinguish the Additional Merchandise from the Merchandise located in the Closing Locations, Agent shall describe a "dummy" SKU to such Additional Merchandise, which shall enable Merchant and Agent to distinguish the sales of the Additional Merchandise from the sale of the Merchandise presently include in the Sale.

Section 4.     Expenses of the Sale

4.1     Expenses.  Agent shall be responsible for all Expenses incurred (i) in conducting the Sale during the Sale Term, and (ii) until the Vacate Date with respect to each Closing Location, which expenses shall be paid by Agent in accordance with Section 4.2 below.  As used herein, "Expenses" shall mean all Store-level operating expenses of the Sale which arise (i) during the Sale Term at the Closing Locations, , and (ii) until the Vacate Date with respect to each Closing Location, limited to the following:

(a)     Aactual Occupancy Expenses for the Store Locations set forth on Exhibit 4.1(a) hereto and starting the fifth week of the Sale, on a weekly basis.  For the avoidance of doubt, Agent shall be responsible for all Occupancy Expenses for each Closing Location incurred until the Vacate Date of such Closing Location;

(b)     payroll and commissions for all Store-level Retained Personnel used in conducting the Sale. All Retained Personnel shall be converted to independent contractors during the Sale;

(c)     actual costs of Agent's on-site supervision, supervisor travel and supervisor bonuses;

(d)     banners and in-store signs which are produced for the Sale;

(e)     promotional costs including, without limitation, advertising and direct mail;

(f)     the costs and expenses of obtaining additional supplies as may be required by Agent in the conduct of the Sale;

(g)     long distance telephone, postage/overnight delivery/courier charges;

(h)     credit card and bank card fees, chargebacks and discounts;

(i)     costs of moving, transferring, or consolidating Merchandise between the Stores;

(j)     Merchant's casualty insurance premiums attributable to the Merchandise for the Sale Term;

(k)     armored car service, security personnel and monthly alarm services;

(l)     trash removal and ordinary course third party cleanings;

(m)     Store security and building alarm service;

(n)     costs and expenses of delivery and assembly services; and

(o)     routine repair and maintenance costs.

"Expenses" shall not include: (i) Central Service Expenses; ii) Excluded Benefits; (iii) any rent or other occupancy expenses other than Occupancy Expenses in accordance with Section 4.1(a) hereof; and (iv) any costs, expenses or liabilities arising during the Sale Term in connection with the Sale of Merchandise, other than the Expenses listed above, all of which shall be paid by Merchant promptly when due during or after the Sale Term. ~~Notwithstanding anything herein to the contrary, to the extent that any Expense listed in Section 4.1 is also included on Exhibit 4.1(a), then Exhibit 4.1(a) shall control and such Expense shall not be double counted.~~

As used herein, the following terms have the following respective meanings:

"Central Services Expenses" means costs and expenses for Merchant's central administrative and distribution services but not limited to (a) Merchant's inventory control system; (b) payroll system; and (c) accounting system.

"Excluded Benefits" means vacation days or vacation pay, sick days or sick leave, maternity leave or other leaves of absence, termination or severance pay, ERISA coverage and similar contributions (other then pension and 401(k) contributions).

"Occupancy Expenses" means rent, CAM, real estate and use taxes, HVAC, utilities, base telephone charges and all other categories of expenses at the Closing Locations as set forth on Exhibit 4.1(a) attached hereto, up to the specific amounts set forth on Exhibit 4.1(a) attached hereto.

~~"Third party" means, with reference to any Expenses to be paid to a "third party", a party that is not affiliated with or related to Merchant.~~

4.2 "Payment of Expenses"

4.2 Payment of Expenses. All Expenses incurred during each week of the Sale (*i.e.,* Sunday through S*aturday*) shall be paid by Agent to or on behalf of Merchant immediately following the weekly Sale reconciliation by Merchant and Agent pursuant to Section 8.7 below, based upon invoices and other documentation reasonably satisfactory to Agent.

Section 5. Inventory Valuation; Merchandise

5.1 Inventory Taking. Commencing on the Sale Commencement Date, Merchant and Agent shall cause to be taken a physical inventory of the Merchandise located in the Closing Locations (collectively, the "Inventory Taking"), which Inventory Taking shall be completed in each of the Closing Locations no later than one (1) day after the Sale Commencement Date notwithstanding the fact that the Inventory Taking shall not be required to occur on Saturdays and Sundays (the "Inventory Completion Date"). Merchant and Agent shall jointly conduct the Inventory Taking without utilizing a third party inventory taking service. The Inventory Taking shall be conducted in accordance with the procedures and instructions to be mutually agreed by Merchant and Agent and made a part of this Agreement as Exhibit 5.1(a) (the "Inventory Taking Instructions"). Merchant and Agent shall bear their respective costs and expenses incurred in the Inventory Taking. Merchant, Agent and Merchant's senior secured post-petition lenders (the "Lenders") and Agent shall each have the right to have representatives present during the Inventory Taking, and shall each have the right to review and verify the listing and tabulation of the Inventory Taking. Merchant agrees that during the conduct of the Inventory Taking in each of the Closing Locations, the applicable location shall be closed to the public and no sales or other transactions shall be conducted until the Inventory Taking at such location has been completed, as agreed by Merchant and Agent.

5.2 Merchandise Subject to this Agreement.

(a) For purposes of this Agreement, including, without limitation, the calculation of the Guaranteed Amount, "Merchandise" shall mean all finished goods inventory that is owned by Merchant and located in the Closing Locations on the Sale Commencement Date. Notwithstanding the foregoing, "Merchandise" shall not include: (1) goods which belong to sublessees, licensees or concessionaires of Merchant; (2) goods held by Merchant on memo, on consignment, or as bailee; (3) Customer Ordered Merchandise; (4) merchandise that is so damaged as to be unsaleable; and (5) furnishings, trade fixtures, furniture and equipment and improvements to real property which are located in the Closing Locations.

(b) As used herein, the following terms shall have the respective meanings set forth below:

(i) "Customer Ordered Merchandise" means those items of Merchandise located in the Closing Locations that have previously been earmarked and/or reserved by Merchant from available merchandise and designated by Merchant for satisfaction of customer orders (whether in respect of a fully sold order or a partially reserved order) that were received prior to the Sale Commencement Date. N/A

1025581-12

(ii)    "Defective Merchandise" ~~means such items of inventory that are used or previously owned, damaged, shopworn or soiled inventory and are rendered unsaleable because of such defeats.~~N/A

(iii)    "Returned Merchandise" ~~means (a) Customer Returned Goods (subject to Section 8.5 hereof); and (b) Customer Ordered Merchandise, for which the order has been cancelled by either the customer or Merchant, prior to the Sale Commencement Date.~~N/A

5.3    ~~Valuation.~~ Intentionally omitted.

5.4    For purposes of this Agreement, "Cost Value" shall mean with respect to each item of Merchandise the actual landed cost (determined by applicable Merchant accounting unit) for such item of Merchandise as reflected in Merchant's master cost file as of the Sale Commencement Date (the "Cost File"), which average cost is inclusive of freight and shipping charges, and as verified by the Agent in its review of actual invoices.

~~5.45~~5.5    Delivery of Customer Ordered Goods. Agent shall have no involvement with the Merchant to facilitate the delivery of Customer Ordered Merchandise for sales made prior to the Sale Commencement Date. Merchant shall retain responsibility for the processing and delivery of such merchandise to customers, including retaining responsibility for the costs and expenses of processing, handling and delivery of such goods and will not involve the Stores in any manner whatsoever.

~~5.56~~5.6    Excluded Goods. Merchant shall retain all rights and responsibility for any goods not included as "Merchandise" hereunder and shall remove such goods from the Closing Locations prior to the Sale Commencement Date, or as soon thereafter as reasonably practicable. If Merchant elects at the beginning of the Sale Term, Agent shall accept those goods not included as "Merchandise" hereunder and as identified by Merchant for sale as "Merchant Consignment Goods". Agent shall retain 20% of the sale price (less Sales Taxes) for all sales of Merchant Consignment Goods, and Merchant shall receive 80% of the sale price (less Sales Taxes) in respect of such sales. Merchant shall receive its share of the receipts of sales of Merchant Consignment Goods on a weekly basis, immediately following the weekly Sale reconciliation by Merchant and Agent pursuant to Section 8.7 below. If Merchant does not elect to have Agent sell such goods not included as Merchandise, then all such items will be removed by Merchant from the Closing Locations at its expense. Except as expressly provided in this Section 5.6, Agent shall have no cost, expense or responsibility in connection with any goods not included in Merchandise.

Section 6.    Sale Term.

6.1    Term. Subject to the terms of the Approval Order, the Sale shall commence at the Closing Locations on the first calendar day after entry of the Approval Order by the Court (the "Sale Commencement Date"), which Approval Order shall be entered no later than July ~~26,~~28, 2010. The Agent shall complete the Sale, and shall vacate each Closing Location's premises in favor of Merchant or its representative or assignee on or before 60 days from the Sale Commencement Date (the "Sale Termination Date"). The period from the Sale Commencement Date to the Sale Termination Date shall be referred to herein as the "Sale Term." The Sale Term shall be no longer than 60 calendar days, with no extension permitted.

6.2     Vacating the Closing Locations.  (a)  Agent shall (i) vacate each of the Closing Locations no later than ~~ninety~~sixty days from Sale Commencement ~~d~~Date and (ii) provide Merchant with not less than seven (7) days' advance written notice of its intention to vacate any Closing Location (as to each, the "Vacate Date").  On the Vacate Date, Agent shall vacate the applicable Closing Location in favor of Merchant or its representatives or assignee, remove all Remaining Merchandise and leave the Closing Location in "broom clean" condition (ordinary wear and tear excepted), subject to the right to abandon, neatly in place, the FF&E.  Agent's obligations to pay all Expenses, including Occupancy Expenses, for each Closing Location subject to vacate notice shall continue until the applicable Vacate Date for such Closing Location.  All assets of Merchant used by Agent in the conduct of the Sale (e.g., FF&E, supplies, etc.) shall be returned by Agent to Merchant or left at the Closing Locations to the extent same have not been used in the conduct of the Sale or have not been otherwise disposed of through no fault of the Agent.  Where reference is made in this Section 6 to vacating the Closing Locations, such shall mean vacating the Closing Locations, in favor of Merchant, its representatives or assignee and shall not mean vacating possession or disclaimer of lease in favor of the landlord or owner of the Closing Location premises.  Agent agrees that it shall be obligated to repair any damage caused by Agent (or any representative, agent or licensee thereof) to any Closing Location during the Sale Term, ordinary wear and tear expected.

Section 7.     Sale Proceeds.

7.1     Proceeds.  For purposes of this Agreement, "Proceeds" shall mean the total amount (in dollars) of all sales of Merchandise and Additional Merchandise made under this Agreement, including the proceeds of any fabric protection sales, exclusive of (i) Sales Taxes, (ii) charges to customers for delivery services and assembly services; and (iii) returns, allowances and customer credits.  All proceeds of Merchant's insurance (net of any deductible) directly attributable to loss or damage to Merchandise or loss of cash arising from events occurring during the Sale Term shall constitute Proceeds under this Agreement.

7.2     Credit Card Proceeds.  Agent shall not be allowed to use Merchant's current credit card systems and servicing arrangements during the course of the Sale. Agent shall be required to establish outside credit card processing systems and machines at Agent's sole expense and will utilize its own merchant identification numbers during the entire Sale Term. Merchant shall not be responsible for paying and Agent shall pay as an Expense hereunder, all credit card fees, charges and chargebacks related to the Sale, whether received during or after the Sale Term.

Section 8.     Conduct of the Sale

8.1     Rights of Agent.  Subject to entry of the Approval Order, Agent shall be permitted to conduct a "store closing" or similar theme sale at the Stores throughout the Sale Term in a manner consistent with the "Sale Guidelines" annexed hereto as Exhibit 8.1, whether by in-store or media advertising or promotional materials.  In addition to any other rights granted to Agent hereunder, in conducting the Sale, Agent, in the exercise of its sole discretion, shall have the right:

(a)     to establish Stores' hours, which are consistent with the terms of applicable leases, mortgages or other occupancy agreements and local laws or regulations, including, without limitation, Sunday closing laws;

(b)	to use without charge (except where designated as an Expense pursuant to Section 4.1 hereof) during the Sale Term all FF&E, Store-level (and to the extent available, corporate) customer lists and mailing lists and existing supplies located at the Closing Locations, intangible assets (including Merchant's names, logos and tax identification numbers), keys, case keys, security codes, and safe and lock combinations required to gain access to and operate the Closing Locations, and any other assets, excluding point of sale equipment, of Merchant located at the Closing Locations (whether owned, leased, or licensed) consistent with applicable terms of leases or licenses.  Agent shall exercise due care and return to the Merchant immediately at the end of the Sale all materials and supplies except materials or supplies expended;

(c)	to establish sales prices and implement advertising, signage (including exterior banners and signs), and promotion programs consistent with the sale theme described herein, and as otherwise provided in the Approval Order and the Sale Guidelines, as and where applicable (including, without limitation, by means of media advertising, A-frame, and similar signage, and use of sign walkers, in Agent's discretion);

(d)	to transfer Merchandise between the Closing Locations only after the Inventory Taking is completed at both the transferring and the receiving location, at Agent's sole expense;

(e)	to supplement the Merchandise at the Closing Locations with Additional Merchandise in accordance with Section 3.5 hereof; and

(f)	to close the Stores to the public for a period commencing on the Sale Commencement Date for the purposes of preparing the Stores for the Sale. All refunds or credits for cancelled Customer Ordered Merchandise and Customer Returned Goods, to the extent applicable, shall be issued by Merchant's home office and shall not be issued at the Closing Locations.

8.2	Terms of Sales to Customers.  Subject to Agent's compliance with applicable law, all sales of Merchandise will be "final sales" and "as is, where is" and all advertisements and sales receipts (including credit card receipts) will reflect the same.  Agent shall not warrant the Merchandise in any manner, but will, to the extent legally permissible, pass on all manufacturers' warranties to customers.  All sales will be made only for cash, nationally recognized bank credit cards, and, in Agent's discretion, personal checks, provided, however, if Agent determines to accept personal checks, Agent shall bear the risk of loss therefor.

8.3	Sales Taxes.  During the Sale Term, all sales, excise and other taxes attributable to sales of Merchandise as indicated on Agent's point of sale equipment (other than taxes on income, but specifically including, without limitation, gross receipts taxes payable to the State of New York) payable to any taxing authority having jurisdiction (collectively, "Sales Taxes") shall be added to the sales price of Merchandise and collected on Merchant's behalf, and provided to Merchant on no less than a bi-weekly basis for deposit in Merchant's existing accounts, trust accounts or other accounts, as designated by Merchant.  Provided that Agent has collected all Sales Taxes during the Sale and remitted the proceeds thereof to Merchant, Merchant shall promptly pay or cause to be paid all Sales Taxes and file all applicable reports and documents required by the applicable taxing authorities. Agent shall reimburse Merchant for any additional Sales Taxes,

interest, fines, penalties, and the like payable to any taxing authority as the result of a Sales Tax audit conducted by or on behalf of such authority which discloses that the Sales Taxes collected by Agent and paid over to Merchant for any period during the Sale were less than those mandated by applicable law (any such additional Sales Taxes and other amounts are collectively referred to herein as "<u>Additional Taxes and Penalties</u>"). Merchant will be given access to the computation of gross receipts for verification of all such Sales Tax collections. Provided Agent performs its responsibilities in strict compliance with this Section 8.3, Merchant shall indemnify and hold harmless Agent from and against any and all costs, including, but not limited to, reasonable attorneys' fees, assessments, fines or penalties which Agent sustains or incurs as a result or consequence of the failure by Merchant to promptly pay such taxes to the proper taxing authorities and/or the failure by Merchant to promptly file with such taxing authorities all reports and other documents required, by applicable law, to be filed with or delivered to such taxing authorities. Agent shall add Sales Tax to the sales price of Additional Merchandise and Agent shall collect Sales Taxes attributable to the sales of Additional Merchandise and deposit such amounts into existing accounts, trust accounts or other accounts designated by Agent, for remittance by Merchant, on behalf of Agent, to the appropriate taxing authority. If Agent fails to perform its responsibilities in accordance with this Section 8.3, and provided Merchant complies with its obligations in accordance with this Section 8.3, Agent shall indemnify and hold harmless Merchant from and against any and all costs including, but not limited to, reasonable attorneys' fees, assessments, fines or penalties which Merchant sustains or incurs as a result or consequence of the failure by Agent to collect Sales Taxes, remit Sales Taxes to Merchant, and/or, to the extent Agent is required hereunder to prepare reports and other documents, the failure by Agent to promptly deliver any and all reports and other documents required to enable Merchant to file any requisite returns with such taxing authorities.

8.4     <u>Supplies</u>. Agent shall have the right to use all existing supplies necessary to conduct the Sale (e.g., boxes, bags, twine, but not gift certificates, rain checks, merchandise credits or the like) located at the Closing Locations at no charge to Agent. In the event that additional supplies are required in any of the Closing Locations during the Sale, the acquisition of such additional supplies shall be the responsibility of Agent as an Expense.

8.5     <u>Customer Refunds for prior Sales</u>. All customer requests for cash refunds or merchandise credits with regard to the cancellation of Customer Ordered Merchandise shall be processed exclusively through Merchant's home office, and Agent shall not issue any cash refunds or credits to customers in respect of any sale written prior to the Sale Commencement Date.

8.6     <u>Gift Certificates</u>. During the Sale Term, Agent shall not accept Merchant's gift certificates and gift cards issued by Merchant prior to the Sale Commencement Date.

8.7     <u>Sale Reconciliation</u>. On each Thursday during the Sale Term, commencing on the second Thursday after the Sale Commencement Date, Agent and Merchant shall cooperate to reconcile Expenses, and such other Sale-related items as either party shall reasonably request, in each case for the prior week or partial week (*i.e.,* Sunday through Saturday), all pursuant to procedures agreed upon by Merchant and Agent. On a weekly basis, Agent shall provide Merchant with a true and correct summary of sales of Merchandise and Additional Merchandise at each Closing Location (in each case for the prior week). On a bi-monthly basis, if requested, Agent shall provide to Merchant (at Agent's sole cost and expense) true and correct copies of all

records and source documents evidencing sales of Merchandise or Additional Merchandise (in each case for the prior two-week period). Within thirty (30) days after the end of the Sale Term, Agent and Merchant shall complete a final reconciliation of the Sale, the written results of which shall be certified by representatives of each of Merchant and Agent as a final settlement of accounts between Merchant and Agent.

8.8  Force Majeure. If any casualty or act of God prevents the conduct of business in the ordinary course at any Closing Location for a period in excess of three (3) consecutive days, such Closing Location and the Merchandise located at such Closing Location shall be eliminated from the Sale and considered to be deleted from this Agreement as of the last date of such event, and Agent and Merchant shall have no further rights or obligations hereunder with respect thereto; provided, however, that (i) the proceeds of any insurance attributable to such Merchandise shall constitute Proceeds hereunder, and (ii) the Guaranteed Amount shall be reduced to account for any Merchandise eliminated from the Sale which is not the subject of insurance proceeds or consolidated by Agent (as an Expense) into another Closing Location(s), and Merchant to the extent actually received shall reimburse Agent for the amount the Guaranteed Amount is so reduced prior to the end of the Sale Term. As noted in the proceeding sentence, Agent will use its best efforts to consolidate and transfer all Merchandise which is not the subject of insurance proceeds and include said Merchandise in the Sale in other Stores.

Section 9.  Employee Matters

9.1  Merchant's Personnel. Subject to the applicable provisions of the Approval Order and any other provisions in this Agreement relating to employees, Agent may use Merchant's personnel in the conduct of the Sale to the extent Agent in its sole discretion deems expedient, and Agent may select and, with Merchant, schedule the number and type of Merchant's personnel required for the Sale. Agent shall identify any such personnel to be used in connection with the Sale (each such personnel, a "Retained Personnel") prior to the Sale Commencement Date. On or before the Sale Commencement Date, Retained Personnel shall be converted to independent contractors hired by Agent during the Sale, but shall not be considered or deemed to be employees of Agent.

9.2  Termination of Personnel. Agent may in its discretion stop using any Retained Personnel at any time during the Sale.

9.3  Payroll Matters. During the Sale Term, Agent shall process and pay the payroll utilizing its own payroll processing and will issue all independent contactors with 1099 forms at the end of the tax year.

Section 10.  Conditions Precedent.

The willingness of Agent and Merchant to enter into the transactions contemplated under this Agreement is directly conditioned upon the satisfaction of the following conditions at the time or during the time periods indicated, unless specifically waived in writing by the applicable party:

(a)  All representations and warranties of Merchant and Agent hereunder shall be true and correct in all material respects and no Event of Default shall have occurred at and as of the date hereof and as of the Sale Commencement Date;

(b)     Agent hereby acknowledges that prior to the execution of this Agreement, Merchant has provided Agent reasonable access to all pricing and cost files, computer hardware, software and data files, inter-Stores transfer logs, markdown schedules, invoices, style runs and all other documents relative to the price, mix and quantities of inventory located at the Closing Locations;

(c)     Agent hereby acknowledges that prior to the execution of the Agreement, and on the date immediately preceding the date of the Inventory ~~Date~~Taking, Agent has had and shall have had the opportunity to inspect the Closing Locations and the Merchandise;

(d)     On or before July 26, 2010, the Bankruptcy Court shall have entered an order approving the bidding procedures set forth in Section 16.11 hereof; and

(e)     On or before July ~~26,~~28, 2010, the Bankruptcy Court shall have entered the Approval Order substantially in the form of Exhibit 10 attached hereto and otherwise in a form reasonably acceptable to Merchant and Agent.

Section 11.     Representations, Warranties and Covenants

11.1     Merchant's Representations, Warranties and Covenants.  Merchant hereby represents, warrants and covenants in favor of Agent as follows:

(a)     Merchant (i) is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation; (ii) has all requisite corporate power and authority to own, lease and operate its assets and properties and to carry on its business as presently conducted; and (iii) is and during the Sale Term will continue to be, duly authorized and qualified to do business and in good standing in each jurisdiction where the nature of its business or properties requires such qualification, including all jurisdictions in which the Closing Locations are located, except, in each case, to the extent that the failure to be in good standing or so qualified could not reasonably be expected to have a material adverse effect on the ability of Merchant to execute and deliver this Agreement and perform fully its obligations hereunder.

(b)     Subject to the entry of the Approval Order in the Chapter 11 Case, Merchant has the right, power and authority to execute and deliver this Agreement and each other document and agreement contemplated hereby (collectively, together with this Agreement, the "Agency Documents") and to perform fully its obligations thereunder.  Subject to the entry of the Approval Order in the Chapter 11 Case, Merchant has taken all necessary actions required to authorize the execution, delivery and performance of the Agency Documents, and no further consent or approval on the part of Merchant is required for Merchant to enter into and deliver the Agency Documents, to perform its obligations thereunder, and to consummate the Sale.  Subject to the entry of the Approval Order in the Chapter 11 Case, each of the Agency Documents has been duly executed and delivered by Merchant and constitutes the legal, valid and binding obligation of Merchant enforceable in accordance with its terms.  Subject to the entry of the Approval Order in the Chapter 11 Case, no court order or decree of any federal, state, local, or provincial governmental authority or regulatory body is in effect that would prevent or materially impair, or is required for the Merchant's consummation of, the transactions contemplated by this Agreement, and no consent of any third party which has not been obtained is required therefore, other than as

shall be obtained prior to the Sale Commencement Date, except for any such consent the failure of which to be obtained could not reasonably be expected to have a material adverse effect on the ability of Merchant to execute and deliver this Agreement and perform fully its obligations hereunder. Other than for any consent as shall be obtained prior to the Sale Commencement Date, and those contracts or agreements identified by Merchant to Agent on or prior to the Sale Commencement Date, if any, no contract or other agreement to which the Merchant is a party or by which the Merchant is otherwise bound will prevent or materially impair the consummation of the Sale and the other transactions contemplated by this Agreement.

(c)     Merchant (i) owns and will own at all times during the Sale Term, good and marketable title to all of the Merchandise free and clear of all liens, claims and encumbrances of any nature, and (ii) shall not create, incur, assume or suffer to exist any security interest, lien or other charge or encumbrance upon or with respect to any of the Merchandise or the Proceeds, in each case, except for such pre-existing liens and security interests as shall have been disclosed by Merchant to Agent ~~and identified in Exhibit 11.1(c) hereof~~.

(d)     Merchant has maintained its pricing files (including, but not limited to, the Cost File) in the ordinary course of business, and prices charged to the public for goods (whether in-store, by advertisement or otherwise) are the same in all material respects as set forth in such pricing files for the periods indicated therein (without consideration of any point of sale markdowns). All pricing files and records relative to the Merchandise have been made available to Agent.

(e)     Merchant shall ticket or mark all items of inventory received at the Closing Locations prior to the Sale Commencement Date in a manner consistent with similar Merchandise located at the Closing Locations and in accordance with Merchant's past practices and policies relative to pricing and marking inventory.

(f)     To the best of Merchant's knowledge, all Merchandise is in material compliance with all applicable federal, state or local product safety laws, rules and standards. Merchant shall provide Agent with its historic policies and practices, if any, regarding product recalls prior to the Sale Commencement Date.

(g)     Subject to the terms of this Agreement, Agent shall have the right to the unencumbered use and occupancy of, and peaceful and quiet possession of, each of the Closing Locations, the assets currently located at the Closing Locations to the extent Merchant is entitled to use the same, and the services provided at the Closing Locations to the extent Merchant is entitled to such services. Merchant shall throughout the Sale Term maintain in a manner consistent with its customary and historic practices, all cash registers, heating systems, air conditioning systems, elevators, escalators, alarm systems, and all other mechanical devices used in the ordinary course of operation of the Closing Locations or, if applicable, use reasonable efforts to cause any applicable landlord to comply with its obligations under applicable lease and occupancy agreements with respect to any such matter.

(h)     Merchant has not transferred and shall not transfer merchandise, FF&E or supplies to or from the Closing Locations outside the ordinary course of business, and shall not

transfer Merchandise from the Distribution Centers to the Closing Locations other than in the ordinary course of business.

(iii) From and after the date of this Agreement, Merchant will not fill customer orders from "floor inventory" except in the ordinary course of business.

11.2 Agent's Representations, Warranties and Covenants. Agent hereby represents, warrants and covenants in favor of Merchant as follows:

(a) Agent: (i) is a corporation, partnership, or limited liability company, as the case may be, duly and validly existing and in good standing under the laws of the State of its organization; (ii) has all requisite power and authority to carry on its business as presently conducted and to consummate the transactions contemplated hereby; and (iii) is and during the Sale Term will continue to be duly authorized and qualified as a foreign company to do business and in good standing in each jurisdiction where the nature of its business or properties requires such qualification.

(b) Agent has the right, power and authority to execute and deliver each of the Agency Documents to which it is a party and to perform fully its obligations thereunder. Agent has taken all necessary actions required to authorize the execution, delivery, and performance of the Agency Documents, and no further consent or approval is required on the part of Agent for Agent to enter into and deliver the Agency Documents, to perform its obligations thereunder, and to consummate the Sale. Each of the Agency Documents has been duly executed and delivered by the Agent and constitutes the legal, valid and binding obligation of Agent enforceable in accordance with its terms. No court order or decree of any federal, provincial, state or local governmental authority or regulatory body is in effect that would prevent or impair or is required for Agent's consummation of the transactions contemplated by this Agreement, and no consent of any third party which has not been obtained is required therefor other than as provided herein. No contract or other agreement to which Agent is a party or by which Agent is otherwise bound will prevent or impair the consummation of the transactions contemplated by this Agreement.

(c) No action, arbitration, suit, notice, or legal administrative or other proceeding before any court or governmental body has been instituted by or against Agent, or has been settled or resolved, or to Agent's knowledge, has been threatened against or affects Agent, which questions the validity of this Agreement or any action taken or to be taken by Agent in connection with this Agreement, or which if adversely determined, would have a material adverse effect upon Agent's ability to perform its obligations under this Agreement.

Section 12. Insurance.

12.1 Merchant's Liability Insurance. Merchant shall continue until the Sale Termination Date, in such amounts as it currently has in effect, all of its liability insurance policies including, but not limited to, products liability, comprehensive public liability, auto liability and umbrella liability insurance, covering injuries to persons and property in, or in connection with Merchant's operation of the Closing Locations, and shall cause Agent to be named an additional named insured with respect to all such policies. Prior to the Sale Commencement Date, Merchant shall deliver to Agent certificates evidencing such insurance setting forth the duration thereof and

naming Agent as an additional named insured, in form reasonably satisfactory to Agent. In the event of a claim under any such policies Merchant shall be responsible for the payment of all deductibles, retentions or self-insured amounts to the extent said claim arises from or relates to the alleged acts or omissions of Merchant or its employees, agents (other than Agent's employees), or independent contractors (other than Agent and independent contractors hired by Agent in conjunction with the Sale).

12.2   <u>Merchant's Casualty Insurance</u>.  Merchant shall continue until the Sale Termination Date, in such amounts as it currently has in effect, fire, flood, theft and extended coverage casualty insurance covering the Merchandise in a total amount equal to no less than the Cost Value thereof, which coverage shall be reduced from time to time to take into account the sale of Merchandise.  In the event of a loss to the Merchandise on or after the date of this Agreement, the proceeds of such insurance attributable to the Merchandise (net of any deductible) shall constitute Proceeds.  Prior to the Sale Commencement Date, Merchant shall deliver to Agent certificates evidencing such insurance setting forth the duration thereof, in form and substance reasonably satisfactory to Agent.  All such policies shall require at least thirty (30) days prior notice to Agent of cancellation, non-renewal or material change.  Merchant shall not make any change in the amount of any deductibles or self-insurance amounts prior to the Sale Termination Date, without Agent's prior written consent.

12.3   <u>Agent's Insurance</u>.  Agent shall maintain at Agent's cost and expense throughout the Sale Term, in such amounts as it currently has in effect, comprehensive public liability and automobile liability insurance policies covering injuries to persons and property in or in connection with Agent's agency at the Closing Locations, and shall cause Merchant to be named an additional insured with respect to such policies. In the event of a claim under such policies Agent shall be responsible for the payment of all deductibles, retentions or self-insured amounts thereunder, to the extent said claim arises from or relates to the alleged acts or omissions of Agent or Agent's employees, agents or independent contractors.

12.4   <u>Risk of Loss</u>.  Without limiting any other provision of this Agreement, Merchant acknowledges that Agent is conducting the Sale on behalf of Merchant solely in the capacity of an agent, and that in such capacity (i) Agent shall not be deemed to be in possession or control of the Closing Locations or the assets located therein or associated therewith, or of Merchant's personnel located at the Closing Locations, and (ii) except as expressly provided in this Agreement, Agent does not assume any of Merchant's obligations or liabilities with respect to any of the foregoing. Agent shall not be deemed to be a successor employer. Merchant and Agent agree that, subject to the terms of this Agreement, Merchant shall bear all responsibility for liability claims of customers, employees and other persons arising from events occurring at the Closing Locations during and after the Sale Term, except to the extent any such claim arises directly from the acts or omissions of Agent, or its supervisors, agents, independent contractors, or employees located at the Closing Locations (an "<u>Agent Claim</u>").  In the event of any liability claim other than an Agent Claim, Merchant shall administer such claim and shall present such claim to Merchant's liability insurance carrier in accordance with Merchant's policies and procedures existing immediately prior to the Sale Commencement Date, and shall provide a copy of the initial documentation relating to such claim to Agent at the address listed in this Agreement.  To the extent that Merchant and Agent agree that a claim constitutes an Agent Claim, Agent shall administer such claim and shall present such claim to its liability insurance carrier, and shall provide copies of the initial

documentation relating to such claim to Merchant. In the event that Merchant and Agent cannot agree whether a claim constitutes an Agent Claim, each party shall present the claim to its own liability insurance carrier, and a copy of the initial claim documentation shall be delivered to the other party to the foregoing address.

Section 13.    Indemnification

13.1    Merchant Indemnification. Merchant shall indemnify and hold Agent and its officers, directors, employees, agents and independent contractors (collectively, "Agent Indemnified Parties") harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted directly or indirectly against Agent resulting from, or related to:

(a)    Merchant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in any Agency Document (provided, however, Agent shall not be entitled to any indemnity hereunder in the event of a breach of any representation contained ~~in Section 11.1(k) hereof~~herein, in which case Agent's sole remedy shall be such adjustment to the Guaranteed Amount in accordance with Exhibit 11.1(k));

(b)    subject to Agent's performance and compliance with its obligations pursuant to Sections 4.1(b) and 4.1(c) and Section 9 hereof, any failure of Merchant to pay to its personnel any wages, salaries or benefits due to such personnel during the Sale Term;

(c)    subject to Agent's compliance with its obligations under Section 8.3 hereof, any failure by Merchant to pay any Sales Taxes to the proper taxing authorities or to properly file with any taxing authorities any reports or documents required by applicable law to be filed in respect thereof;

(d)    any consumer warranty or products liability claims except to the extent such claims arise from representations made by the Agent relating to the Merchandise;

(e)    the gross negligence or willful misconduct of Merchant or any of its officers, directors, employees, agents (other than Agent) or representatives.

13.2    Agent Indemnification. Agent shall jointly and severally indemnify and hold Merchant and its officers, directors, employees, agents and representatives harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted directly or indirectly against, Merchant resulting from, or related to (including acts or omissions of persons or entities affiliated with or acting on behalf of the Agent):

(a)    Agent's material breach of or failure to comply with any local, state, or federal laws or regulations, or any of its agreements, covenants, representations or warranties contained in any Agency Document;

(b)    any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious or otherwise actionable treatment of any employees or agents of

19

Merchant by Agent or any of its employees, agents, independent contractors or other officers, directors or representatives of Agent;

(c)     any claims by any party engaged by Agent as an employee or independent contractor arising out of such engagement;

(d)     any Agent Claims;

(e)     Agent's use of point of sale system to compute Sales Taxes relating to the Sale, any Additional Taxes and Penalties; and

(f)     the negligence or willful misconduct of Agent or any of its officers, directors, employees, agents or representatives.

Section 14.     <u>Defaults</u>.  The following shall constitute "<u>Events of Default</u>" hereunder:

(a)     Merchant's or Agent's failure to perform any of their respective material obligations hereunder, which failure shall continue uncured seven (7) days after receipt of written notice thereof to the defaulting party; or

(b)     Any representation or warranty made by Merchant or Agent proves untrue in any material respect as of the date made or at any time and throughout the Sale Term; or

(c)     Subject to Section 8.8 hereof, the Sale is terminated or materially interrupted or impaired at any Closing Location for any reason other than (i) an Event of Default by Agent, or (ii) any other material breach or action by Agent not authorized hereunder.

In the event of an Event of Default, the non-defaulting party may, in its discretion, elect to terminate this Agreement upon seven (7) business days' written notice to the other party and pursue any and all rights and remedies and damages resulting from such default hereunder in the event such cure is not affected by the defaulting party.

Section 15.     <u>Fixtures</u>

With respect to furniture, fixtures and equipment owned by Merchant and located at the Closing Locations (collectively, the "<u>FF&E</u>"), Agent shall sell the FF&E in any such Closing Locations.  Merchant shall bear the expenses incurred in connection with the disposition of the FF&E and Agent shall be entitled to receive a commission equal to twenty five percent (25%) of the gross receipts (net only of taxes, if any) from the sale of such FF&E; <u>provided</u> <u>further</u> <u>however</u>, Merchant may elect to receive, in lieu of proceeds net of expenses and Agent's commission, a lump sum payment, on a per Closing Location basis, in an amount to be agreed upon between Merchant and Agent, in which case all costs and expenses associated with the disposition thereof shall be borne by Agent.   In either event, as of the Sale Termination Date, Agent may abandon in place in a neat and orderly manner any unsold FF&E at the Closing Locations.

Section 16.    Miscellaneous

16.1   Notices.  All notices and communications provided for pursuant to this Agreement shall be in writing, and sent by hand, by email or a recognized overnight delivery service, as follows:

| | |
|---|---|
| If to Agent: | Great American Furniture Services |
| | 13950 Ballantyne Corporate Place |
| | Richardson Building, Suite 175 |
| | Charlotte, NC 28277 |
| | Attn:  Laura Gee |
| | Email: lgee@greatamerican-furniture.com |
| | Fax: 888 – 940 - 4237 |

If to the Merchant:  ~~Attn:~~  ~~Fax:~~  Jennifer Convertibles, Inc.
417 Crossways Park Drive
Woodbury, NY 11797
Attn:  Rami Abada
Fax:  (516) 496-0008

With a copy to:  ~~Attn:~~  ~~Fax:~~  Olshan Grundman Frome Rosenzweig & Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Attn:  Michael S. Fox, Esq.
Fax:  (212) 451-2222

16.2   Governing Law; Consent to Jurisdiction.  This Agreement shall be governed and construed in accordance with the laws of the State of New York, without regard to conflicts of laws principles thereof.  The parties hereto agree that the Bankruptcy Court shall retain exclusive jurisdiction to hear and finally determine any disputes arising from or under this Agreement, and by execution of this Agreement each party hereby irrevocably accepts and submits to the jurisdiction of such court with respect to any such action or proceeding and to service of process by certified mail, return receipt requested to the address listed above for each party.

16.3     Entire Agreement.  This Agreement contains the entire agreement between the parties hereto with respect to the transactions contemplated hereby and supersedes and cancels all prior agreements, including, but not limited to, all proposals, letters of intent or representations, written or oral, with respect thereto.

16.4     Amendments.  This Agreement may not be modified except in a written instrument executed by each of the parties hereto.

16.5     No Waiver.  No consent or waiver by any party, express or implied, to or of any breach or default by the other in the performance of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligation of such party.  Failure on the part of any party to complain of any act or failure to act by the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder.

16.6     Successors and Assigns.  This Agreement shall inure to the benefit of and be binding upon Agent and Merchant, including, but not limited to, any chapter 11 or chapter 7 trustee.  Agent shall not be permitted to assign its obligations under this Agreement.

16.7     Execution in Counterparts.  This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and all of which together shall constitute but one agreement.  This Agreement may be executed by facsimile, and such facsimile signature shall be treated as an original signature hereunder.

16.8     Section Headings.  The headings of Sections of this Agreement are inserted for convenience only and shall not be considered for the purpose of determining the meaning or legal effect of any provisions hereof.

16.9     Survival.  All representations, warranties, covenants and agreements made herein, by the parties hereto, shall be continuing, shall be considered to have been relied upon by the parties and shall survive the execution, delivery and performance of this Agreement.

16.10     Termination.  This Agreement shall remain in full force and effect until the first to occur of: (i) receipt by Merchant of written notice from Agent that any of the conditions specified in Section 10 hereof have not been satisfied within five (5) days of the anticipated Sale Commencement Date set forth in Section 6.1; or (ii) the expiration of the Sale Term and completion and certification by Merchant and Agent of the final Sale reconciliation pursuant to Section 8.7 above.  Notwithstanding the foregoing, (a) the representations, warranties and indemnities of Merchant and Agent contained herein and the provisions of Section 11 above, and (b) any claim arising from a breach of this Agreement prior to its termination, shall survive the termination of this Agreement pursuant to this Section 16.10.

16.11     Bidding Procedures / /Bankruptcy Matters.  In consideration of Agent conducting its due diligence and entering into this Agreement, which serves as a base by which other offers may be measured and is subject to higher or better offers by way of a bidding process, all subject to the approval of the Bankruptcy Court, Merchant agrees to pay Agent from the proceeds of the offer received from the party that submits the highest or best bid (to the extent Agent is not the party that

submits the highest or best bid) a break-up fee in the amount of $ 50,000.00 (the "Break-up Fee"). The Agent will have the ability to "credit bid" using the Break up Fee. Each bid from another party will be no less than three percent (3%) of the Cost Value higher in addition to the Break up Fee.

16.12   Security Interest.  Subject to payment of the Guaranty Payment, Additional Return, and Expenses, and the provision of services hereunder to Merchant, Merchant hereby grants to Agent a first priority security interest in and lien upon the Merchandise and the Proceeds to secure all obligations of Merchant to Agent hereunder.  ~~Until the payment of the Guaranteed Amount, the Additional Return, and Expenses, in full, the security interest granted to Agent hereunder shall remain junior to the security interest of Merchant's Lenders.~~  After entry of the Approval Order, but subject to payment of the Guaranty Payment, the security interest granted to Agent hereunder shall be deemed properly perfected without the need for further filings or documentation.

16.13   Obligations Joint and Several.  All obligations of Agent to Merchant hereunder shall be joint and several.  Agent may utilize the services of subcontractors and or licensees in connection with the performance of its obligations hereunder.

IN WITNESS WHEREOF, Agent and Merchant hereby execute this Agency Agreement as of the day and year first written above.

**<u>AGENT</u>:**

**GREAT AMERICAN FURNITURE SERVICES, LLC**

By: _____
Name: _____
Title: _____

**<u>MERCHANT</u>:**

_____

By: _____
Name: _____
Title: _____